Shiloh S. Hernandez
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT *et al.*,<br><br>Defendants. | Case No. 1:19-cv-00130-SPW-TJC<br><br>**PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANTS' MOTION TO CHANGE VENUE** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION .................................................................................7

FACTUAL BACKGROUND ...................................................................8

I.      Westmoreland Rosebud Mining, LLC, (WRM) is headquartered
        in Montana, and the District of Montana is its home forum. ........................8

II.     The NEPA and ESA analyses challenged by the Conservation
        Groups occurred in Montana and Colorado, but not in the
        District of Columbia. .......................................................................8

III.    WRM was aware that the Conservation Groups would likely
        challenge the Federal Defendants' approval of the Area F
        expansion when it hastily sued in the District of Columbia. ........................10

IV.     After rushing to file suit in the District of Columbia, WRM
        delayed the case for nearly eight months for settlement
        discussions. ...................................................................................11

V.      The Conservation Groups filed the instant suit in the District of
        Montana, raising significantly broader legal claims. ...................................11

ARGUMENT .....................................................................................12

I.      The Conservation Groups' choice of venue is entitled to
        substantial deference.....................................................................13

        A.      The Conservation Groups' choice of forum is entitled to
                deference absent a compelling showing to the contrary by
                defendant, which WMR has not made. ................................13

        B.      There is a strong interest in having local issues—such as
                those raised in the Conservation Groups' complaint—
                decided locally, in Montana. ............................................14

II.     The first-filed rule does not support transfer..................................16

C.      The chronology of the two actions does not support
        transfer because WRM has stayed and intends to settle its
        narrow suit in the District of Columbia and because the
        instant suit is both broader and more advanced. .................................17

D.      The first-filed rule does not apply because the parties to
        the suits are not substantially similar and the issues do
        not substantially overlap.......................................................................19

E.      The first-filed rule does not apply because WRM's prior
        filing was anticipatory and a forum shopping excursion. ..................22

III.    The convenience factors and interests of justice strongly
        support retaining venue in Montana. ...........................................................24

A.      Virtually all relevant activities and decision-making
        occurred in Montana (or Colorado), not the District of
        Columbia. ..............................................................................................25

B.      The District of Montana has significant familiarity with
        the law and facts surrounding fossil fuel development on
        federal land in the West.........................................................................26

C.      The Conservation Groups' choice of their (and WRM's)
        home forum in Montana is entitled to great deference,
        particularly given that the environmental impacts will
        occur in Montana.....................................................................................28

D.      The Parties' contacts with the District of Montana, their
        contacts relating to the Conservation Groups claims, and
        consideration of costs support venue in Montana. ..............................29

CONCLUSION ...................................................................................................31

CERTIFICATE OF COMPLIANCE......................................................................34

# TABLE OF AUTHORITIES

## Cases

*24 Hour Fitness USA, Inc. v. Coe*,
  2012 WL 2370394 (D. Mont. June 21, 2012).......................................................16

*Adoma v. Univ. of Phoenix*, Inc.,
  711 F. Supp. 2d 1142 (E.D. Cal. 2010)............................................. 13, 17, 19, 21

*Alec L. v. Jackson*,
  No. C-11-2203 EMC, 2011 WL 8583134 (N.D. Cal. Dec. 6, 2011)...................29

*Alliance for the Wild Rockies v. Lyder*,
  No. CV 09-73-M-DWM, 2009 WL 10677286 (D. Mont. Oct. 19,
  2009).......................................................................................................... passim

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) ...........................................................26

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
  946 F.2d 622 (9th Cir. 1991)...........................................................................17

*Anderson v. Thompson*,
  634 F. Supp. 1201 (D. Mont. 1986)..................................................................14

*Berger v. Bank of Colo.*,
  No. CV 17-104-BLG-SPW-TJC, 2017 WL 5711409 (D. Mont. Nov.
  27, 2017) ........................................................................................... 13, 15, 29

*Commodity Futures Trading Comm'n v. Savage*,
  611 F.2d 270 (9th Cir. 1979)...........................................................................13

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986)...................................................................... 13, 16

*Guardians v. OSM*,
  No. CV 14-103-BLG-SPW, 2016 WL 259285 (D. Mont. Jan. 21,
  2016)...............................................................................................................27

*Indigenous Envtl. Network v. United States Dep't of State*,
  347 F. Supp. 3d 561 (D. Mont.) ...........................................................................27

*Intersearch Worldwide, Ltd. v. Intersearch Grp.*, Inc.,
  544 F. Supp. 2d 949 (N.D. Cal. 2008) .................................................................19

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000)......................................................................... 12, 24

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
  787 F.3d 1237 (9th Cir. 2015) ...............................................................................19

*MEIC v. OSM*,
  274 F. Supp. 3d 1074 (D. Mont. 2017).................................................................27

*Mont. Merch., Inc. v. Dave's Killer Bread, Inc.*,
  No. CV 17-26-GF-BMM, 2017 WL 2536530 (D. Mont. June 9, 2017) ..... passim

