John C. Martin
Susan Mathiascheck
Holland & Hart LLP
901 K Street NW, Suite 850
Washington, DC  20001

25 South Willow Street, Suite 200
P.O. Box 68
Jackson, WY 83001
Phone:  (307) 739-9741
Fax:  (307) 739-9744
jcmartin@hollandhart.com
smmathiascheck@hollandhart.com

Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY  83001
Phone:  (307) 739-9741
Fax:  (307) 739-9744
hmreimer@hollandhart.com

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Phone: (303) 295-8107
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*ATTORNEYS FOR WESTMORELAND ROSEBUD MINING LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, INDIAN PEOPLE'S ACTION, 350 MONTANA, SIERRA CLUB, WILDEARTH GUARDIANS,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT, et al.,<br><br>Defendants,<br><br>and<br><br>WESTMORELAND ROSEBUD MINING LLC,<br><br>Applicant Defendant-Intervenor. | Case No. 1:19-cv-00130-SPW-TJC<br><br><br><br><br>**BRIEF IN SUPPORT OF WESTMORELAND ROSEBUD MINING LLC'S MOTION TO DISMISS** |

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................2

ARGUMENT ....................................................................................4

    A.    Article III Standing Requirements ................................................4

    B.    Plaintiffs' Fail to Allege a Particularized, Concrete Injury........................6

        1.    Plaintiffs Must Allege Actual Injury From, and a Geographic Nexus To, Any Alleged Environmental Harm. ................................................7

        2.    Plaintiffs Cannot Show the Required Elements of Standing. .............10

    C.    Plaintiff Indian People's Action Cannot Establish Associational Standing to Pursue These Claims. ................................................13

CONCLUSION ................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*Amigos Bravos v. U.S. Bureau of Land Management*,
  816 F. Supp. 2d 1118 (D.N.M. 2011) ..............................................................9, 13

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................................5, 7

*Ctr. For Biological Diversity v. Dep't of Interior*,
  563 F.3d 466 (D.C. Cir. 2009) .............................................................................5

*Ctr. for Biological Diversity v. United States Envt'l Prot. Agency*,
  937 F.3d 533 (5th Cir. 2019) ....................................................................7, 8, 10

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ..............................................................................................6

*Fla. Audubon Soc'y v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) ...........................................................................8, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .........................................................................................7, 10

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ...............................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................passim

*MEIC v. BLM*,
  2013 WL 11323877 (D. Mont. June 14, 2013) ..................................................10

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ................................................................................4

*Oregon Advocacy Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) .........................................................................6, 14

*Pollack v. U.S. Dep't of Justice*,
  577 F.3d 736 (7th Cir. 2009) ................................................................................5

*Spokeo, Inc. v. Robbins*,
  136 S. Ct. 1540 (2016) ...................................................................7

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................4

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...................................................8, 9, 11, 13

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*,
  410 F.3d 964 (7th Cir. 2005) ....................................................9, 11

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................................5

*Washington Envt'l Council v. Belton*,
  732 F.3d 1131 (9th Cir. 2013) ....................................................10

## S<small>TATUTES</small> & R<small>ULES</small>

Fed. R. Civ. Pro. 12(b)(1) ...........................................................2, 15

Local Rule 7.1(d)(2)(A) ...................................................................17

## O<small>THER</small> A<small>UTHORITIES</small>

U.S. Constitution Article III........................................................passim

# INTRODUCTION

Defendant-Intervenor Westmoreland Rosebud Mining LLC

("Westmoreland"), formerly known as Western Energy Company, moves the Court

to dismiss this case because Plaintiffs Montana Environmental Information Center

("MEIC"), Indian People's Action, 350 Montana, Sierra Club, and WildEarth

Guardians all lack standing.[1]  These Plaintiffs fail to sufficiently allege the first and

most critical element of Article III standing:  a concrete and particularized injury.

Plaintiffs allege only generalized and unsupported harm untethered to mining in

Area F specifically.  They provide no information whatsoever about their

members.  They give no numerical, geographical, or other data on their

membership.  Nor do they identify any of their members' economic, professional,

recreational, or aesthetic interests or activities that will suffer because of coal

mining at Area F.  Without any such information, Plaintiffs cannot demonstrate,

even at the pleading stage, concrete and particularized "injury-in-fact" for

standing.   In addition, the organizational interests of Plaintiff Indian People's

Action are not germane to this litigation.

