Shiloh S. Hernandez
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> DAVID BERNHARDT *et al.*, <br><br> Defendants. | Case No. 1:19-cv-00130-SPW-TJC <br><br> **PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................ii

TABLE OF AUTHORITIES...........................................................................iii

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................. 2

I.     Conservation Groups have alleged injury in fact. ....................... 2

II.    WRM applies an inappropriate legal standard. ......................... 6

       A.    Conservation Groups' assertions of standing are sufficient. ............................................................................. 6

       B.    Conservation Groups have alleged geographic nexus to the challenged action. ........................................................ 10

       C.    Conservation Groups need not name individual members to assert their standing. ................................................... 13

III.   Through their declarations, Conservation Groups have gone beyond the standard required at the pleading stage.................................... 15

CONCLUSION ............................................................................................ 21

CERTIFICATE OF COMPLIANCE ............................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Amigos Bravos v. BLM*,
  816 F. Supp. 2d 1118 (D.N.M. 2011) ......................................................... 10, 11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*,
  901 F. Supp. 2d 19 (D.D.C. 2012) ................................................................ 15

*Barnum Timber Co. v. EPA*,
  633 F.3d 894 (9th Cir. 2011) ........................................................................ 16

*Bennett v. Spear*,
  520 U.S. 154 (1997) .............................................................................. 2, 3, 5

*CBD v. EPA*,
  937 F.3d 533 (5th Cir. 2019) ......................................................................... 14

*Ecological Rights Found. v. Pac. Lumber Co.*,
  230 F.3d 1141 (9th Cir. 2000) ....................................................................... 10

*Friends of the Earth v. Laidlaw*,
  528 U.S. 167 (2000) ......................................................................... 8, 9, 12, 14

*Lucas v. S.C. Coastal Council*,
  505 U.S. 1003 (1992) ...................................................................................... 8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 6

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................................ 1

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ................................................................. 3, 4, 8

*MEIC v. BLM*,
  615 F. App'x 431 (9th Cir. 2015) ............................................................ 10, 13

*MEIC v. BLM,*
 No. CV-11-15-GF-SEH, 2013 WL 11323877 (D. Mont. June 14,
 2013) ................................................................................................ 10, 12

*Pollack v. U.S. Dep't of Justice,*
 577 F.3d 736 (7th Cir. 2009) ............................................................... 7

*Sierra Club v. Morton,*
 405 U.S. 727 (1972) ......................................................................... 3, 4

*Summers v. Earth Island Inst.,*
 555 U.S. 488 (2009) ....................................................................... 10, 19

*Warth v. Seldin,*
 422 U.S. 490 (1975) ............................................................................. 3

*Washington Envt'l Council v. Bellon,*
 732 F.3d 1131 (9th Cir. 2013) ........................................................... 10

*WildEarth Guardians v. Jewell,*
 738 F.3d 298 (D.C. Cir. 2013) .......................................................... 10

# INTRODUCTION

Intervenor-Defendants, Westmorland Rosebud Mining ("WRM") have moved to dismiss Conservation Groups' Second Amended Complaint (Doc.31) on grounds that Conservation Groups lack standing for failure to plead injury-in-fact. WRM is incorrect: Conservation Groups have done all that is necessary to allege standing. At the pleading stage the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). In their Second Amended Complaint Conservation Groups asserted that their members would suffer harm from the expansion of mining into Area F, and that harm will be remedied—at least in part—by a favorable ruling from this court.

That is all that is required at this stage of the litigation. However, Conservation Groups have gone further in response to WRM's motion to dismiss. They have furnished declarations from their members detailing the specific nature of the harm those individuals will suffer as a result of the mining of Area F, should it proceed without appropriate environmental review. While this degree of factual support is not required at the pleading stage of the litigation, Conservation Groups recognize that the factual showing required to support standing will only increase as the litigation proceeds and therefore furnish it that this matter may be put to rest.

## ARGUMENT

**I.      Conservation Groups have Alleged Injury in Fact.**

The issue before the Court is whether Conservation groups have standing to bring this suit, and specifically whether they have adequately pled injury in fact. WRM applies an incorrect legal standard to allege that Conservation Groups lack standing, and that they have not sufficiently alleged concrete or particularized injury.  Conservation Groups did all that was necessary in their Second Amended Complaint (Doc. 31), to allege standing at the pleading stage.  Moreover, as illustrated by their member declarations, attached hereto as Exhibits 1-4, Conservation Groups have gone much farther than is required at this stage of the litigation to describe the concrete, particularized, and geographically localized injury that will accrue to their members if mining goes forward in Area F.

