Susan Mathiascheck
Holland & Hart LLP
901 K Street NW, Suite 850
Washington, DC  20001
Phone: (307) 739-9741
Fax: (307) 739-9744
smmathiascheck@hollandhart.com

John C. Martin
Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY  83001
Phone: (307) 739-9741
Fax: (307) 739-9744
jcmartin@hollandhart.com
hmreimer@hollandhart.com

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Phone: (303) 295-8107
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*ATTORNEYS FOR WESTMORELAND ROSEBUD MINING LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, INDIAN PEOPLE'S ACTION, 350 MONTANA, SIERRA CLUB, WILDEARTH GUARDIANS,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT, et al.,<br><br>Defendants,<br><br>and<br><br>WESTMORELAND ROSEBUD MINING LLC,<br><br>Applicant Defendant-Intervenor. | Case No. 1:19-cv-00130-SPW-TJC<br><br><br><br>**BRIEF IN SUPPORT OF WESTMORELAND ROSEBUD MINING LLC'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY REGARDING PLAINTIFFS' STANDING** |

## **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ...................................... **ERROR! BOOKMARK NOT DEFINED.**

    I.    Inconsistencies and Conflicts Between Mr. Gilbert's Prior Sworn Statements and Current Allegations Call for Discovery. ..........4

    II.    Discovery Is Needed to Clarify Vagueness in Mr. Nichols' Declaration. ....................................................................................11

CONCLUSION ...................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*,
  937 F.3d 533 (5th Cir. 2019) ..................................................................................2

*Defs. of the Wildlife v. Hodel*,
  707 F. Supp. 1082 (D. Minn. 1989), *aff'd sub nom. Defs. of
  Wildlife v. Lujan*, 911 F.2d 117 (8th Cir. 1990), *rev'd sub nom.
  Defs. of Wildlife*, 504 U.S. 555 .............................................................................3

*Fla. Audubon Soc. v. Bentsen*,
  54 F.3d 873 (D.C. Cir. 1995), *rev'd en banc*, 94 F.3d 658 (D.C.
  Cir. 1996) ...............................................................................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)................................................................................................3

*Gerlinger v. Amazon.com Inc.*,
  526 F.3d 1253 (9th Cir. 2008) ...........................................................................2, 14

*Hallett v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) ..................................................................................2

*Klein v. Freedom Strategic Partners, LLC*,
  595 F. Supp. 2d 1152 (D. Nev. 2009).....................................................................4

*Land v. Dollar*,
  330 U.S. 731 (1947)................................................................................................2

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ................................................................................4

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................................2, 3

*Summers v. Earth Island Inst.*,
  555 U.S. (2009)..................................................................................................2, 14

**TABLE OF EXHIBITS**

Exhibit A        Subpoena Duces Tecum of Jeremy Nichols

Exhibit B        Subpoena Duces Tecum of Steve Gilbert

Exhibit C        December 18, 2012 Declaration of Steve Gilbert; *MEIC v. DEQ, No. CDV 2012-1075*

Exhibit D        February 7, 2014 5 Intervenors' Responses to Appellant's Interrogatories and Requests for Production; *MEIC v. DEQ, No. CDV 2012-1075*

Exhibit E        February 13, 2014 Transcript of Deposition of Steve Gilbert; *MEIC v. DEQ, No. CDV 2012-1075*

Exhibit F        February 13, 2015 Affidavit of Steve Gilbert in Support of Plaintiffs' Motion for Summary Judgment and Brief in Support of Plaintiffs' Motion for Summary Judgment; *MEIC v. DEQ, No. CDV 2012-1075*

Exhibit G        June 14, 2016 Affidavit of Steve Gilbert in Support of Plaintiff's Motion for Summary Judgment; *In the Matter of: Appeal Amendment AM4, Western Energy Company, Rosebud Strip Mine Area B, Permit No. C1984003B*, Case No. BER 2016-03 SM