*Roller Bearing Co. of Am. v. Am. Software, Inc.*,
  570 F. Supp. 2d 376 (D. Conn. 2008)....................................................................21

*Sierra Club v. Flowers*,
  276 F. Supp. 2d 62 (D.D.C. 2003) ......................................................... 13, 26, 29

*Sierra Club v. U.S. Def. Energy Support Ctr.*,
  No. C 10-02673 JSW, 2011 WL 89644 (N.D. Cal. Jan. 11, 2011) ....................29

*United States v. One Oil Painting Entitled Femme en Blanc by Pablo
  Picasso*,
  362 F. Supp. 2d 1175 (C.D. Cal. 2005) ................................................................19

*Villa v. Salazar*,
  933 F. Supp. 2d 50 (D.D.C. 2013) ........................................................................14

*W. Org. of Res. Councils v. BLM*,
  No. CV 16-21-GF-BMM, 2017 WL 374705 (D. Mont. Jan. 25, 2017) ....... 26, 28

*W. Org. of Res. Councils v. BLM*,
  No. CV 16-21-GF-BMM, 2018 WL 1475470 (D. Mont. Mar. 26,
  2018).......................................................................................................................27

*WildEarth Guardians v. Zinke*,
   No. CV-17-80-BLG-SPW-TJC, 2019 WL 2404860 (D. Mont. Feb. 2,
   2011).............................................................................................................27

**Statutes**

16 U.S.C. § 1540................................................................................ 11, 18

28 U.S.C. § 1391................................................................................ 13, 14

28 U.S.C. § 1404................................................................................ 12, 32

## INTRODUCTION

Plaintiffs Montana Environmental Information Center, Indian People's Action, 350 Montana, Sierra Club, and WildEarth Guardians (collectively, "Conservation Groups") oppose Intervenor-Defendant Westmorland Rosebud Mining, LLC's (WRM) Motion to Transfer Venue. (Doc. 21.)

WRM characterizes its motion as being "in the interests of convenience, comity, and judicial economy." None of these considerations actually supports Westmorland's motion. To the contrary, the majority of the Conservation Groups and WRM are residents of Montana, the challenged activity is located in Montana, and the harms at issue will be suffered in Montana. Thus, the relevant considerations support retaining venue in Montana.

It is indeed inexplicable that WRM, a Montana-based company, is attempting to move this case from its own "home" forum to one that has—at best—a tenuous connection with this matter. At bottom, WRM's maneuver amounts to little more than a veiled forum shopping excursion. The first-filed rule does not apply, and even if it applied, it does not support WRM's motion. Evaluation of the relevant factors demonstrates that WRM cannot meet its substantial burden of overcome the Conservation Groups' choice of forum (which, again is WRM's home forum).

WRM's motion should be denied.

## FACTUAL BACKGROUND

WRM's factual recitation blurs important issues, which are clarified below.

**I.     Westmoreland Rosebud Mining, LLC, (WRM) is headquartered in Montana, and the District of Montana is its home forum.**

Contrary to WRM's assertion (Doc. 21 at 14), Western Energy Company, now known as Westmoreland Rosebud Mining, LLC, (as distinguished from its parent company, Westmoreland Mining, LLC), operates the challenged location and is headquartered in Montana. MDEQ, Area F Permit (May 30, 2019) (attached as Exhibit 1); (Doc. 11); *see also* Westmoreland Rosebud Mining LLC, https://westmoreland.com/location/rosebud-mine-montana/ (stating Montana address).

**II.    The NEPA and ESA analyses challenged by the Conservation Groups occurred in Montana and Colorado, but not in the District of Columbia.**

The six years of EIS preparation WRM cites (Doc. 21 at 2), were conducted jointly by the U.S. Office of Surface Mining Reclamation and Enforcement (OSM), the Bureau of Land Management (BLM), and the Montana Department of Environmental Qualtiy (MDEQ) in Montana (from MDEQ's offices and the Bureau of Land Mangement's (BLM's) Miles City Field Office and State Office in Billings), and in Colorado, from OSM's Western Regional Office in Denver, where the ROD was signed. Federal Record of Decision (Federal ROD) at 1-28 (Exhibit 2). Virtually all of the scientific analysis in the EIS is based on data

collected in Montana at or near the Rosebud Mine. Moreover, the EIS was issued in a coordinated fashion by OSM and MDEQ. Final Environmental Impact Statement (FEIS).[1]

As WRM notes, OSM "[f]ollow[ed] MDEQ's lead," in issuing its decisional documents, which adopted Alternative 2 with conditions." (Doc. 21 at 2-3.) OSM also undisputedly based its recommendation to the Assistant Secretary on "the EIS analysis and supporting documents," which were, again, prepared in cooperation with MDEQ based on data gathered in Montana. (*Id.* at 10.) In addition, the Mine Plan Approval, while signed in the District of Columbia, explicitly stipulated that Westmoreland "shall conduct coal development or mining operations only as approved by the Montana Department of Environmental Quality," and accordingly incorporated MDEQ's exclusion of 74 acres from the mining plan. Mining Plan Approval at 2 (July 15, 2019) (Exhibit 3). Critically, and contrary to WRM's repeated statements (*e.g.*, Doc. 21 at 13, 16, 26), the ROD itself was signed by David Berry, the OSM's Western Regional Director—not in the District of Columbia—but at the agency's regional office in Denver, Colorado. Federal ROD at 28.