---

[1] Westmoreland has filed a motion to transfer venue (Doc. 20) of this case to the
U.S. District Court for the District of Columbia for consolidation with a previously
filed challenge to the same agency decisions.  Depending on the timing of this
Court's consideration of this motion in relation to the motion to transfer venue, it
may be appropriate for the D.C. District Court to decide the standing question in
this case.

Thus, the Court should dismiss all claims pursuant to Fed. R. Civ. Pro. 12(b)(1).

## BACKGROUND

### Area F Mine Plan Modification

The Rosebud Mine ("the Mine") is a 25,949-acre surface coal mine located near Colstrip, Montana.  In November 2011, Westmoreland applied for a Montana Department of Environmental Quality ("MDEQ") state mining permit to conduct mining in the adjacent "Area F."  Westmoreland also requested a Mine Plan Modification from the Office of Surface Mining Reclamation and Enforcement ("OSM") to exercise its valid existing lease rights in Area F.

In November 2018, after six years of preparation, OSM and MDEQ completed an Environmental Impact Statement ("EIS") for Area F to meet the requirements of the Montana Environmental Policy Act and National Environmental Policy Act ("NEPA").  The EIS took a hard look at the potential impacts of expanding the Mine into Area F including effects on water quantity and quality, and air emissions from production and eventual combustion of coal.  The Mine expansion would not increase the annual output of the Mine, but would extend the life of the Mine for an additional eight years.  *See* Final EIS at 1.[2]

---

[2] *Available at* https://www.wrcc.osmre.gov/initiatives/westernEnergy/documentLibrary.shtm

On April 18, 2019, MDEQ issued a record of decision approving the state mining permit with conditions.  On June 28, 2019, OSM published its own record of decision ("OSM ROD"), also authorizing the proposed mine plan modification with conditions.  On July 15, 2019, the Assistant Secretary, Joseph Balash, signed the Mine Plan Modification Decision.

**Plaintiffs' NEPA Challenge**

On November 18, 2019, Plaintiffs filed their complaint initiating this action ("Complaint").[3]  Plaintiffs contend that the OSM ROD and underlying EIS did not conform to NEPA and the Administrative Procedure Act.  Plaintiffs challenge:

- the sufficiency of OSM's evaluation of cumulative effects on surface water generally.  Complaint, ¶¶ 60-65.

- the evaluation of indirect and cumulative effects of continued water withdrawal from the Yellowstone River for operation of the Colstrip Power Plant (where coal from the Mine expansion would be burned).  Complaint, ¶¶ 66-73.

- the evaluation of greenhouse gas emissions from coal combustion.  Complaint, ¶¶ 74-81.

---

[3] Plaintiffs filed their Second Amended Complaint adding a fifth cause of action on February 6, 2020 (Doc. 31).  References to the Complaint in this brief are to the paragraph numbers in the Second Amended Complaint.

- the adequacy of alternatives to the proposed action.  Complaint, ¶¶ 82-87.

- OSM's decision not to consult under the Endangered Species Act regarding alleged adverse effects to pallid sturgeon of water withdrawals from the Yellowstone River.  Complaint, ¶¶ 88-118.

 Plaintiffs ask the Court to vacate OSM's Mine Plan Modification decision and enjoin mining in Area F.  Plaintiffs fail, however, to allege any concrete or particularized injury from the mining activities specific to Area F to maintain their claims against OSM.

## ARGUMENT

### A.    Article III Standing Requirements

Issues involving the jurisdiction of the court, such as standing, must be resolved before addressing the merits of the case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).  Whether a party has standing to bring a claim is a question of law.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014).

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies."  U.S. Const. Art. III, § 2.  Plaintiffs bear the burden of proof and must establish their standing as an "essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A party's standing to bring suit in federal court is to be

decided on the basis of the facts that existed at the time the action is filed. *Id.* at
569 n.4. A party cannot manufacture standing after the fact. *Pollack v. U.S. Dep't
of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009).

To meet the Article III standing requirements, a plaintiff must establish three
elements. *Lujan,* 504 U.S. at 560. First, it must show that it has suffered an
"injury in fact" that is "concrete and particularized" and "actual or imminent, not
conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations
omitted). Plaintiff's injury must be "certainly impending" and cannot rely "on a
highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S.
398, 410 (2013). Allegations of possible future injuries are not sufficient. *Id.*; *Ctr.
For Biological Diversity v. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009).