The standard governing this issue is "relatively modest at this stage of the litigation," namely that, "general factual allegations of injury resulting from the defendant's conduct" may be sufficient at the pleading stage, "for on a motion to dismiss, [the court] presume[es] that general allegations embrace those specific facts that are necessary to support the claim." *Bennett v. Spear*, 520 U.S. 154, 168, 171 (1997) (internal citation omitted).  This is in part because "the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, '[t]he jurisdictional question of standing

precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (internal citations omitted).  While the threshold question of standing may become more inextricably entwined with the facts of the case as it proceeds beyond the pleading stage, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Id.*, (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)).

The rule governing the sufficiency of standing at the pleading stage evolves from the purpose of the standing requirement itself: a plaintiff who invokes the jurisdiction of the court must be able to demonstrate that there is an actual case or controversy to be decided, and that the petitioner has a "sufficient stake in an otherwise justiciable controversy[.]" *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972); *see also Seldin*, 422 U.S. at 498. ("In both dimensions [constitutional and prudential] it is founded in concern about the proper—and properly limited—role of the courts in a democratic society.")).

In order to demonstrate the presence of an actual controversy, plaintiffs must allege in their complaint an injury sufficient to allow the court to "presume specific facts under which petitioners will be injured[.]" *Bennett*, 520 U.S. at 168. Conservation Groups alleged that they "have standing under Article III of the U.S.

3

Constitution because the challenged actions cause them economic, professional, recreational, and aesthetic harm, which will be remedied by a favorable ruling from this Court." Doc. 31 at ¶ 13. This statement alone is enough to assert standing in a complaint. *Bennett*, 520 U.S. at 168; *Centex*, 658 F.3d at 1068; *see also Sierra Club*, 405 U.S. at 734 (recognizing that "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society" and that any of these types of harms "may amount to an 'injury in fact' sufficient to lay the basis for standing under § 10 of the APA.").

Conservation Groups go further, however. Their Second Amended Complaint (Doc. 31), also states that Plaintiff Montana Environmental Information Center's (MEIC's) "members live, work, and recreate in areas that will be adversely impacted by the Rosebud Mine expansion," that Plaintiff WildEarth Guardians' "members use and plan to continue to use and enjoy landscapes impacted by the Rosebud Mine Expansion," and that Plaintiff Indian People's Action, while it works primarily in Montana urban areas, seeks "to empower Native Americans to address the social, economic, environmental and racial inequalities that shape their lives." *Id.* at ¶¶ 16, 17,19. In *Bennett v. Spear*, the Court observed:

> Given petitioners' allegation that the amount of available water will be reduced and that they will be adversely affected thereby, it is easy to presume specific facts under which petitioners will be injured—for

4

example, the Bureau's distribution of the reduction pro rata among its customers. The complaint alleges the requisite injury in fact.

520 U.S. at 168.

As in *Bennett*, it is easy to presume specific facts under which Conservation Groups' members will be injured.  With regard to Plaintiff groups MEIC and WildEarth Guardians, whose members respectively "live, work, and recreate in areas that will be adversely impacted by the Rosebud Mine expansion," and "use and plan to continue to use and enjoy landscapes impacted by the Rosebud Mine Expansion," (Doc. 31 at ¶¶ 13, 19), it is easy to imagine that these members will suffer aesthetic and recreational injury to areas "impacted by the Rosebud Mine expansion."  With regard to Indian People's Action, while the group's primary focus is in in urban areas, it represents tribal members throughout the state, addressing, with relevance to this suit, economic and environmental inequalities that shape their lives.

It does not require a surfeit of imagination to suppose that IPA represents tribal members with connections to the area around the Rosebud Mine generally and area F in particular, as the mine is located near both the Northern Cheyenne and Crow reservations.  This supposition is academic, however, as Conservation Groups' standing declarations, filed as Exhibits 1-4 to this Response, describe precisely how individual members of each group will be injured by the Area F development, obviating the need for imagination.  These declarations supply the

5

"specific facts" required at the summary judgment stage of litigation and go far beyond what is necessary to survive WRM's Motion to Dismiss.