Exhibit H        March 19, 2018 Excerpt of Transcript of AM4 Evidentiary Hearing; *In the Matter of: Appeal Amendment AM4, Western Energy Company, Rosebud Strip Mine Area B, Permit No. C1984003B*, Case No. BER 2016-03 SM

Exhibit I        November 20, 2019 Transcript of Deposition of Steve Gilbert; *In the Matter of: Notice of Appeal and Request for Hearing by Western Energy Company Regarding Approval of Surface Mining Permit No. C2011003F*, Case No. BER 2019-03 OC

## INTRODUCTION

Westmoreland Rosebud Mining LLC ("Westmoreland") moved to dismiss this action because Plaintiffs lack Article III standing. ECF No. 32. In response, Plaintiffs submitted vague and inconsistent declarations that fail to link the Area F mine plan modification to any credible injury. ECF Nos. 44-1 – 44-4. Plaintiffs' complaint should be dismissed. Should, however, this Court find that Plaintiffs have raised a factual issue, applicable case law authorizes Westmoreland to conduct limited discovery regarding MEIC's, Sierra Club's, and WildEarth Guardians' standing.[1]

Thus, Westmoreland requests leave to (i) conduct limited depositions of Steve Gilbert (declarant for MEIC and Sierra Club) and Jeremy Nichols (declarant for WildEarth Guardians), and (ii) serve Mr. Gilbert and Mr. Nichols with the subpoenas *duces tecum* attached hereto as Exhibits A and B. This discovery would be narrowly focused on verifying Mr. Gilbert's and Mr. Nichols' personal interests in land near Area F.

---

[1] Plaintiffs Indian People's Action and 350 Montana present no factual allegations that support their standing. Accordingly, Westmoreland does not seek discovery of these Plaintiffs and, instead, relies on its motion to dismiss. *See* ECF No. 33 at 13-14, *id.* at 11 n.5.

# ARGUMENT

District courts have "[b]road discretion . . . to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (first alteration in original) (internal quotation omitted); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire by affidavits or otherwise, into the facts as they exist." (internal citations omitted)). Discovery is warranted here to resolve the factual discrepancies apparent from Plaintiffs' standing claims.

"[T]o establish standing plaintiffs must show that they use the area affected by the challenged activity and not an area roughly in the vicinity of a project site." *Summers v. Earth Island Inst.*, 555 U.S. at 488, 499 (2009) (internal quotations omitted). Moreover, a plaintiff cannot establish standing by seeking out the claimed injury. *See Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*, 937 F.3d 533, 540-41 (5th Cir. 2019) (someone who goes looking for pollution cannot claim an aesthetic injury from seeing it). Although standing can be established through affidavits or declarations, mere generalities will not suffice. Rather, a plaintiff "must set forth by affidavit or other admissible evidence 'specific facts' . . . as to the existence of such standing." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504

2

U.S. 555, 561 (1992)). Standing-based discovery is routinely conducted in suits brought by organizations whose standing derives from individual members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 177 (2000) (noting that the district court had examined affidavits and deposition testimony from members of the plaintiff organizations when analyzing standing).[2]

Here, Plaintiffs allege standing derived from their members' alleged aesthetic and recreational interest in land near Area F. Mr. Gilbert's and Mr. Nichols' declarations, however, do not show that these individuals use and enjoy lands affected by the proposed action, and certainly do not establish the very "specific facts" necessary to establish standing. As explained below, Mr. Gilbert's declaration is inconsistent with his prior sworn testimony in related litigation. Mr. Nichols' declaration is inappropriately vague as to where he recreates and appears to be inconsistent with prior sworn declarations. Consequently, Mr. Gilbert's and Mr. Nichols' declarations cannot be taken as true and must be tested through