---

[1] OSM, Area F FEIS, https://www.wrcc.osmre.gov/initiatives/westernEnergy/documents/WesternEnergy_Area_F_Final_EIS.pdf.

**III.    WRM was aware that the Conservation Groups would likely
challenge the Federal Defendants' approval of the Area F
expansion when it hastily sued in the District of Columbia.**

A mere two days after the Assistant Secretary signed the Mine Plan
Approval based on OSM and MDEQ's joint analysis, WRM filed suit on July 17,
2019, in the District of Columbia narrowly challenging the exclusion of the 74
acres in Section 12 from the approved plan. WRM DC Cmpl. at 18-19 (Exhibit 4).
At the time it did so, it was almost certainly aware of the probability that
Conservation Groups would also challenge the approval—albeit on very different
grounds—based on their appeal in Montana of MDEQ's approval of the Area F
Permit. MEIC State Appeal (May 21, 2019) (Exhibit 5). Indeed, WRM itself also
appealed the MDED decision in Montana. WRM State Appeal (May 17, 2019)
(Exhibit 6). WRM was also aware of the Conservation Groups' public comments
to the Federal Defendants strongly opposing federal approval of the Area F strip-
mine expansion, as, after public comment closed, WRM obtained the Conservation
Groups' comments and submitted a response to the comments to the agency
decision-makers (which the public had no chance to review). Email from WRM to
OSM (May 17, 2018) (Exhibit 7).

10

**IV.   After rushing to file suit in the District of Columbia, WRM delayed the case for nearly eight months for settlement discussions.**

The Federal Defendants in WRM's suit in the District of Columbia filed their answer on October 8, 2019. Docket Report for WRM's D.C. Suit (Exhibit 8). Two days before the scheduling conference in that case, the parties moved to stay the proceeding for 120 days pending settlement discussions. *Id.* No procedural developments have occurred since the D.C. District Court granted the Parties' stay. *See id.* (minute order from November 7, 2019, staying case until March 5, 2020, at which time the parties will submit a status report on settlement). No administrative record has been produced and no scheduling order is in place. *Id.*

**V.   The Conservation Groups filed the instant suit in the District of Montana, raising significantly broader legal claims.**

On November 18, Conservation Groups filed their complaint in this case. (Doc. 1.) WRM intervened and subsequently filed its answer on December 23, 2019. (Doc.10). The Federal Defendants filed their answer on January 24, 2020. (Doc. 25.) Conservation Groups filed their Amended Complaint on January 28, 2020. (Doc. 27.) Conservation Groups' Amended Complaint raises additional claims under the Endangered Species Act (ESA) against additional federal defendants, which Conservation Groups noticed on November 18, 2019, in accordance with 16 U.S.C. § 1540(g)(2).

## ARGUMENT

A district court may, in its discretion, transfer a civil action to another district or division where it may have been brought "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). A district court should decide a motion to transfer "based on an 'individualized, case-by-case consideration of convenience and fairness.'" *Mont. Merch., Inc. v. Dave's Killer Bread, Inc.*, No. CV 17-26-GF-BMM, 2017 WL 2536530, at *3 (D. Mont. June 9, 2017) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  The Court considers a variety of factors in determining whether a motion to transfer venue under § 1404 is appropriate.  *Id.*  These include:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Paramount considerations in this multi-factor analysis are the plaintiff's choice of forum, which "is to be honored" "[a]bsent some compelling argument" and the powerful "interest of having controversies of a local interest resolved at home." *Alliance for the Wild Rockies v. Lyder*, No. CV 09-73-M-DWM, 2009 WL 10677286, at *1 (D. Mont. Oct. 19, 2009). Conversely, a party's interest in moving litigation to a given

forum (like WRM here) is entitled to significantly less consideration if the party is "not a resident or citizen of the forum state." *Berger v. Bank of Colo.*, No. CV 17-104-BLG-SPW-TJC, 2017 WL 5711409, at *3 (D. Mont. Nov. 27, 2017).

**I.    The Conservation Groups' choice of venue is entitled to substantial deference.**

**A.    The Conservation Groups' choice of forum is entitled to deference absent a compelling showing to the contrary by defendant, which WMR has not made.**

Conservation Groups filed their action in the judicial district, "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Their choice of forum is entitled to "substantial deference." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C. 2003). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Thus, WRM bears the considerable burden to demonstrate that transfer away from the Conservation Groups' choice of forum is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Alliance for the Wild Rockies*, 2009 WL 10677286, at *1 (party seeking to change venue mush make a "compelling argument").