Second, a plaintiff must establish a causal connection between the injuries
complained of and the agency's action. Those injuries must be "fairly . . .
trace[able]" to the challenged action of the Federal Defendants. *Lujan*, 504 U.S. at
560-61 (citations omitted).

Third, a plaintiff must show that it is likely, as opposed to merely
speculative, that the injury will be addressed by a favorable decision of the Court.
*Id.* at 561. In other words, in order to satisfy Article III's case or controversy
requirement, the plaintiffs must allege a "personal stake in the outcome of the
controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

When the Plaintiff is an organization, rather than an individual, its standing turns on the three-part test for associational standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Moreover, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* A "'plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation omitted).

## B.   Plaintiffs' Fail to Allege a Particularized, Concrete Injury.

MEIC, Indian People's Action, 350 Montana, Sierra Club, and WildEarth Guardians do not adequately allege injury-in-fact related specifically to mining in Area F. Their generalized disagreement with the Mine Plan Modification does not support Article III standing.

6

### 1.    Plaintiffs Must Allege Actual Injury From, and a Geographic Nexus To, Any Alleged Environmental Harm.

"In environmental cases, courts must carefully distinguish between injury to the petitioner and injury to the environment," where Article III standing requires the former.  *Ctr. for Biological Diversity v. United States Envt'l Prot. Agency ("CBD v. EPA")*, 937 F.3d 533, 537 (5th Cir. 2019); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) ("The relevant showing for purposes of Article III standing, however, is not injury to the environment but injury to the plaintiff.").  Even where plaintiffs can demonstrate an injury based on harm to the environment through claims based on "an individual's aesthetic, recreational, and scientific interests[,] . . . such environmental interests cannot support an injury in fact unless they have been actually harmed or imminently will be."  *CBD v. EPA*, 937 F.3d at 537 (citing *inter alia*, *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016); *Clapper*, 568 U.S. at 409; *Lujan*, 504 U.S. at 564 n.2)).  "By ensuring a future injury is not 'too speculative,' the imminence requirement 'reduce[s] the possibility of deciding a case in which no injury would have occurred at all.'"  *Id.* (quoting *Lujan*, 504 U.S. at 564 n.2).

In proving this injury, Plaintiffs must demonstrate a clear geographic nexus to the area affected by the challenged activity.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[T]o establish standing plaintiffs must show that they

'use the area affected by the challenged activity and not an area roughly in the vicinity' of a project site." (citation omitted)); *see also Lujan*, 504 U.S. at 565–66 (similar); *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 668 (D.C. Cir. 1996) (explaining the need for plaintiffs to demonstrate "a geographic nexus to any asserted environmental injury").  Plaintiffs must provide evidence establishing geographic proximity between their interests and the alleged environmental harm; a court may not presume that the challenged activity will affect would-be plaintiffs everywhere. *Fla. Audubon Soc'y*, 94 F.3d at 667-68 ("In the case of broad rulemaking, a court may not assume that the areas used and enjoyed by a prospective plaintiff will suffer all or any environmental consequences that the rule itself may cause."); *Lujan*, 504 U.S. at 567 n.3 (concluding that "geographic remoteness" forecloses a finding of injury "when no further facts have been brought forward . . . showing that the impact . . . in those distant places will in some fashion be reflected" where the plaintiffs are).

Simply asserting "some interest somewhere within a large geographic area" is insufficient. *CBD v. EPA*, 937 F.3d at 538-39 (holding plaintiffs failed to show geographic overlap between pollutant discharges and their interests in the Gulf of Mexico, which covers 600,000 square miles and contains 640 quadrillion gallons of water); *see also Summers*, 555 U.S. at 499 (the court must "assure itself that" members of the plaintiff associations "plan to make use of the specific sites" where

environmental effects would allegedly be felt).  Accordingly, in *Summers*, the
Supreme Court concluded that that plans to visit unspecified national forests did
not suffice to challenge government action affecting only portions of the national
forests.  *Summers*, 555 U.S. at 499.  Likewise, the courts cannot assume that
effects in one area would necessarily be felt elsewhere in a large geographic area.
*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 973 (7th
Cir. 2005) ("[T]he water bodies at issue span, in some cases, hundreds of miles.
For instance, the Rio Grande runs the entire length of New Mexico, and pointing to
[evidence of] discharges into the Rio Grande does not establish an injury to the
portion of the river used by the affiant.") .