## II.   WRM Applies an Inappropriate Legal Standard.

WRM misapplies the applicable law in arguing that Conservation Groups lack standing.  WRM's allegation is that Conservation Groups have failed to adequately assert injury in fact.  Their argument may be distilled into three overlapping claims: First, WRM argues that Conservation Groups' allegations of "professional, recreational, and aesthetic harm" are insufficient without factual elaboration (Doc. 33 at 14); second, WRM asserts that Conservation Groups have not alleged sufficient geographic nexus with the proposed action; and third, WRM alleges that Conservation Groups fail to reference harm to individual members and merely assert generalized environmental harm, which is insufficient for standing purposes.  *Id.*[1]  The foundations upon which WRM rests its argument are misplaced, for the reasons described below.

### A.   Conservation Groups' Assertions of Standing are Sufficient.

WRM asserts that "a party's standing to bring suit in federal court is to be decided on the basis of the facts that existed at the time the action is filed," and that "a party cannot manufacture standing after the fact." (Doc. 33 at 9) (citing *Lujan v.*

---

[1] WRM additionally alleges that Plaintiff Indian People's Action lacks associational standing.  This assertion is addressed *infra.*

*Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992), and *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009), respectively).  WRM is apparently accusing Conservation Groups of doing precisely that.  However, there is a fundamental difference between including general allegations of standing in a complaint with the ability to substantiate them at a later stage of the litigation, and simply failing to make the allegation in the first place.  While WRM may not appreciate the distinction, the case it relies on to make its assertion articulates this distinction precisely.  The Court in *Defenders* declared that "[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Defenders of Wildlife*, 504 U.S. at 561.

That is precisely the case here.  Conservation Groups have adhered to the principle that "each element of standing must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.  Thus, WRM'S reliance on *Defenders*' holding for the proposition that Conservation Groups have not alleged sufficient facts to establish standing is misplaced because the Court in *Defenders* rejected plaintiff's standing arguments at the summary judgment stage, not the pleading stage of litigation.  The Supreme

Court subsequently highlighted this aspect of *Defenders*, and explained why the

standard it articulated there was not applicable to the pleading stage:

> The distinction, however, rests in law rather than chronology. *Lujan,*
> since it involved the establishment of injury in fact at the *summary*
> *judgment stage,* required specific facts to be adduced by sworn
> testimony; had the same challenge to a generalized allegation of injury
> in fact been made at the pleading stage, it would have been
> unsuccessful.

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (emphasis in

original).  The holding is predicated on the principle that, "[f]or purposes of a

motion to dismiss for want of standing, both the trial and reviewing courts must

accept as true all material allegations of the complaint and must construe the

complaint in favor of the complaining party."  *Centex*, 658 F.3d at 1068 (internal

citation omitted).

WRM's reliance on *Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000),

for their argument that Conservation Groups have asserted only generalized

environmental injury, rather than injury to the Conservation Groups and their

members, is similarly misplaced.  As in *Defenders*, the procedural backdrop of

*Laidlaw* against which standing was litigated was on a motion for Summary

Judgment, not on a motion to dismiss.  Despite the higher standard, the Court

found standing to exist because: "the affidavits and testimony presented by FOE in

this case assert that Laidlaw's discharges, and the affiant members' reasonable

concerns about the effects of those discharges, directly affected those affiants'

recreational, aesthetic, and economic interests.  *Laidlaw*, 528 U.S. at 183–84.

Conservation Groups' declarants assert similarly specific injury here.  Nonetheless,

this degree of specificity, and the degree of specificity WRM asserts Conservation

Groups should have included in their complaint is simply not required at this stage

of the litigation.

      Conservation Groups have, in fact, made sufficiently detailed assertions of

harm in their Second Amended Complaint by claiming that the challenged actions

will cause them "economic, professional, recreational, and aesthetic harm," that

their "members live, work, and recreate in areas that will be adversely impacted by

the Rosebud Mine expansion," and that they "use and plan to continue to use and

enjoy landscapes impacted by the Rosebud Mine Expansion."  *Id.* at ¶¶ 16, 19.  In

short, Conservation Groups have done what the Court in *Laidlaw* indicated is

required at this stage: "environmental plaintiffs adequately allege injury in fact

when they aver that they use the affected area and are persons 'for whom the

aesthetic and recreational values of the area will be lessened' by the challenged

activity." 528 U.S. at 183.