---

[2] *See also Defs. of Wildlife*, 504 U.S. at 563-64 (referencing deposition testimony by member of environmental organization and concluding that organization lacked standing to challenge agency action); *Fla. Audubon Soc. v. Bentsen*, 54 F.3d 873, 880 (D.C. Cir. 1995) ("We conclude that Ms. Jensen, based on her sworn declaration and deposition, has established this nexus" for standing (emphasis added)), *rev'd en banc*, 94 F.3d 658 (D.C. Cir. 1996); *Defs. of the Wildlife v. Hodel*, 707 F. Supp. 1082, 1083 (D. Minn. 1989) ("The Secretary argues that the depositions taken of the plaintiffs prove that no member of the plaintiff groups will be injured by the new regulations, therefore, they have no standing." (emphasis added)), *aff'd sub nom. Defs. of Wildlife v. Lujan*, 911 F.2d 117 (8th Cir. 1990), *rev'd sub nom. Defs. of Wildlife*, 504 U.S. 555.

discovery. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with competent proof . . . under the same evidentiary standard that governs in the summary judgment context." (internal quotations omitted)); *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1160 (D. Nev. 2009) (concluding that "the Court should grant discovery when the jurisdictional facts are contested or more facts are needed").

In light of these members' inadequate declarations, Westmoreland is entitled to dismissal of the complaint or, if this Court determines that these declarations have raised a question of fact, Westmoreland may conduct standing-based discovery.

**I.   INCONSISTENCIES AND CONFLICTS BETWEEN MR. GILBERT'S PRIOR SWORN STATEMENTS AND CURRENT ALLEGATIONS CALL FOR DISCOVERY.**

Mr. Gilbert is a member of MEIC and Sierra Club. In December 2012, Mr. Gilbert first offered standing testimony on behalf of MEIC in a matter concerning a water discharge permit for the Rosebud Mine. *See* Ex. C, Dec. 2012 Decl. In 2012, Mr. Gilbert asserted longstanding and continuous aesthetic and recreational interests in the <u>East</u> Fork Armells Creek and Rosebud Creek watersheds, specifically identifying East Fork Armells Creek, Cow Creek, Green Leaf Creek, and Rosebud Creek as waterways frequented for hunting and birding since 1977. Ex. C, Dec. 2012 Decl. at ¶ 8. However, Mr. Gilbert did <u>not</u> assert any aesthetic or

recreational interest in creeks in the <u>West</u> Fork Armells Creek watershed.³ *Id.* at ¶ 8 ("[D]uring this [1977 to 1986] time, I spent several days in the Colstrip area hunting upland birds, particularly along East Fork Armells Creek, Cow Creek, Green Leaf Creek and Rosebud Creek … While there, I observed East Fork Armells Creek, Cow Creek, and Rosebud Creek."); *id.* at ¶ 11 ("I love to hunt, fish, and hike in southeast Montana (and I have done these activities annually since 1977) and I would love to be able to do so in and Colstrip, and along East Fork Armells Creek, Cow Creek, Rosebud Creek and their tributaries.").

The district court authorized MEIC's intervention in the water discharge litigation, and, in January 2014, Westmoreland propounded written discovery seeking evidence of standing. *See* Ex. D, Disc. Resp. Specifically, Westmoreland requested that MEIC identify and describe each occasion since January 1, 2000 that any member of MEIC recreated near or observed, among others, <u>West</u> Fork Armells Creek and its tributaries Black Hank Creek and Donley Creek.⁴ *Id*. Westmoreland requested that MEIC provide the date of the visit or observation; the

---

³ Distinguishing between the East Fork Armells Creek, Rosebud Creek, and West Fork Armells Creek drainage basins is not a trivial exercise. The West Fork Armells Creek watershed alone covers 95,000 acres (148 square miles). ECF No. 46-10 at 3.