To meet this burden, WRM must demonstrate that the factors will weigh "strongly" in favor of transfer. *Adoma v. Univ. of Phoenix*, Inc., 711 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508,

67 S.Ct. 839, 91 L.Ed. 1055 (1947)) ("A plaintiff's choice of forum is rarely disturbed, unless the balance is strongly in favor of the defendant.").

Specifically, WRM "bears the burden of establishing that (a) the plaintiff could have originally brought the action in the proposed transferee district, and that (b) considerations of convenience and the interest of justice weigh in favor of transfer." *Villa v. Salazar*, 933 F. Supp. 2d 50, 54 (D.D.C. 2013). Moreover, "in balancing the factors pertinent to the propriety of transferring the present action, the court begins by noting that a plaintiff's choice of forum should rarely be disturbed." *Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986).[2]

### B.   There is a strong interest in having local issues—such as those raised in the Conservation Groups' complaint—decided locally, in Montana.

Conservation Groups chose venue in Montana in the instant case because the mine is located in Montana, a substantial part of the events giving rise to the suit took place in Montana, and the Conservation Groups have strong ties to Montana. The Rosebud Mine is located in Rosebud County near the town of Colstrip, Montana. (Doc. 1, ¶ 41.) All of the concerns and causes of action raised by Conservation Groups in their Complaint—water pollution, massive and harmful

---

[2] The Conservation Groups do not here contest that their suit could have been brought in the District of Columbia, but note that there is significant doubt that a "substantial part of the events or omissions giving rise to the claim occurred" in that district. *See* 28 U.S.C. § 1391(b)(2).

water withdrawals from the Yellowstone River, greenhouse gas emissions from the Colstrip Power Plant, and the need for a just transition for the Colstrip community—exist or will occur in Montana should strip-mining of Area F proceed as permitted. (Doc. 1, ¶¶ 51-57.) The environmental review conducted jointly by OSM's western regional office (located in Denver, Colorado), MDEQ, and BLM's Miles City Field Office (located in Miles City, Montana), the supporting data that underpins that review was collected and analyzed in Montana (and to some degree, in Colorado), and the only public meeting on the permit occurred in Montana. Federal ROD at 1-27.

Furthermore, three of the five Conservation Groups are headquartered in Montana: Montana Environmental Information Center, Indian People's Action, and 350 Montana. (Doc. 1, ¶ 11.) Plaintiffs Sierra Club and WildEarth Guardians both have field offices and hundreds of members in Montana, exhibiting deep commitments to protecting Montana's treasured environment. (Doc. 1, ¶ 19.) The Sierra Club is the only plaintiff group that has a field office in the District of Columbia, but the group, itself, is headquartered in California. Similarly, WRM itself is headquartered and operates its strip-mine in Colstrip, Montana, and has no apparent connection to the District of Columbia. *cf. Berger*, 2017 WL 5711409, at *3 (party's forum preference is less weighty if party lacks connection to forum).

This is, accordingly, precisely the situation where the Conservation Groups choice of venue should not be disturbed. *Decker Coal Co.*, 805 F.2d at 843; *accord Alliance for the Wild Rockies*, 2009 WL 10677286, at *1 (plaintiff's choice of forum and local interest outweigh transfer).

## II.     The first-filed rule does not support transfer.

Under the first-filed rule, "a district court *may* 'decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Mont. Merch.*, 2017 WL 2536530, at *3 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)) (emphasis added). The rule is intended to promote judicial efficiency and to reduce the risk of inconsistent decisions from litigation of substantially similar claims between the same parties in different federal courts. *24 Hour Fitness USA, Inc. v. Coe*, 2012 WL 2370394, at *1 (D. Mont. June 21, 2012). It should not, however, be construed "as a rigid or inflexible rule to be mechanically applied." *Mont. Merch.*, 2017 WL 2536530, at *3 (quoting *Pacesetter Sys., Inc.*, 678 F.2d at 94-95). Nor should it be used to excuse forum shopping or condone racing to the courthouse. *Id.* As explained below, the first-filed rule does not apply to these facts. Nonetheless, consideration of the rule serves as a useful illustration of why transfer is inappropriate here.

16

With the underlying purpose of the rule in mind—the promotion of judicial efficiency and prevention of inconsistent decisions—courts examine three factors when determining whether the rule applies: "the chronology of the two actions, the identity of the parties involved, and the similarity of the issues at stake. *Id.* at \*3. The Ninth Circuit recognizes three general exceptions to the first-filed rule: bad faith, anticipatory suit, and forum shopping. *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 627-28 (9th Cir. 1991).

### C. The chronology of the two actions does not support transfer because WRM has stayed and intends to settle its narrow suit in the District of Columbia and because the instant suit is both broader and more advanced.