Particularly in cases alleging climate change impacts as a basis for standing,
"the Court must enforce some limits on what constitutes an injury-in-fact;
otherwise, it would be overwhelmed by a flood of lawsuits asserting generalized
grievances against polluters large and small.  Article III's standing requirement
was designed to prevent just this sort of occurrence."  *Amigos Bravos v. U.S.
Bureau of Land Management*, 816 F. Supp. 2d 1118, 1133 (D.N.M. 2011) (holding
plaintiffs who challenged oil and gas leases could not establish standing absent
geographic nexus to the leases themselves; they could not rely on generalized
climate change impacts); *see also Washington Envt'l Council v. Belton,* 732 F.3d
1131, 1143-44 (9th Cir. 2013) (holding plaintiffs failed to establish standing where

effect of challenged oil refinery emissions on climate change was "scientifically indiscernible"); *MEIC v. BLM*, 2013 WL 11323877 (D. Mont. June 14, 2013) (holding MEIC lacked standing to challenge oil and gas leases on the basis of climate change impacts alone), *overruled on other grounds*, 615 Fed. Appx. 431 (9th Cir. 2015).

### 2.    Plaintiffs Cannot Show the Required Elements of Standing.

Plaintiffs lack standing.  None of these organizations allege that any member would independently meet injury in fact requirement.  Injury to one or more individual members is the critical question under *CBD v. EPA* and *Friends of the Earth, Inc.*  While Plaintiffs devote ample argument in their Complaint to alleging generalized environmental harm as a result of the challenged action, they fail to allege any cognizable injury whatsoever to ***any particular member*** of MEIC, Indian People's Action, 350 Montana, Sierra Club, or WildEarth Guardians.  The Complaint broadly states that all Plaintiffs "have standing under Article III of the U.S. Constitution because the challenged actions cause them economic, professional, recreational, and aesthetic harm, which will be remedied by a favorable ruling from this Court."  Complaint, ¶ 13.  Aside from this bare assertion, the Complaint does not elaborate on any of these alleged harms.[4]  In fact,

---

[4] The closest allegation of injury is by MEIC, which states that its members, live, work, and recreate in areas that will be adversely affected by the Rosebud Mine expansion, Complaint ¶ 16, and WildEarth Guardians, which makes a similar

the Complaint never mentions a single member of Plaintiffs' organizations nor does it describe any of the members' activities, interests, or any purported ties to the Mine or areas in geographic proximity.  Thus, Plaintiffs fail to put forth any evidence to satisfy the first element to demonstrate associational standing under *Oregon Advocacy Center*.  Without this information, the Court cannot conclude that there exists any economic, professional, recreational, or aesthetic interest that might support an injury-in-fact

Moreover, while the Complaint alleges that three of the *organizations* "reside in Montana" (Complaint, ¶ 11) and that the Mine is located in Montana (*id.*), it provides no more specific geographical information.  Mere presence in the State of Montana is not enough:  courts have rejected plaintiffs' allegations of broad interests within a large geographic area.  *See, e.g.*, *Summers*, 555 U.S. at 499; *Tex. Indep. Producers & Royalty Owners Ass'n*, 410 F.3d at 973.  In this case, the Montana based organizations in Helena (MEIC), Missoula (350 Montana),[5] and

---

claim, Complaint ¶ 10.  But such a generalized assertion without any allegation of how any members' particular interests will be injured is insufficient, even at the pleading stage.  No other organization attempts even a modest allegation of injury to members.

[5] 350 Montana is not listed as a registered entity on the Montana Secretary of State's database.  350 Montana's website, however, provides a mailing address in Missoula, Montana.  *See* Exhibit A, also available at www.350montana.org/about/. Coincidentally, the P.O. box provided on the 350 *Montana* website is the same P.O. Box registered with the Secretary of State for another entity called 350

Butte (Indian People's Action) are 361, 465, and 348 miles, respectively, away

from the Mine.  At that distance it is no wonder that the organizations can point to

no injured members.

Further, the Complaint does not allege a geographic connection between

organization members and any cognizable harm from Area F activities.  No

member has alleged injury to any particular interest located near Area F, nor has

any member alleged an intent to continue the activities or uses giving rise to that

interest.  *Lujan*, 504 U.S. at 567 n.3 (concluding that "geographic remoteness"

forecloses a finding of injury "when no further facts have been brought forward . . .

showing that the impact . . . in those distant places will in some fashion be

reflected" where the plaintiffs are).