      Beyond this irreducible minimum, and contrary to WRM'S argument, the

assertion of standing in general and injury in fact in particular cannot be distilled to

a conveniently formulaic approach: "Laidlaw confirms that the constitutional law

of standing so recognizes, and does not prescribe any particular formula for

establishing a sufficiently "concrete and particularized," aesthetic or recreational injury-in-fact." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1150 (9th Cir. 2000) (internal citations omitted).  WRM's assertion that some higher standard of specificity should apply here is simply incorrect.

### B.    Conservation Groups Have Alleged Geographic Nexus to the Challenged Action.

WRM argues that to prove injury in fact, "Plaintiffs must demonstrate a clear geographic nexus to the area affected by the challenged activity."  (Doc. 33 at 11 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).)  WRM then incorrectly "anticipates"—without support—that Conservation Groups "are likely to claim the effects of climate change felt in distant reaches of Montana where they work and recreate," Doc. 33 at 12, and cites a string of inapposite caselaw.  Doc. 33 at 13 (*citing Amigos Bravos v. BLM*, 816 F. Supp. 2d 1118, 1133 (D.N.M. 2011); *Washington Envt'l Council v. Bellon*, 732 F.3d 1131, 1143–44 (9th Cir. 2013); *MEIC v. BLM*, No. CV-11-15-GF-SEH, 2013 WL 11323877 (D. Mont. June 14, 2013) *reversed and remanded sub nom. MEIC v. BLM*, 615 F. App'x 431 (9th Cir. 2015)).

But Conservation Groups do not rely on climate change impacts to support their standing, and the cases cited by WRM have no bearing here.  It is well settled that plaintiffs may challenge an agency's climate analysis under NEPA by relying on aesthetic, non-climate injuries caused by the agency action.  *WildEarth*

*Guardians v. Jewell*, 738 F.3d 298, 306–307 (D.C. Cir. 2013); *accord MEIC v. BLM*, 615 F. App'x 431, 432–33 (9th Cir. 2015). Here, Conservation Groups' aesthetic and recreational injuries "follow[] from [the] inadequate FEIS whether or not the inadequacy concerns the same environmental issue that causes their injury." *WildEarth Guardians*, 738 F.3d at 307. A decision overturning the Area F expansion—on any ground—would redress these injuries "regardless whether the FEIS's specific flaw relates to local or global environmental impacts[.]" *Id.*

In their Second Amended Complaint, Conservation Groups asserted that their members will be harmed economically, recreationally, and aesthetically by the proposed action, and that their membership lives, works and recreates in areas that will be affected by the development of Area F. Conservation Groups do not rely on climate change as a basis for standing, and their declarations, attached hereto as Exhibits 1-4, specifically reference the recreational and aesthetic injuries the declarants will suffer as a result of their past use and enjoyment of Area F and its immediate environs. This is in contrast to *Amigos Bravos*, where the court held the plaintiffs lacked standing because they provided:

> generalized and unsubstantiated concerns of changes to the environment they perceive as having occurred or as likely to occur at some time in the future. Without more definitive proof of an actual or imminent environmental harm to the members' interests, the Court cannot conclude that Plaintiffs have demonstrated an injury-in-fact.

816 F. Supp. 2d at 1131.  Here, as demonstrated by Plaintiff's Second Amended Complaint and the declarations attached hereto, in addition to concerns about climate change, Conservation Groups and their members allege aesthetic, health, and recreational injury as a direct result of the imminent development of Area F.

WRM's invocation of *MEIC v. BLM* is particularly relevant—although perhaps not in the way they intend—as is their fleeting mention that the case was "overruled on other grounds." (Doc. 33 at 14).  In that case, the District Court held that plaintiffs lacked standing because "[t]hey have not demonstrated that the sale of the oil and gas leases at issue will lead to climate change impacts resulting in injury to their recreational and aesthetic interests in lands near the leases."  No. CV-11-15-GF-SEH, 2013 WL 11323877, at *7.  It is first worth noting that, like *Lujan* and *Laidlaw*, the standing question in *MEIC v. BLM* was decided on *summary judgment*, not on a motion to dismiss:

> At the summary judgment stage of the litigation, plaintiffs must come forward with more than just bare assertions of perceived climate change impacts, Specific facts are required. Plaintiffs have failed to demonstrate that BLM's alleged failure to follow proper procedure created an increased risk of actual, threatened, or imminent harm to their recreational and aesthetic interests in lands near sites. Injury-in-fact has not been established.