⁴ Of the many waterways listed in the interrogatory, only West Fork Armells Creek, Black Hank Creek, and Donley Creek exist in the West Fork Armells Creek drainage basin.

name of the individual; the location of the visit or observation; the duration of the visit or observation; and the purpose of the visit or observation. MEIC identified Mr. Gilbert as the lone MEIC member having responsive information. However, MEIC provided <u>no</u> evidence that Mr. Gilbert ever visited <u>West</u> Fork Armells Creek (or its tributaries Black Hank Creek, Donley Creek, Robbie Creek, McClure Creek, and Trail Creek) and only offered a single cursory assertion that "Mr. Gilbert regularly hunts" all of the drainages in the vicinity of the Rosebud Mine. *See* Ex. D, Disc. Resp. at 6.

Westmoreland deposed Mr. Gilbert on February 13, 2014. At deposition, Mr. Gilbert could not provide clear, specific testimony that he had ever hunted or otherwise recreated along <u>West</u> Fork Armells Creek or its tributaries. *See* Ex. E, Feb. 2014 Dep. Tr. at 20:13-17 (Q: "[H]ave you ever hunted on the drainages of the following creeks: Black Hank Creek, Donley Creek, Pony Creek, Crow Creek, or Spring Creek?" A: "I don't know."); 37:17-25, 38:1-18 (Q: "When was the last time you were down West Fork Armells, as you described it?" A: "Sometime within the last five years. … Probably driving around looking for places to hunt. … I know I have not hunted there."). Indeed, when presented with a map and asked to identify specific hunting locations, Mr. Gilbert specifically *did not identify any areas within the West Fork Armells Creek drainage*. Instead he only circled lands within other drainages -- the East Fork Armells Creek and Rosebud drainage

basins. *Id*. at 28:16 – 33:13 (identifying public and private lands in the East Fork Armells Creek and Rosebud drainage basins approximately 15 miles east of the West Fork Armells Creek drainage basin and the Area F boundary). In any event, Mr. Gilbert further testified that any hunting along East Fork Armells Creek and West Fork Armells Creek (to the extent it ever occurred) absolutely ceased in 2007 as a result of a back injury. Ex. E, Feb. 2014 Dep. Tr. at 19:3-9, 25:9-18 (Q: "When was the last time that you recall hunting in that [East Fork Armells Creek or West Fork Armells Creek] drainage?" A: "Probably about the same time, somewhere in the 2007 range.").

Since his 2014 deposition, Mr. Gilbert has provided near-annual standing testimony on behalf of MEIC and Sierra Club for all matters concerning the Rosebud Mine. *See* Ex. F (Feb. 2015 Aff.); Ex. G (June 2016 Aff.); Ex. H (Mar. 2018 Hr'g Tr.); Ex. I (Nov. 2019 Dep. Tr.). For each matter, Mr. Gilbert has maintained having longstanding and continuous aesthetic and recreational interests in the East Fork Armells Creek and Rosebud Creek watersheds. Even so, at no point during this period did Mr. Gilbert assert any aesthetic or recreational interest anywhere in the West Fork Armells Creek drainage basin, much less in the immediate area of West Fork Armells Creek and its tributaries.[5]

---

[5] Mr. Gilbert first asserted an interest in West Fork Armells Creek drainage during his November 20, 2019 deposition in a parallel matter challenging Area F.

On November 18, 2019, MEIC initiated a parallel matter challenging the Montana Department of Environmental Quality's ("Department") environmental assessment for Area F. Area F abuts the western-most boundary of the Rosebud Mine approximately 12 miles west of Colstrip, Montana and extends the footprint of the Rosebud Mine to the west and north across the southern edge of the West Fork Armells Creek watershed.[6] Moreover, that disturbance will be limited to an area of 3.4 square miles, which is equivalent to less than 2.3% of the entire West Fork watershed, and an even smaller percentage of the overall Armells Creek Watershed. ECF No. 46-10 at 3.

On November 20, 2019, Westmoreland deposed Mr. Gilbert in the parallel matter, but without the benefit of his February 21, 2020 declaration in this case.[7] At deposition, Mr. Gilbert testified regarding his only documented visits to the West Fork Armells Creek watershed in August 2018 and September 2019. Mr.