Notwithstanding WRM's hyperbolic characterization of Conservation Groups' case as being "in its infancy," relative to WRM's suit filed four months earlier, the real issue the first factor is intended to address is the *relative advancement of the two cases*. *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1150 (E.D. Cal. 2010) (equities weighed in favor of exception to first-filed rule where the earlier filed case had not advanced). The intent of the rule is to serve the interests of judicial efficiency by transferring a newly filed case to a venue where a similar case is already established and underway. *Id.*

WRM urges that transfer is appropriate because "the Federal Defendants have answered [WRM's] complaint in D.C." (Doc. 21 at 15.) This argument is unavailing, however, given the fact that both WRM *and* the Federal Defendants

17

have answered Conservation Groups' Complaint in the instant case. Moreover, the Conservation Groups have filed their Amended Complaint, which significantly broadens the scope of their claims, alleging violations of the ESA that ripened because more than 60 days have elapsed since Conservation Groups provided the required notice under 16 U.S.C. § 1540(g)(2) of their claims to the Federal Defendants.

With regard to the stage of litigation, the two cases are, at most, equally advanced, answers having been filed in both. But in terms of actual procedural advancement, Conservation Groups' case is in fact considerably more advanced than WRM's case in the District of Columbia, which has been stayed for 120 days, until March 5, 2020, pending the parties' efforts to settle that case. *See* Docket Report for WRM's D.C. Suit.[3] WMR's case in the District of Columbia has no case schedule, no administrative record, and no investment by that court beyond one minute order setting a scheduling conference and a second minute order vacating the scheduling conference and staying the case for four months for

---

[3] WRM has failed entirely to litigate its parallel suit against MDEQ before the Montana Board of Environmental Review—it failed to disclose any experts challenging MDEQ's decision, failed to seek discovery against MDEQ, and failed to file any motions against MDEQ by the motions deadline. Because its federal case is contingent upon its state appeal (since MDEQ initially excluded the 74 acres of strip-mining (Doc. 21 at 2-3)), it is very likely that WRM will also decline to litigate its federal claims in the District of Columbia.

settlement purposes. *Id.* Indeed, the posture of WRM's case—its hasty filing in a distant forum to which WRM has no connections followed by months of inaction—suggests forum shopping.

In sum, despite the fact that WRM raced to the courthouse to file its case before Conservation Groups filed theirs, transfer will not result in *any* conservation of judicial resources and the first factor weighs *against* transfer. *Intersearch Worldwide, Ltd. v. Intersearch Grp.*, Inc., 544 F. Supp. 2d 949, 963 (N.D. Cal. 2008) (where second-filed matter has proceeded beyond first filed in terms of chronology or substance of claims, transfer is inappropriate.); *Adoma*, 711 F. Supp. 2d at 1150 (where later filed case included broader federal and state law claims, application of first-filed rule was inappropriate).

> **D.  The first-filed rule does not apply because the parties to the suits are not substantially similar and the issues do not substantially overlap.**

The first-filed rule does not apply unless the parties in the two cases are "substantially similar" and the issues "substantial[ly] overlap." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015); *see United States v. One Oil Painting Entitled Femme en Blanc by Pablo Picasso*, 362 F. Supp. 2d 1175, 1185 (C.D. Cal. 2005) (where parties were not substantially similar and no risk of conflicting judgments, transfer was not appropriate).

Here, though both suits were filed against OSM, they involve substantially different parties. First, WRM's suit does not name *any* members of the Plaintiff Conservation Groups, and none of the Conservation Groups moved to intervene in WRM's litigation. Second, WRM's suit in the District of Columbia does not include any of the officials from OSM's western regional office, who were central to the challenged NEPA and ESA reviews and who are named in the Conservation Groups' original complaint. (Doc. 1, ¶¶ 24-25 (naming Marcello Calle and David Berry)); ROD at 1-28 (prepared and signed by personnel from OSM's western regional office). Moreover, the Conservation Groups' amended complaint adds claims against the U.S. Fish and Wildlife Service and Aurelia Skipwith, the agency's director. (Doc. 27, ¶¶ 28-29, 88-116.) Finally, the Conservation Groups' suit only involves WRM as a party because WRM sought to intervene. Thus, as in *Montana Merchandising*, 2017 WL 2536530 at *5, because "[t]his case involves additional plaintiffs, [and] defendants," the first-filed rule is inapplicable and does not support transfer.

In addition to a lack of sufficient parity between the parties, there is not "substantial overlap" between the claims raised in this case and the claims in WRM's case in the District of Columbia. Here, the Conservation Groups broadly challenge Federal Defendants' analysis of impacts to water resources and climate change—issues that are wholly absent from WRM's action in D.C. (*Compare* Doc.

1, ¶¶ 58-79, *with* WRM DC Cmpl. at 63-78.) The instant suit also includes the Conservation Groups' ESA, which are also wholly absent from WRM's suit. (Doc. 27, ¶¶ 88-116.) Thus, as in *Montana Merchandising*, the Conservation Groups' broader suit should not be forced into the forum where WRM has filed (but is not actively litigating) a narrower claim. 2017 WL 2536530 at *5 (first-filed rule did not apply where action filed in Montana involved "additional … claims" and where claims in Montana case "extend[ed] beyond the scope of the claims" of the other action); *see also Adoma*, 711 F. Supp. 2d at 1150 (later-filed case brought additional theories of recovery and state law claims in addition to federal claims, which weighed against application of first-filed fule); *Roller Bearing Co. of Am. v. Am. Software, Inc*., 570 F. Supp. 2d 376, 388 (D. Conn. 2008) (first-filed rule did not apply where claims in second-filed action were broader).