Westmoreland anticipates that to the extent Plaintiffs' members may allege

any injury at all relating to Area F, they are likely to claim the effects of climate

change felt in distant reaches of Montana where they work and recreate.  Remote

and generalized alleged injuries of greenhouse gas emissions shared by all would-

be plaintiffs, however, are not sufficiently concrete and particularized to

demonstrate injury in fact.  *See Summers*, 555 U.S. at 499; *see also Lujan*, 504

U.S. at 565–67; *Fla. Audubon Soc'y*, 94 F.3d at 667-68.  Moreover, generalized

---

*Missoula*.  Exhibit B.  Whether 350 Montana even exists as a state-wide
organization is speculative at this point.

concerns regarding climate change are insufficient to establish standing. *Amigos Bravos*, 816 F. Supp. 2d at 1128 ("Although Declarants may be legitimately concerned about the possible effects of climate change on the New Mexico environment, their allegations are conjectural and hypothetical."). "[G]eneralized and unsubstantiated concerns of changes to the environment" "[w]ithout more definitive proof of an actual or imminent environmental harm to the members' interests" cannot support standing. *Id*. at 1131. In sum, no member of the Plaintiffs' groups alleges any particularized harm tied to mining in the vicinity of Area F.

Accordingly, the generalized allegations of injury by Plaintiffs do not carry Plaintiffs' burden to establish standing.

**C.    Plaintiff Indian People's Action Cannot Establish Associational Standing to Pursue These Claims.**

Even if generalized allegations of non-specific injuries to the environment were sufficient to establish standing, they do not fulfill the organizational standing requirements for Indian People's Action. The allegations of generalized harm in the Complaint are not germane to the stated organizational purpose of Plaintiff Indian People's Action. *See Oregon Advocacy Ctr.*, 459 F.3d at 587.

Plaintiffs describe Indian People's Action as "a nonprofit organization that works in Montana *urban* areas to reach out to and empower Native Americans to address the social, economic, environmental and racial inequities that shape their

lives.  Indian People's Action works on multiple fronts: native rights, anti-discrimination, and the injustice in the justice system."  Complaint, ¶ 17 (emphasis added).  The organization's purpose, as reported to the Montana Secretary of State, confirms its mission "to work in Montana's urban areas and reservations, and border town and reach out and empower Montana's Indian families."[6]  The organization's webpage highlights its work in "youth leadership through art," "criminalization and mass incarceration," and "voting rights."  *See* www.indianpeoplesaction.org/projects.  While "environmental protection" is also listed, there is no detail whatsoever on a single specific area of environmental interest or concern to the Butte, Montana based urban group.  Alleged environmental and aesthetic injuries of coal mining hundreds of miles away in rural eastern Montana are far removed from these "urban" concerns.

## **CONCLUSION**

Plaintiffs cannot claim anything more than an alleged generalized injury from the Mine's operation, meaning that any purported interest in the outcome of this litigation is insufficient to establish injury in fact.  Without injury in fact, the remaining elements of Article III standing – traceability and redressability – are

---

[6] Montana Secretary of State Business Search webpage, *available at* http://sosmt.gov/business/ (search for Indian People's Action).  A copy of the entry for "Indian People's Action" is also attached as Exhibit C.

also unmet.  Because these Plaintiffs have failed to meet their burden to establish a

personal stake in the outcome of the litigation, Westmoreland respectfully requests

that this Court dismiss the Complaint for lack of standing under Fed. R. Civ. Pro.

12(b)(1).

Dated this 11th day of February, 2020.

*/s/ Hadassah M. Reimer*
John C. Martin
Susan Mathiascheck
Holland & Hart LLP
901 K Street NW, Suite 850
Washington, DC  20001
25 South Willow Street, Suite 200
P.O. Box 68
Jackson, WY  83001
Telephone:  (307) 739-9741
Fax:  (307) 739-9744
jcmartin@hollandhart.com
smmathiascheck@hollandhart.com

Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY  83001
Phone:  (307) 739-9741
Fax:  (307) 739-9744
hmreimer@hollandhart.com

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Phone: (303) 295-8107
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*Attorneys for Westmoreland Rosebud
Mining LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is double-spaced, has a typeface of 14 points or more, and contains less than 6,500 words exclusive of the caption, table of contents, tables of authorities, and certificates, in compliance with the Local Rule 7.1(d)(2)(A).

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2020, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*s/ Hadassah M. Reimer*
Holland & Hart LLP

14074482_v6

17