*Id.* at *6 (internal citation omitted).  Of greater import to the instant case, however, *MEIC v. BLM* was overruled on *precisely* the grounds at issue here, as the Ninth Circuit found that:

12

> The recreational and aesthetic interests asserted by Appellants'
> members may establish actual injury to the extent such interests would
> be concretely harmed by the challenged governmental action. In
> analyzing these claims of injury, the district court erred by failing to
> consider surface harms caused by development of the challenged
> leases and instead focusing only on the climate-change effects of such
> development. Although Appellants' claims of procedural *error* relate
> to the government's alleged failure to consider climate-change effects,
> Appellants' injuries which *resulted from* that error need not.

*MEIC*, 615 F. App'x at 432 (internal citation omitted).  The court went on to

observe:

> For standing, it matters only whether the challenged governmental
> action would cause the plaintiff a concrete and redressable injury.
> Once such injury is established, the plaintiff may seek to invalidate
> the action that caused it "by identifying all grounds on which the
> agency may have failed to comply with its statutory mandate."

*Id.* at 432 (internal citation omitted).  As in *MEIC v. BLM*, Conservation Groups

have challenged agency action "by identifying all grounds on which the agency

may have failed to comply with its statutory mandate[,]" including climate change.

*Id.*  Here, as there, however, Conservation Groups' standing does not depend on

injuries from Area F's climate impacts, but rather rests on the recreational, health,

and aesthetic interests asserted by their members in both their Second Amended

Complaint and their declarations attached hereto.

## C.   Conservation Groups Need Not Name Individual Members to Assert Their Standing.

WRM argues that Conservation Groups lack standing because "[n]one of

these organizations allege that any member would independently meet [the] injury

in fact requirement," calling out Conservation Groups alleged failure to assert a cognizable injury to "*any particular member*". (Doc. 33 at 14) (emphasis in original)). Again, WRM conflates the requirements to demonstrate standing at the pleading phase with those prevailing at later stages of litigation, such as on a motion for summary judgment. WRM characterizes the invocation of individual members as "critical" under *CBD v. EPA*, 937 F.3d 533 (5th Cir. 2019), and *Laidlaw*. But neither of these cases speak to the issue WRM raises here, namely whether Conservation Groups were required to name one or more individual members in their complaint. *CBD v. EPA* addressed plaintiff environmental group's petition for judicial review of agency action. 937 F.3d at 536. Plaintiffs challenged EPA's grant of a general discharge permit, claiming it would lead to increased pollution in the Gulf of Mexico. In finding the group lacked standing, the Fifth Circuit determined that plaintiff's member affidavits failed to meet standing requirements on multiple grounds, including that of geographic nexus. *Id.* at 538. *CBD v. EPA* simply isn't relevant to the point WRM is trying to make, because it does not stand for the proposition that Conservation Groups' complaint must invoke an individual member or members.

*Laidlaw* does not support this proposition either. The Court found plaintiffs lacked standing on a motion for summary judgment, but it specifically noted that at the pleading stage, less was required. 528 U.S. at 198. The Court did not address

14

the question of whether plaintiffs had to invoke an individual member or members in their pleadings.  Other courts have done so, however: "several Courts have found that a plaintiff need not identify the affected members by name at the pleading stage . . . At the pleading stage, the Court presumes that general allegations encompass the specific facts necessary to support the claim, so the plaintiff need not identify an affected member by name. *Ass'n of Am. Physicians & Surgeons, Inc. v. Sebelius*, 901 F. Supp. 2d 19, 31 (D.D.C. 2012) (internal citations omitted), *aff'd sub nom. Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468 (D.C. Cir. 2014).

Conservation groups reference their membership collectively in their Second Amended Complaint.  They have subsequently identified individual members and their anticipated injuries as a result of the proposed mining of Area F in declarations attached to this Response.  They have done more than is necessary at the pleading stage, and the omission of individual members' names from their Second Amended Complaint is no basis for finding that they lack standing.