---

[6] Areas A, B, C, D, and E of the Rosebud Mine are located near the town of Colstrip in Rosebud County, Montana and almost entirely in the East Fork Armells Creek and Rosebud Creek watersheds. Area F is entirely comprised of privately-owned surface lands located in the West Fork Armells Creek watershed and spanning the border between Rosebud County and Treasure County.

[7] On May 20, 2019, MEIC and Sierra Club initiated a separate challenge of Area F before the Montana Board of Environmental Review and again identified Mr. Gilbert as their standing witness. Westmoreland deposed Mr. Gilbert for that matter on November 20, 2019, nearly four months before MEIC's disclosure of Mr. Gilbert's newfound aesthetic and recreational interests in the West Fork Armells Creek watershed.

Gilbert characterized the two visits as "drive throughs" conducted for the express purpose of manufacturing standing for Area F environmental litigation. *See* Ex. I, Nov. 2019 Dep. Tr. at 27:17-22, 70:1 – 73:25.

MEIC and Sierra Club have resisted dismissal of this matter for lack of standing, in part, on Mr. Gilbert's February 21, 2020 standing declaration. ECF No. 44-1. Without any documentary support, Mr. Gilbert now alleges – for the first time – having longstanding recreational and aesthetic interests in the West Fork Armells Creek watershed, and that such continuing use will be harmed by Area F, claims that conflict with Mr. Gilbert's prior statements and testimony:

- "I love to hunt, fish, hike, and view the countryside in southeast Montana, activities I have done annually since 1977. I hope to be able to continue to do so in the West Fork Armells Creek drainage." ECF No. 44-1 at ¶ 16; *compare to* Ex. D, Feb. 2014 Disc. Resp. at 4-5; Ex. E, Feb. 2014 Dep. Tr. at 19:3-9, 10:22 – 11:8, 20:13-17, 104:10-12; Ex. I, Nov. 2019 Dep. Tr. at 27:17 – 28:11, 74:1 – 75:2, 48:5 – 50:2; Ex. C, Dec. 2012 Decl. at ¶ 11; Ex. F, Feb. 2015 Aff. at ¶ 11; Ex. G, June 2016 Aff. at ¶ 11.

- "Over the past 36 years, I have driven through and around Colstrip at least annually for work, recreation, or in my work as a board member of conservation organizations. I expect to continue to visit the Colstrip area at least on an annual basis in the coming years. As I drive through the area, I will observe the countryside and creeks and streams, including West Fork Armells Creek." ECF No. 44-1 at ¶ 11; *compare to* Ex. I, Nov. Dep. Tr. at 65:25 – 66:9, 105:24 – 106:14, 107:16 – 108:11; Ex. C, Dec. 2012 Decl. at ¶ 9; Ex. F, Feb. 2015 Aff. at ¶ 9; Ex. G, June 2016 Aff. at ¶ 9.

- "I intend to continue visiting and recreating in the West Fork Armells Creek basin." ECF No. 44-1 at ¶ 17; *compare to* Ex. D, Feb. 2014 Disc. Resp. at 4-5; Ex. E, Feb. 2014 Dep. Tr. at 19:3-9; Ex. I, Nov. 2019 Dep. Tr. at 27:17 – 28:11, 74:22 – 75:2.

9

- "I also plan to continue to visit people in and around East Fork Armells Creek, West Fork Armells Creek, Colstrip, and the Rosebud Mine."  ECF No. 44-1 at ¶ 17; *compare to* Ex. D, Feb. 2014 Disc. Resp. at 4-5; Ex. I, Nov. 2019 Dep. Tr. at 29:3-25; Ex. C, Dec. 2012 Decl. at ¶ 13; Ex. F, Feb. 2015 Aff. at ¶ 13; Ex. G, June 2016 Aff. at ¶ 13.