Finally, while both cases involve NEPA arguments about the procedural adequacy of Federal Defendants' alternatives analysis, those arguments are substantively different. Specifically, the Conservation Groups claim the agencies violated NEPA by failing to consider any middle-ground alternative with fewer than 19 years and 6,500 acres of strip-mining, i.e., an alternative that would allow for a planned and just transition. (Doc. 1, ¶¶ 80-85.) WRM, on the other hand, has argued in the District of Columbia that OSM violated NEPA by adopting an alternative that was not considered in the FEIS—which eliminated 74 acres of

strip-mining. WRM DC Cmpl. ¶¶ 69-78. As such, the claims do not substantially overlap—indeed they do not overlap at all. See *Alliance for the Wild Rockies*, 2009 WL 10677286, at *1 (holding that claims in separate actions against ESA critical habitat designation were "substantially different" and declining to transfer Montana case where plaintiffs in Montana case alleged that decision was under-protective and plaintiffs in separate action in Wyoming alleged decision was over-protective). Thus, there are no comity interests at issue because there is no potential for conflict between any opinions that may be rendered by the District of Columbia and this Court due to the distinctions between the respective parties' claims. Further, there are no implications to judicial efficiency, because the District of Columbia case is currently not being litigated by the parties, and if, as is likely, the parties to that action settle, it never will be.

### E. The first-filed rule does not apply because WRM's prior filing was anticipatory and a forum shopping excursion.

Here, as in *Montana Merchandising*, the first-filed rule should not apply because the facts strongly indicate forum shopping. Here, WRM was on notice that the Conservation Groups would likely challenge the federal approval of the Area F expansion. First, WRM knew about the Conservation Groups' detailed comments objecting to the Area F expansion because the coal company obtained them from the agencies and submitted a response to the agencies. *See* Email from WRM to OSM (May 17, 2018). Further WMR was also aware that on May 21, 2019, the

22

Conservation Groups brought an administrative appeal of MDEQ's approval of the Area F expansion before the Montana Board of Environmental Review. *See* MEIC State Appeal. In fact, WRM brought its own administrative appeal before the Board. *Se* WRM State Appeal.

Having reviewed the Conservation Groups' public comments and their state administrative appeal, WRM then filed its suit in the District of Columbia in July of 2019, one month after the OSM's western region's issuance of the Federal ROD and only *two days* after the Assistant Secretary's issuance of the Mine Plan Approval. *See* Mining Plan Approval. However, after racing to file the case in the District of Columbia, WRM has been content to let it languish. Once the Federal Defendants filed their answer in October, 2019, the parties waited until November (only two days before the initial scheduling conference was set) to request a 120 day stay for settlement discussions. *See* Docket Report for WRM's D.C. Suit. That Stay remains in effect until March 5, 2020. *Id.*

In short, WRM filed its suit in the District of Columbia two days after the agencies' final decision, but subsequently waited at least 8 months (until March 2020) to even raise the prospect of formulating a case scheduling order. The details of WRM's suit in the District of Columbia—the timing of WRM's complaint in the District of Columbia (which is not WRM's home forum) followed by a lengthy requested stay—are suggestive of a race to the courthouse that has effectively

allowed that litigation to languish for months, while providing WRM with fodder in its present attempt to force the Conservation Groups' unrelated NEPA and ESA challenge from the District of Montana into the distant District of Columbia. These actions bear all the hallmarks of forum shopping. *Mont. Merch.*, 2017 WL 2536530 at *4 (refusing to apply first-filed rule in light of indicia of anticipatory litigation and forum shopping); *Alliance for the Wild Rockies*, 2009 WL 10677286, at *2 (refusing to apply first-filed rule where plaintiffs rushed to file first complaint to set venue, while other party waited to file ESA claims after sending notice of intent to sue).

### III.    The convenience factors and interests of justice strongly support retaining venue in Montana.

To recapitulate, the convenience factors a court considers in determining whether transfer is appropriate include:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums.

*Jones*, 211 F.3d at 498-99

A.    **Virtually all relevant activities and decision-making occurred in Montana (or Colorado), not the District of Columbia.**

Here, as noted, virtually all of the environmental review, decision making, and public participation involved in the review and approval of the Area F expansion occurred in Montana and, to a lesser extent, Colorado. *See supra* Argument Part I. WRM places the weight of its argument on the contention that the Federal ROD was supposedly signed in the District of Columbia. (Doc. 21 at 13, 26.) But WRM is mistaken: the ROD was not signed in the District of Columbia. It was signed by David Berry, the OSM western regional director in Denver, on June 28, 2019. ROD at 28.