## III.   Through their Declarations, Conservation Groups Have Gone Beyond the Standard Required at the Pleading Stage.

As discussed *supra*, Conservation Groups' second amended complaint did all that was necessary to effectively allege standing at the pleading stage and to survive a motion for summary judgment.  But standing is not merely a pleading requirement,  It is "rather an indispensable part of the plaintiff's case, each

15

[constitutional standing] element must be supported in the same way as any other

matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and

degree of evidence required at the successive stages of the litigation." *Barnum*

*Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011).  In the interests of

expediting this litigation and promoting judicial economy, Conservation Groups

have chosen to meet a higher standard than is required to defeat WRM's Motion to

Dismiss, in hopes of addressing this issue only once as the litigation proceeds.  For

this purpose, Conservation Groups have attached the declarations of Steve Gilbert,

Jeremy Nichols, Michaelynn Hawk, and John Woodland, in support of

Conservation Groups' individual members' standing.

 Steve Gilbert is a member of MEIC and the Sierra Club who has spent

significant amounts of time both professionally and recreationally in and around

Colstrip, the Rosebud Mine, and Area F. Exhibit 1, ¶11.  Mr. Gilbert's use of the

area around the Mine has served as the basis for standing in challenges to Area B

and other parts of the mine.  He visits the area "at least annually for work,

recreation, or in my work as a board member of conservation organizations." *Id.*

Mr. Gilbert expects to continue to visit the area "at least on an annual basis in the

coming years." *Id.* With regard to Area F in particular, Mr. Gilbert states,

> Regarding my recent trips to Area F, in 2017 I traveled from Hardin
> up the Sarpy Creek Road, over and into Area F. In the summer of
> 2018, I traveled alone and visited Area F to appreciate its aesthetic
> values, traveling on the roads available to the public through the

> proposed permit area. In the summer of 2019, I visited West Fork
> Armells Creek, its tributaries, and the proposed Area F expansion with
> MEIC staff. During this trip, I traveled on several roads that cross
> through the proposed permitted lands, including Horse Creek Road.

*Id.* at ¶ 16. Mr. Gilbert plans to continue his visits to the area around the Rosebud

Mine and Area F. *Id.* at ¶ 17. Because of his history in the area and plans to

continue to recreate in and visit the area, Mr. Gilbert will be harmed if the

proposed development of Area F goes forward without sufficient environmental

review: "the threat of air and water pollution from the mine is incredibly

disconcerting. There is no question that my aesthetic and recreational appreciation

for the beautiful country in the West Fork Armells Creek basin … will be greatly

diminished if the area is strip-mined." *Id.*

Jeremy Nichols is a member and employee of WildEarth Guardians. Exhibit

2, ¶ 3. He has also been a member of the Sierra Club since 2011. *Id.* at ¶4. In his

professional capacity, he engaged extensively in Interior's review of the Area F

expansion. *Id.* at ¶7. He helped draft and submit comments regarding the proposed

Area F expansion. *Id.* at ¶8. Moreover, Mr. Nichols visits the area in a recreational

capacity, approximately once every two years, and has done so since 2011. *Id.* at

¶9. His most recent visit to the Rosebud mine area was in June of 2018:

> I hiked on public lands in the upper West Armells Creek area just to
> the northwest of the current Rosebud mining operations, viewed
> wildlife and scenery, and enjoyed being outdoors. I drove south on
> and walked along the West Armells Creek Road touring the area. I

also hiked and viewed wildlife on lands south and east of the town
Colstrip off of State Highway 39.

*Id.* at ¶ 10. Mr. Nichols states that the sights and sounds of mining activities

diminish his enjoyment of the area the closer the gets to the mine. *Id.* at ¶¶12, 14.

The planned Area F expansion would expand the industrial footprint of the mine,

disturb land that is currently undeveloped, and create an "unsightly pit" on the

landscape, introducing heavy equipment and sound pollution, and diminishing his

recreational enjoyment of the area, thereby causing him direct recreational and

aesthetic injury. *Id.* at ¶15.  Extending the life of the mine would also extend the

duration of the sights and sounds of the power plant, which currently interferes

with his recreational enjoyment.  *Id.* at ¶16. If the Area F plan was not approved, or

was approved with constraints, his recreational enjoyment of the area would be less

impacted than if the mining of Area F goes forward under current conditions *Id.* at

¶19.