- "There is no question that my aesthetic and recreational appreciation for the beautiful country in the West Fork Armells Creek basin, including Black Hand [sic], Donley, Robbie, McClure, and Trail Creek, will be greatly diminished if the area is strip-mined."  ECF No. 44-1 at ¶ 17; *compare to* Ex. D, Feb. 2014 Disc. Resp. at 4-5; Ex. E, Feb. 2014 Dep. Tr. at 10:22 – 11:8, 104:10-12.

- "In the summer of 2018, I traveled alone and visited Area F to appreciate its aesthetic values, traveling on the roads available to the public through the proposed permit area, and occasionally stopping and walking to appreciate the beautiful area."  ECF No. 44-1 at ¶ 12; *compare to* Ex. I, Nov. 2019 Dep. Tr. at 48:5 – 50:2, 70:11 – 72:24.

- "In the summer of 2019, I visited West Fork Armells Creek, its tributaries, and the proposed Area F expansion with MEIC staff."  ECF No. 44-1 at ¶ 12; *compare to* Ex. I, Nov. 2019 Dep. Tr. at 26:23 – 29:6, 75:3 – 99:4.

Mr. Gilbert's newfound aesthetic and recreational interests are inconsistent and irreconcilable with prior sworn statements and discovery responses, and, contrary to Mr. Gilbert's dismissive assertion, many questions remain regarding his past and future use of the West Fork Armells Creek drainage, and whether such use (to the extent any use exists) will be affected by Area F.  ECF No. 44-1 at ¶ 17 ("There is no question that my aesthetic and recreational appreciation for the beautiful country in the West Fork Armells Creek basin, including Black Hand [sic], Donley, Robbie, McClure, and Trail Creek, will be greatly diminished if the area is strip-mined.").  Westmoreland seeks additional discovery to explore Mr.

Gilbert's manifest inconsistencies, discrepancies, and contradictions (which Intervenors were prejudicially prevented from exploring at deposition in November 2019), including, without limitation, Mr. Gilbert's newfound assertions of longstanding and continuing recreational and aesthetic interests in the West Fork Armells Creek watershed.[8]

## II. DISCOVERY IS NEEDED TO CLARIFY VAGUENESS IN MR. NICHOLS' DECLARATION.

The assertions in Mr. Nichols' declaration on behalf of WildEarth Guardians are too vague to establish standing and inconsistent with his prior sworn statements. Discovery is necessary to investigate whether Mr. Nichols' past recreation and future plans meet the Article III threshold.

Mr. Nichols claims a general aesthetic and recreational enjoyment of land near Colstrip but fails to provide the requisite specificity for standing to challenge mining in Area F of the Rosebud Mine. In his most direct averments, allegedly based on a 2018 visit to the Colstrip area, Mr. Nichols states that he hiked on "public lands in the upper West Armells Creek area just to the northwest of the current Rosebud mining operations," and "lands south and east of the town

---

[8] The need for specific testimony regarding Mr. Gilbert's future recreational plans is underscored by his prior testimony of "concrete" plans to recreate in the vicinity of the Rosebud Mine that never occurred. For example, Mr. Gilbert testified on March 19, 2018 of "concrete" plans to hunt turkeys near Colstrip that spring. Ex. H, Hr'g Tr. at 111:4-16. However, the turkey hunt never occurred. Ex. I, Nov. 2019 Dep. Tr. at 112:1 – 113:6.

11

Colstrip." ECF No. 44-2 at ¶ 10. These claims are impermissibly vague because the areas he references are vast.

The problems with Mr. Nichols' claims about hiking on public lands in the upper West Armells Creek area are twofold. First, the West Armells Creek watershed[9] covers 94,720 acres, and Area F surface disturbance will constitute only 2.3% of that area. *See* ECF No. 46-10 at 3. Thus it is far from apparent from his declaration whether Mr. Nichols was ever in the vicinity of Area F such that activities there could adversely affect him. Second, it is unclear what "public lands" Mr. Nichols references in the West Armells Creek area. Any public lands there are extremely limited and isolated. *See* ECF No. 46-1 at 6-7. In fact, the entire Area F permit area (which extends well beyond planned surface disturbance) is on private surface land. ECF No. 46-1 at 4. So the only thing Mr. Nichols' declaration establishes for certain is that he was *not* in the vicinity of any surface disturbance permitted for Area F.