It is true that the Mine Plan Approval, a largely pro forma document devoid of any relevant analysis, was signed by Joseph Balash, Assistant Secretary for the Land and Minerals Management Division of the U.S. Department of Interior, in the District of Columbia on July 15, 2019. While the Mine Plan Approval doubtless constitutes the final approval for the modified mining plan, it is not equivalent to, and should not be confused with the ROD. The latter was a direct product of the site-specific review conducted by OSM's western regional office, BLM, and MDEQ to produce the EIS, and was signed in Denver by the regional director for OSM's western region. This is important because, as WRM correctly points out, "courts 'focus on where the decision making primarily took place.'" (Doc. 21 at

20) (quoting *W. Org. of Res. Councils v. BLM*, No. CV 16-21-GF-BMM, 2017 WL

374705, at *5 (D. Mont. Jan. 25, 2017)); *see also Flowers*, 276 F. Supp. 2d at 67-

68 (where D.C. District Court "had no meaningful ties to the controversy" and

"lack of evidence that federal officials in this forum 'played an active or significant

role' in the decision" venue there was not warranted.).

The FEIS and associated Federal ROD, which are the critical documents in

this case and contain the challenged analyses, were prepared by OSM's western

regional office (in Colorado), along with the BLM Miles City Field Office (in

Montana), and the MDEQ (also in Montana). *See* ROD at 1; FEIS at S-1. By

contrast, no documents other than the Mine Plan Approval letter were prepared or

signed in the District of Columbia. Therefore, to argue, as WRM does, that the

decision-making "primarily took place" in DC is specious at best. The reality is

that a "substantial part of the events giving rise to the claims occurred in Montana.

Montana represents a proper venue for Plaintiff's claims." *W. Org. of Res.

Councils*, 2017 WL 374705, at *10; *accord Flowers*, 276 F. Supp. 2d at 67-68.

**B.    The District of Montana has significant familiarity with
the law and facts surrounding fossil fuel development on
federal land in the West.**

As WRM acknowledges, there is often a presumption of neutrality as this

question relates to federal law issues. *Allstar Mktg. Grp., LLC v. Your Store

Online, LLC*, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009). Where one court is

arguably more familiar with a particular area of the law, however, it may be in the interests of justice to have that forum decide the matter. *Id.* The District of Montana has significant and developed caselaw addressing fossil fuel development on federal lands in the West. *See MEIC v. OSM*, 274 F. Supp. 3d 1074, 1087-105 (D. Mont. 2017) (ruling on expansion of coal mine); *WildEarth Guardians v. Zinke*, No. CV-17-80-BLG-SPW-TJC, 2019 WL 2404860, at *5-15 (D. Mont. Feb. 2, 2011) (proposed findings and conclusions addressing similar issues).[4] This expertise weighs in favor of keeping venue in Montana. *Alliance for the Wild Rockies*, 2009 WL 10677286, at *1 (denying transfer because District of Montana "is already familiar with the law and facts surrounding" the issue (there, lynx habitat)).

---

[4] *See also Indigenous Envtl. Network v. United States Dep't of State*, 347 F. Supp. 3d 561, 590-91 (D. Mont.) (NEPA and ESA ruling on Keystone XL pipeline); *W. Org. of Res. Councils v. BLM*, No. CV 16-21-GF-BMM, 2018 WL 1475470, at *17 (D. Mont. Mar. 26, 2018) (NEPA ruling on alternatives to expansive coal development and climate change impacts); *Guardians v. OSM*, No. CV 14-103-BLG-SPW, 2016 WL 259285, at *2 (D. Mont. Jan. 21, 2016) (NEPA ruling on coal mine expansion).

**C.     The Conservation Groups' choice of their (and WRM's) home forum in Montana is entitled to great deference, particularly given that the environmental impacts will occur in Montana.**

Conservation Groups' choice of forum has been addressed above. *See supra* Argument Part I. In short, it was appropriate at the time the suit was filed and remains appropriate now. "Typically a court affords great deference to a plaintiff's choice of forum as long as the forum represents a proper venue." *W. Org. of Res. Councils*, 2017 WL 374705, at *4. Moreover, "the Court sees great benefit in local controversies being decided at home." *Id.* While WRM rather ironically amplifies the national and global nature of Conservation Groups' climate claims, it is precisely *because* of the local impacts of climate change that Conservation Groups brought this suit, and it is these local impacts, exacerbated by the challenged actions of Federal Defendants, that Conservation Groups seek to require the Federal Defendants to analyze. (Doc. 27, ¶¶ 101-08 (cumulative impacts of climate change and water withdrawals for combustion of Area F coal threaten pallid sturgeon in the Yellowstone River). Moreover, the Conservation Groups' claims are not limited to concerns about climate change, but also include localized concerns about harm to waters, environment, and community from the expanding strip-mine. (Doc. 27, ¶¶ 53-73, 82-87.)[5]

---

[5] The Conservation Groups' specific claims about localized harm in the area surrounding the strip-mine distinguish this case from the cases involving only

WRM attempts to argue that because climate change is a global problem the only proper venue for any challenges to local actions based on climate change is in the District of Columbia. (Doc. 21 at 21-24.) This argument is senseless, and if carried to its natural conclusion, would lead to the perverse result that virtually all local management actions with national policy implications must be litigated in DC. *Cf. Flowers*, 276 F. Supp. 2d at 67-68.