Michaelynn Hawk is a member and Executive Director of Indian People's

Action.  IPA works in Montana's urban areas, reservations, and border towns to

empower Indian families and address economic, social, racial, and environmental

inequalities that harm them.  Exhibit 3 at ¶2.  Environmental impacts of the

Rosebud mine generally and Area F expansion in particular are within the scope of

issues IPA seeks to address.  *Id.* Ms. Hawk has lived much of life in southeast

Montana and maintains strong connections there.  *Id* at ¶5. Even after she moved,

18

her sons continued to live in Lame Deer, and she regularly visited the area through 2018. *Id.* at ¶6.  "When I would visit I would see the power plants and strip mine and I worry about the pollution harming me, my family, and friends in the area." *Id*.  Her sons moved to Billings in 2018 but she still has family in Lame Deer and continues to visit regularly.  *Id.* at ¶7.  She worries that the Area F expansion will continue to destroy the countryside and pollute the area.  She is also concerned about the incidence of asthma in the area, which is higher than normal, and worries that pollution from Area F and continued operation of the mine will harm her when she visits, as well as harming her friends and family who live there. *Id.* at ¶8.  If the expansion of the mine is stopped or if the agencies are required to more thoroughly evaluate and disclose the harms from the expansion, her injury will be alleviated. *Id*. at ¶ 9.

Ms. Hawk's declaration makes clear that the organizational interests of Plaintiff Indian People's Action are germane to the challenged action in this suit, and that as a member and executive director of the organization, the injury she will suffer as a result of the development of Area F is sufficient to establish standing for the organization.  *See Summers*, 555 U.S. at 498.

John Woodland lives in Superior, Montana.  He worked for 10 years as the Town of Superior's and Superior Rural Area's fire chief.  He is a member and co-chair of 350Montana.org.  He shares 350Montana.org's goals of "protecting our

shared climate and holding coal mining corporations, power companies, and the

Montana Department of Environmental Quality (DEQ) accountable for reckless

and environmentally damaging coal mining." Exhibit 4 at ¶ 5. In June of 2015,

Mr. Woodland travelled to Miles City and visited "the Otter Creek area, Tongue

River and Colstrip. I admired the stark and rugged beauty of southeastern Montana

while driving along Highway 39, which traverses the Armells Creek drainage. I

spent a night tent camping right along the lower Yellowstone River, walked along

its bank and enjoyed its beauty." *Id.* at ¶7. Conversely, Mr. Woodland also

witnessed and was affected by "the ravages of coal strip mining at the Rosebud

Coal Mine. I was able to view the heavy equipment associated with coal strip

mining at the Rosebud Mine." *Id.* at ¶8. Moreover, the connection between the

coal mined at the Rosebud Mine and the coal burned at the Colstrip Power Plant

"is a primary motive for my participation as a volunteer and leader in

350Montana.org." *Id.* With respect to the Area F expansion, Mr. Woodland states,

"I loathe the idea of the Rosebud Mine further expanding into Area F, and causing

the irreparable environmental damage that I witnessed in the area around Colstrip."

*Id.* at ¶9. He plans to travel back to the Colstrip area and the Yellowstone River

near Colstrip within the next few years. *Id.* at ¶10. If Area F is developed as

currently approved, it will "further destroy the ecological integrity of this beautiful

area and impact the enjoyment of my travel in the area." *Id.*

**CONCLUSION**

Conservation Groups not only alleged standing sufficiently in their Second Amended Complaint to survive WRM's Motion to Dismiss, they have—through their declarations, attached hereto as Exhibits 1-4—provided factual verification of their standing claims to a much higher standard than is required at the pleading stage.  For the foregoing reasons, Conservation Groups respectfully request that the Court deny WRM's Motion to Dismiss.

Respectfully submitted this 3rd day of March, 2020.

/s/ Melissa Hornbein
Melissa A. Hornbein
Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (pro hac vice)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A), I hereby certify that the foregoing brief is double-spaced, has a typeface of 14 points or more, and contains less than 6,500 words exclusive of the caption, table of contents, table of authorities, and certificate of compliance.

/s/ Melissa Hornbein
Melissa A. Hornbein