Mr. Nichols' claim about recreation near Colstrip is even more vague. He claims to have recreated "south" and "east" of Colstrip. The entrance to the Rosebud Mine is two miles south of Colstrip (and to the west of town), but the eastern-most boundary of Area F is approximately *12 miles west* of Colstrip, ECF

---

[9] Mr. Nichols does not specify whether he was in the watershed or simply in the "area," further reducing the specificity of his claim.

12

No. 46-1 at 3, making it unlikely that Mr. Nichols' recreation in unnamed areas "south" and "east" of Colstrip would be affected by mining operations in Area F. Discovery is necessary to verify whether Mr. Nichols' vague claims to recreation in large areas in the broad vicinity of the Rosebud Mine demonstrate that he actually has an interest in the small area of the upper West Fork Armells Creek watershed where Area F is located.

Further, Mr. Nichols' declaration raises questions of fact as to his claimed recreation in southeast Montana prior to 2018 when compared to sworn declarations he has submitted in previous litigation. The declarations Mr. Nichols submitted for standing in prior cases recount trips that he took from Golden, Colorado to southeast Montana. ECF No. 46-5 at ¶¶ 20-22; ECF No. 46-6 at ¶¶ 9-11; ECF No. 46-7 at ¶¶ 26-30. Yet these prior declarations do not suggest recreation anywhere near the Rosebud Mine expansion, despite the Rosebud Mine's location in southeast Montana. As drafted, the prior declarations appear to present an exhaustive summary of the activities Mr. Nichols undertook on each trip. Westmoreland should be allowed to depose Mr. Nichols regarding these trips to determine where exactly he recreated and the purpose of these trips, and why he previously failed to mention the trips he now recounts in his declaration for this case.

Of course, recreating in the general vicinity of Area F is insufficient to establish standing. *See Summers*, 555 U.S. at 499. Rather, a plaintiff must provide "specific facts" showing his or her use of the area affected by the challenged action. *Id.* at 498; *Gerlinger*, 526 F.3d at 1256. Because of the vagueness of Mr. Nichols' averments, it remains unclear how close Mr. Nichols' recreational activities brought him to the privately-owned Area F. And, to the extent his declaration is sufficient to overcome its lack of specificity, it only creates an issue of fact that Westmoreland may test in discovery.

## CONCLUSION

For the foregoing reasons, to the extent that this Court believes that the proffered declarations create an issue of fact that prevents dismissal of MEIC, Sierra Club, and WildEarth Guardians, Westmoreland respectfully requests leave to (i) conduct limited depositions of Steve Gilbert and Jeremy Nichols, and (ii) serve Mr. Gilbert and Mr. Nichols with the subpoenas *duces tecum* attached hereto as Exhibits A and B, respectively.

Dated this 23rd day of April, 2020.

/s/ Hadassah M. Reimer
John C. Martin
Susan Mathiascheck
Holland & Hart LLP
901 K Street NW, Suite 850
Washington, DC 20001
25 South Willow Street, Suite 200
P.O. Box 68
Jackson, WY 83001
Telephone: (307) 739-9741
Fax: (307) 739-9744
jcmartin@hollandhart.com
smmathiascheck@hollandhart.com

Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY 83001
Phone: (307) 739-9741
Fax: (307) 739-9744
hmreimer@hollandhart.com

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8107
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*Attorneys for Westmoreland Rosebud Mining LLC*

15

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is double-spaced, has a typeface of 14 points or more, and contains less than 6,500 words exclusive of the caption, table of contents, tables of authorities, and certificates, in compliance with the Local Rule 7.1(d)(2)(A).

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2020, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

> *s/ Hadassah M. Reimer*
> Holland & Hart LLP

14529367_v3