### D. The Parties' contacts with the District of Montana, their contacts relating to the Conservation Groups claims, and consideration of costs support venue in Montana.

As noted previously, three of the five Plaintiff conservation groups are headquartered in Montana, and the remaining two have regional presences and hundreds of members in Montana. *See supra* Argument Part I.B. No plaintiff groups are headquartered in DC. WRM similarly is headquartered in Montana and operates the challenged coal strip-mine in Montana. *See supra* Factual Background Part I. It has no office in the District of Columbia, which entitles its interest in transferring the case to that forum to significantly less consideration. *Cf. Berger*, 2017 WL 5711409, at *3.

---

broad climate change concerns cited by WRM. *See Sierra Club v. U.S. Def. Energy Support Ctr.*, No. C 10-02673 JSW, 2011 WL 89644, at *1 (N.D. Cal. Jan. 11, 2011) (challenging petroleum import program); *Alec L. v. Jackson*, No. C-11-2203 EMC, 2011 WL 8583134, at *1 (N.D. Cal. Dec. 6, 2011) (challenging federal government's "general failure to reduce the United States' greenhouse gas emissions").

The Office of Surface Mining's regional office is based in Denver, which is where the Federal ROD was signed. *See supra* Factual Background Part II. The BLM's Miles City Field Office acted as a "cooperating agency" in the development of the FEIS and Federal ROD. *Id.* While OSexM (and every other federal agency for that matter), is headquartered in the District of Columbia, regional permitting decisions, and their associated environmental reviews, are conducted on site and from the Denver Regional Office.

Local Conservation Groups Montana Environmental Information Center, Indian People's Action, and 350 Montana have a strong interest in this litigation and the desire and ability to attend hearings and other proceedings if conducted in Billings, but not in the District of Columbia. *See* Hedges Decl., ¶¶ 1-3 (Exhibit 9); Woodland Decl. ¶¶ 1-3 (Exhibit 10); Price Decl., ¶¶ 1-3 (Exhibit 11). The relative costs of litigating in the two forums unquestionably weigh against transfer.

Finally, WRM's arguments about court congestion lack merit. Most recent statistics show that the case load in the districts are closely comparable, with 343 pending cases per judge in the District of Columbia and 350 pending cases per judge in the District of Montana.[6] Similarly, the median time from filing to

---

[6] United States Courts, Federal Court Management Statistics, September 2019, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.

disposition shows the districts to be comparable with the District of Columbia moving more quickly with civil cases (5.1 months vs. 10.6 months), and the District of Montana moving more quickly with criminal cases (8 months v. 10.2 months).[7] WRM, in any event, is in no position to make arguments about the timeliness of civil dispositions, given that it stayed its case in the District of Columbia for four months and has failed to produce a scheduling order.

## CONCLUSION

This Court should deny WRM's motion to transfer. WRM's request amounts to little more than a forum shopping expedition, as evidenced by its decision to look past its home forum and file its action in the District of Columbia—a mere two days after the final decision approving the Area F Mining Plan was signed. The fact that WRM has let that action languish ever since, and now requests that this Court not only transfer venue, but suggests this case be consolidated with one that has been stayed pending settlement discussions is further evidence that WRM is attempting to achieve a more favorable forum, rather than contribute to judicial efficiency.

Conservation Groups chose this venue for a variety of reasons, most particularly because the events giving rise to their claims occurred in Montana, a

---

[7] *Id.*

majority of the plaintiff groups are headquartered in Montana and have limited resources to travel outside the State, the challenged mine expansion is located in Montana, and this Court has significant familiarity and developed caselaw on these issues. Conservation Groups' choice is entitled to significant deference.

The first-filed rule is intended to serve the interests of judicial economy and to avoid the potential for conflicting precedent. Because of the widely divergent nature of WRM's and Conservation Groups' respective claims, neither of these considerations weighs in favor of transfer. The interests of equity and justice weigh against it.  For the Foregoing reasons, Conservation Groups respectfully request that the Court deny WRM's Request to transfer venue pursuant to 28 U.S.C. § 1404 and that it retain jurisdiction of this case.

Respectfully submitted this 28th day of January, 2020.

/s/ Shiloh Hernandez
Shiloh S. Hernandez
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (pro hac vice)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612

(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A), I hereby certify that the foregoing brief is double-spaced, has a typeface of 14 points or more, and contains less than 6,500 words exclusive of the caption, table of contents, table of authorities, and certificate of compliance.

/s/ Shiloh Hernandez
Shiloh Hernandez