Shiloh S. Hernandez
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT *et al.*,<br><br>Defendants. | Case No. 1:19-cv-00130-SPW-TJC<br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT-INTERVENOR'S MOTION FOR DISCOVERY** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES .................................................................. iv

EXHIBIT INDEX ............................................................................... vii

INTRODUCTION ................................................................................1

BACKGROUND ..................................................................................2

I.    The Rosebud Mine and Colstrip Power Plant have extensive local and regional adverse environmental effects and the Area F expansion will have extensive local and regional adverse environmental effects...............................................................2

II.    The Conservation Groups' members have longstanding connections to the areas that will be adversely affected by the Area F expansion. ...................................................................9

LEGAL STANDARD...........................................................................12

I.    Jurisdictional Discovery ...........................................................12

II.    Standing .................................................................................13

ARGUMENT .....................................................................................15

I.    WRM is not entitled to discovery because the Conservation Groups have abundantly demonstrated standing, leaving no outstanding questions about this Court's jurisdiction. ...................................15

II.    WRM's repeated challenges to Mr. Gilbert's standing have been repeatedly rejected by every court or body to address them. .......................19

III.    WRM's attempts to fabricate inconsistencies in the testimony of Mr. Gilbert and Mr. Nichols have no merit...................................21

        A.    Mr. Gilbert has consistently and credibly testified to his longstanding connection with the Colstrip area, including specifically West Fork Armells Creek. ...............................21

B.      Mr. Nichols's testimony is consistent and more than
        sufficiently precise to meet the strictest requirements of
        standing. ............................................................................................23

IV.   WRM's request for discovery merely runs up litigation costs and
      wastes judicial resources. ............................................................................25

CONCLUSION ........................................................................................................26

CERTIFICATE OF COMPLIANCE .......................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*,
  385 F.3d 1291 (10th Cir. 2004) ............................................................. 13, 15, 25

*Bensman v. USFS*,
  408 F.3d 945 (7th Cir.2005)........................................................................ 14, 17

*Buckhorn Energy Oaks Disposal Servs., LLC v. Clean Energy Holding
  Co., LLC*,
  No. CV 16-141-BLG-TJC, 2017 WL 1247863 (D. Mont. Mar. 24,
  2017)......................................................................................................... 12, 20

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir.2001)........................................................................ 15, 23

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
  522 F.3d 925 (9th Cir. 2008).............................................................................14

*Ctr. for Food Safety v. Vilsack*,
  636 F.3d 1166 (9th Cir. 2011) .................................................................... 14, 17

*Ecological Rights Found. v. Pac. Lumber Co.*,
  230 F.3d 1141 (9th Cir. 2000) .............................................................. 14, 16, 17

*First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*,
  No. 06-2426-JWL, 2007 WL 635312 (D. Kan. Feb. 27, 2007)...........................13

*Friends of the Earth v. Consol. Rail Corp.*,
  768 F.2d 57 (2d Cir. 1985).......................................................................... 15, 23

*Friends of the Earth v. Laidlaw*,
  528 U.S. 167 (2000) ................................................................................... passim

*In re MPDES Permit No. MT0023965*,
  No. BER 2012-12 WQ (Mont. Bd. of Envtl. Rev. July 31, 2013)......................19

*In re Rosebud Strip-Mine AM4*,
  No. BER 2016-03 SM (Mont. Bd. of Envtl. Rev. June 6, 2019)........................20

*LaFleur v. Whitman*,
     300 F.3d 256 (2d Cir. 2002)...................................................................14

*Laub v. U.S. Dep't of Interior*,
     342 F.3d 1080 (9th Cir. 2003) ......................................................... 12, 21

*Massachusetts v. EPA*,
     549 U.S. 497 (2007)...................................................................15

*MEIC v. DEQ*,
     No. CDV 2012-1075 (Mont. 1st Jud. Dist. Ct. Mar. 4, 2016) ...........................20

*Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.*,
     808 F. Supp. 2d 868 (S.D. W. Va. 2011)...................................... 15, 21

*Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*,
     50 F. Supp. 2d 443 (D. Md. 1999) .............................................. 12, 16, 17, 25

*Rattlesnake Coal. v. EPA*,
     509 F.3d 1095 (9th Cir. 2007) ......................................................... 12, 21

*Sierra Club v. Franklin Cnty. Power of Ill., LLC*,
     546 F.3d 918 (7th Cir. 2008).......................................................... 14, 18, 24

*Sierra Club v. Jewell*,
     764 F.3d 1 (D.C. Cir. 2014) ........................................................ 15, 23

*Sierra Club v. Morton*,
     405 U.S. 727 (1972)...................................................................13

*Signal Peak Energy, LLC v. MEIC*,
     No. DV 18-869 (Mont. 13th Jud. Dist. Ct. Mar. 25, 2019) ................................26

*Ten Lakes Snowmobile Club v. USFS*,
     No. CV 15-148-M-DLC, 2017 WL 4707536 (D. Mont. Oct. 18, 2017)  15, 16, 17

**Rules**

Fed. R. Civ. P. 1 ............................................................................ 25, 26

Fed. R. Evid. 402 .......................................................................... 22, 24

Mont. R. Evid. 402..................................................................................................24

# EXHIBIT INDEX

**Exhibit 1**    OSM & DEQ, Western Energy Company's Rosebud Mine Area F: Final Environmental Impact Statement (2018) (excerpts)

**Exhibit 2**    *In re MPDES Permit No. MT0023965*, No. BER 2012-12 WQ (Mont. Bd. of Envtl. Rev. July 31, 2013)

**Exhibit 3**    *MEIC v. DEQ*, No. CDV 2012-1075 (Mont. 1st Jud. Dist. Ct. Mar. 4, 2016)

**Exhibit 4**    *In re Rosebud Strip-Mine AM4*, No. BER 2016-03 SM (Mont. Bd. of Envtl. Rev. June 6, 2019)

**Exhibit 5**    Compl., *MEIC v. DEQ*, No. CDV 2012-1075 (Mont. 1st Jud. Dist. Ct. Dec. 2012)

**Exhibit 6**    Notice of Appeal, *In re Rosebud Mine AM4*, No. BER 2016-03 SM (Jan. 4, 2016)

**Exhibit 7**    *Signal Peak Energy, LLC v. MEIC*, No. DV 18-869 (Mont. 13th Jud. Dist. Ct. Mar. 25, 2019)

**INTRODUCTION**

The extraordinary request by Defendant-Intervenor Westmoreland Rosebud Mining, LLC (WRM) to subpoena and depose two of Conservation Groups' standing declarants is unwarranted by fact or law.

Conservation Groups' declarations, including some that are unchallenged, abundantly demonstrate standing. Indeed, every court and administrative body to address the issue has rejected WRM's arguments and held that the groups have standing to challenge WRM's strip-mine. Further, WRM's efforts to manufacture supposed "conflicts" in the testimony of the Conservation Groups' standing declarants have no merit and are, themselves, false and misleading.

Ultimately, WRM's motion wastes the resources of the parties and this Court and should be denied.

**BACKGROUND**

I.    **The Rosebud Mine and Colstrip Power Plant have extensive local and regional adverse environmental effects and the Area F expansion will have extensive local and regional adverse environmental effects.**

The Rosebud Mine, one of the largest strip-mines in the nation, is a sprawling 25,949-acre[1] coal strip-mine located in Colstrip, Montana. *See* FEIS at 32 (attached as Exhibit 1).



**Image 1**: Rosebud strip-mine extending to the horizon.

---

[1] This is approximately the size as Billings, Montana. *See* Wikipedia, Billings, Montana, https://en.wikipedia.org/wiki/Billings,_Montana (Billings is 43.52 square miles, or 27,852 acres).

The strip-mine is the sole source of coal for the Colstrip Power Plant, which was the second largest coal-fired power plant in the American West in 2019, with a generating capacity of 2,100 megawatts (MW). FEIS at S-3, 38. The power plant is owned by a group of private out-of-state utility companies and one independent power producer that sells electricity on the market. FEIS at S-3. Units 1 and 2 were shut down in January of this year because they were uneconomical, leaving Units 3 and 4, which together have a generating capacity of 1,480 MW. *See* FEIS at S-3.

**Image 2:** Rosebud strip-mine with power plant in background.



The impacts of the strip-mine-power-plant complex are expansive and visible from space.

///

///

///

3

**Image 3:** Satellite image of strip-mine from Google maps



The Area F expansion, at issue here, extends the strip-mining operation into 6,746 acres of previously untouched prairie and pastureland at the foot of the Little Wolf Mountains. FEIS at S-1.

**Image 3:** Steve Gilbert on Horse Creek Road in front of portion of proposed Area F, with Little Wolf Mountains in background. (Doc. 44-1, ¶ 12.)



///

///

///

///

///

5

**Image 4:** Upper West Fork Armells Creek basin. (Doc. 44-2 at 6.)



A public road—Horse Creek Road (also known as Sarpy Creek Road)—traverses the proposed Area F expansion area, connecting the Armells Creek basin to the Sarpy Creek basin to the west. FEIS at S-17. There is no question that the proposed mining operation will dramatically "change the visual landscape for drivers traveling along Horse Creek Road." FEIS at S-28.

///

///

///

6

**Image 4:** Mine area and local roads. FEIS at 53.



The foreseeable indirect and cumulative effects of strip-mining operations from the Area F expansion will cause "major" "long-term" harm to water quality and quantity throughout the Armells Creek basin, including West Fork Armells Creek and the main stem of Armells Creek. FEIS at 683-85. "Major" harm is harm that will "permanently preclude existing land uses and/or beneficial uses of surface waters." FEIS at 509. The area that will suffer foreseeable indirect and cumulative effects from the Area F expansion includes "*all of the Armells Creek watershed*, and parts of the Sarpy Creek and Rosebud Creek watersheds" within a "32 km [kilometer]" circular area around the mine. FEIS at 204, 683-85 (emphasis added).

7

**Image 5:** The surface water indirect effects analysis area. FEIS at 207.



All 70.8 million tons of coal to be strip-mined from Area F will be burned at the Colstrip Power Plant and the adjacent Rosebud Power Plant, which burns high-sulfur waste-coal. FEIS at S-1, S-2, 43. The adverse effects of air pollution from the intended and foreseeable combustion of coal from Area F will occur over a 300-mile radius around the strip-mine-power-plant complex. FEIS at 132-33. The power-plant will emit thousands of tons of nitrogen oxides ($NO_x$) and sulfur dioxide ($SO_2$), and hundreds of tons particulate matter ($PM_{2.5}$ and $PM_{10}$) each year. FEIS at 448. It will also emit hundreds of pounds of numerous toxic heavy metals annually, including mercury, arsenic, and lead. FEIS at 449. This air pollution will

adversely affect the population in Rosebud County, which already suffers elevated levels of respiratory disease and lung cancer. FEIS at 184, 450-59, 499, 679. Combustion of coal from Area F would also adversely affect visibility over a 300 mile radius, reducing visibility of mountains and hills and causing the landscape to have a "smoky" appearance. FEIS at 614-15.

While for the most part Federal Defendants classified the adverse effects of air pollution from combustion of Area F coal as "minor," they recognized that the effects would nevertheless be dangerous to people with existing respiratory illness and result in "readily apparent" "change[s] in public health." FEIS at 493, 499 ("moderate" adverse impacts). The cumulative effects of this air pollution would range from minor to moderate to major. FEIS at 669-71, 678. The visibility impacts would also be significant on the Northern Cheyenne Reservation. FEIS at 614-15, 673.

## II.    The Conservation Groups' members have longstanding connections to the areas that will be adversely affected by the Area F expansion.

Michaelynn Hawk has lived much of her life in southeastern Montana and lived in Colstrip and Lame Deer (on the Northern Cheyenne Reservation) from 1992-1996. (Doc. 44-3 at 2, ¶ 5.) While Ms. Hawk subsequently moved, she has extended family in Lame Deer and continues to visit them and the Colstrip area "regularly." (*Id.* at 3, ¶¶ 6-7.) On her visits, Ms. Hawk sees the "the smoke plume

from the plant smudging the sky and miles of strip-mines." (*Id.* at 2-3, ¶¶ 5-7.) The strip-mining and air pollution offends Ms. Hawk's aesthetic appreciation for the area, and she worries that the pollution will harm her. (*Id.* at 2-3, ¶¶ 5-8.)

Steve Gilbert, like Ms. Hawk, has spent decades working in, visiting, and recreating in the Colstrip area, and has maintained long-lasting friendships with people who live there. (Doc. 44-1, ¶¶ 11, 17.) He has hunted, birded, and explored the area extensively. (*Id.*, ¶¶ 11-12.) When he drives through the portions of the Colstrip area that have not been strip-mined, he "observe[s] the countryside and creeks and streams, including West Fork Armells Creek" and derives aesthetic appreciation from the unaltered landscape. (*Id.*) Since the 1980s, Mr. Gilbert has driven through the West Fork Armells Creek basin and Horse Creek Road "many times." (*Id.*, ¶¶ 12, 17; Doc. 48-9 at 107:16 to 108:14.) For him, it is "like a Sunday drive" and "a breath of fresh air" to view this "spectacular country." (Doc. 48-9, at 106:7-21.) However, it "turns [his] stomach" to think of the landscape in Area F being strip-mined. (*Id.* at 107:5-11.) While Mr. Gilbert's recent visits to and photographs of the land designated as Area F were motivated in part by his desire to prevent it from being strip-mined, the visits were primarily motivated by his abiding love for this remote and untrammeled country and his desire for it to remain that way. (*Id.* at 105:14-23; Doc. 44-1, ¶ 12.)

10

Jeremy Nichols similarly has visited the Colstrip area regularly over the past nine years. (Doc. 44-2 at 4, ¶ 9.) On his visits to the Colstrip area, Mr. Nichols enjoyed the "remote" and "undeveloped" countryside, including the West Fork Armells Creek basin, where mining has not occurred. (*Id.* at 7, ¶¶ 11-13.) His appreciation of the area, however, is diminished in areas where he sees and hears the strip-mine. (*Id.* at 7-10, ¶¶ 13-14.)

Finally, John Woodland, the former rural fire chief of Superior, Montana, has long been an advocate for protecting our shared climate from reckless coal mining corporations and for transitioning to a 100% clean, renewable energy system. (Doc. 44-4, ¶¶ 2, 5, 6.) Mr. Woodland's advocacy has brought him to Colstrip on one occasion, where he has both admired the "stark and rugged beauty of southeastern Montana" along the Colstrip road (Highway 39) and camped along the Yellowstone River. (*Id.*, ¶ 7.) He also saw the "ravages of coal strip mining," and was disheartened to know that the coal would all be burned at the Colstrip Power Plant. (*Id.*, ¶ 8.) Mr. Woodland plans to return to the area, but is concerned that strip-mining in Area F will "further destroy the ecological integrity of this beautiful area." (*Id.*, ¶ 10.)

Ms. Hawk, Mr. Gilbert, Mr. Nichols, and Mr. Woodland will all be harmed by the foreseeable direct and indirect impacts of the Area F expansion (Doc. 44-3, at 3-4, ¶¶ 8-9; Doc. 44-1, ¶¶ 13-19; Doc. 44-2, at 10, ¶ 15, Doc. 44-4, ¶ 10), which

will, as noted, cause harm to air, water, and public health throughout the Armells Creek basin, the Colstrip area, and well beyond. *See supra* Background Part I. Their harm may be redressed by a favorable decision in this case. (Doc. 44-3 at 4, ¶ 9; Doc. 44-1, ¶ 21; Doc. 44-2 at 12-13, ¶¶ 18-21; Doc. 44-4, ¶ 12.)

## LEGAL STANDARD

### I.   Jurisdictional Discovery

In environmental "citizen suits" "[c]ourts have often relied upon affidavits to establish standing." *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 50 F. Supp. 2d 443, 446 (D. Md. 1999). Consequently, "[a]bsent evidence … that [standing] affidavit[s] [are] not credible, such a deposition is not necessary." *Id.*

District courts enjoy broad discretion to allow or deny jurisdictional discovery. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Buckhorn Energy Oaks Disposal Servs., LLC v. Clean Energy Holding Co., LLC*, No. CV 16-141-BLG-TJC, 2017 WL 1247863, at *9 (D. Mont. Mar. 24, 2017). The party seeking jurisdictional discovery bears the burden to make "a sufficient showing that a fact-intensive analysis is required," *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) (quoting *Laub*, 342 F.3d at 1092), and that sufficient "outstanding" "questions" remain about jurisdiction to warrant discovery. *Buckhorn Energy*, 2017 WL 1247863, at *9.

12

A party should not be allowed jurisdictional discovery to conduct a fishing expedition, but, rather, should identify specific "facts that it believes jurisdictional discovery would likely reveal." *First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, No. 06-2426-JWL, 2007 WL 635312, at *10 (D. Kan. Feb. 27, 2007). It is not an abuse of discretion to deny such discovery if there is a "low probability that the lack of discovery [will] affect[] the outcome of this case." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004).

## II.   Standing

The purpose of standing is to assure that the plaintiff has a "personal stake" in the outcome of a case and that the parties are truly adverse. *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972). To establish standing a party must show (1) an actual or imminent injury, (2) traceable to the challenged action, which would (3) be redressed by a favorable decision. *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180-81 (2000). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the *affected area* and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Id.* at 183 (emphasis added) (quoting *Sierra Club v. Morton*, 405 U.S. at 735).

This required showing is not onerous: "an identifiable trifle is enough." *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir.

2008) (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973)). "[L]ikely exposure" to air pollution from a coal plant is "certainly something more than an 'identifiable trifle,' even if the ambient level of air quality does not exceed [certain national limits]." *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008) (alteration in original) (quoting *LaFleur v. Whitman*, 300 F.3d 256, 270-71 (2d Cir. 2002)). In NEPA lawsuits, "[o]nce a plaintiff has established an injury in fact … the causation and redressability requirements are relaxed"—it is sufficient if a revised NEPA analysis may redress the plaintiffs' injuries. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) (quotation omitted).

The Ninth Circuit has soundly rejected industry attempts to limit standing to those who reside "some specified distance from the area covered by the lawsuit." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1148 (9th Cir. 2000). Rather, "[r]epeated recreational use itself, accompanied by a credible allegation of desired future use, can be sufficient, even if relatively infrequent." *Id.* at 1149; *Bensman v. USFS,* 408 F.3d 945, 962-63 (7th Cir.2005) (individual had standing to challenge a proposed project in a national forest when he had visited the project area six times over 20 years and planned to return soon). Courts have consistently held that standing may be established for individuals whose enjoyment of viewing an unspoiled landscape will be harmed by industrial activity or

pollution. *E.g.*, *Sierra Club v. Jewell*, 764 F.3d 1, 6 (D.C. Cir. 2014); *Cantrell v. City of Long Beach,* 241 F.3d 674, 681 (9th Cir.2001); *Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 61 (2d Cir. 1985).

"Further, once one Plaintiff organization establishes standing, all Plaintiffs have standing." *Ten Lakes Snowmobile Club v. USFS*, No. CV 15-148-M-DLC, 2017 WL 4707536, at \*5 (D. Mont. Oct. 18, 2017); *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) ("Only one of the petitioners needs to have standing to permit us to consider the petition for review.").

Finally, if a person has a *pre-existing* interest in a location, then that person's environmental advocacy to protect that area, including additional visits to the area for the purpose of supporting standing, *bolsters* and "adds credence" to the assertion of standing, i.e., that the person will suffer loss if the area is destroyed. *Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 881 (S.D. W. Va. 2011).

## ARGUMENT

### I.   WRM is not entitled to discovery because the Conservation Groups have abundantly demonstrated standing, leaving no outstanding questions about this Court's jurisdiction.

Here, there is no probability that WRM's requested subpoenas and depositions will change the fact that the Conservation Groups have standing. *See Bell Helicopter Textron, Inc.*, 385 F.3d at 1299 (no abuse of discretion to deny

discovery given "low probability" that discovery would change outcome); *Piney Run*, 50 F. Supp. 2d at 446.

WRM does not seek to subpoena or depose Ms. Hawk. Because Ms. Hawk has standing (*see* Doc. 44 at 18-19; Doc. 44-3 at 2-4, ¶¶ 5-8), and because standing for Indian People's Action mean "all Plaintiffs have standing," *Ten Lakes Snowmobile Club*, 2017 WL 4707536, at \*5, WRM's requested discovery would not change the fact of the Conservation Groups' standing.

In *Ecological Rights Foundation*, 230 F.3d at 1144-45, 1150, the Ninth Circuit held that plaintiffs had standing to challenge a lumber mill that was polluting a creek. The Court reasoned that two members of the plaintiff organization had "used the creek for recreational activities several times in the past, and both have alleged that Pacific Lumber's [the mill owner] conduct has impaired their enjoyment of those activities." *Id.* at 1150. Further, both members "expressed an interest in participating in recreational activities in and around [the creek] in the future." *Id.* Citing the Supreme Court's ruling in *Laidlaw*, the Ninth Circuit rejected assertions by the polluter that the members' contact with the area had to be "continuous." *Id.* at 1150 n.10. The Ninth Circuit explained that in *Laidlaw* the Supreme Court found standing for one organization on the basis of one member canoeing "once on the affected river some 40 miles" downstream from the polluter's discharge point. *Id.*

16

Here, Ms. Hawk's regular visits to Lame Deer and the Colstrip area over the past three decades amply meets the standard set forth in *Ecological Rights Foundation*. *See supra* Background Part II; *see also Bensman,* 408 F.3d at 962-63. Federal Defendants concluded in their analysis of the Area F expansion that it would result in foreseeable adverse air pollution and visibility impacts throughout the Colstrip area, including in Lame Deer. *See supra* Background Part I. This air pollution adversely affect Ms. Hawks' interests in the area, which may be remedied by a lawful NEPA analysis, establishing standing for the Conservation Groups. *See supra* Background Part I-II; *Ctr. for Food Safety*, 636 F.3d at 1172. Accordingly, Indian People's Action has standing, which means "all Plaintiffs have standing," *Ten Lakes Snowmobile Club*, 2017 WL 4707536, at *5—this should end the inquiry and obviate any wasteful and oppressive jurisdictional discovery.[2]

Similarly, as in *Ecological Rights Foundation*, Mr. Gilbert's and Mr. Nichols's repeated and regular visits to the Colstrip area satisfy the requirements of standing. (*See* Doc. 44 at 16-18; *see also supra* Background Part II.) While WRM

---

[2] The Conservation Groups recognize WRM's pending motion to dismiss challenging Ms. Hawk's standing (Doc. 32; Doc. 33; Doc. 46), which the groups have fully rebutted (Doc. 44). The groups emphasize Ms. Hawk's standing here only to demonstrate that WRM's present motion to subpoena and depose Mr. Gilbert and Mr. Nichols is unnecessary. *Piney Run*, 50 F. Supp. 2d at 446.

quibbles about the degree to which Mr. Gilbert's and Mr. Nichols's declarations pinpoint their use of the 6,746 acres in Area F,[3] their interest in the Colstrip area exceeds the level of interest deemed sufficient in *Ecological Rights Foundation* and in *Laidlaw*. *See supra* Background Part II. Similarly, because the foreseeable adverse effects from the Area F expansion, including coal combustion, will be felt throughout the Colstrip area and, indeed, well beyond, this is sufficient to satisfy the standing inquiry. *See supra* Background Part I; *Laidlaw*, 528 U.S. at 181-83 (standing determined with respect to the "affected area," including area 40 miles downstream of polluting facility); *Franklin Cnty. Power*, 546 F.3d at 925-26 (individual who would be impacted by foreseeable coal plant emissions had standing). Even Mr. Woodlands' one visit and plan to return to the area satisfies the requirements of *Laidlaw*, 528 U.S. at 183 (finding standing of individual who had canoed 40 miles below polluting plant on one occasion and would like to return but for concerns about pollution); *see also Ecological Rights Found.*, 230 F.3d at 1150 n.10.

---

[3] WRM is mistaken in its contention that standing is limited to the "small area" of "land near Area F." (Doc. 48 at 1, 13.) Standing is determined with respect to the "area" "*affected*" by the project. *Laidlaw*, 528 U.S. at 183 (emphasis added). Here, as Federal Defendants recognized in the FEIS, the *area affected* by the Area F expansion (including mining and the intended and foreseeable combustion of the coal) will include all of the Armells Creek basin and an area within a 300-mile radius of the power plants. *See supra* Background Part I.

**II.     WRM's repeated challenges to Mr. Gilbert's standing have been repeatedly rejected by every court or body to address them.**

While WRM correctly notes that Mr. Gilbert has provided standing testimony in multiple cases regarding the Rosebud strip-mine since 2014 (Doc. 48 at 7), the coal company neglects to mention that every court and administrative body to address the issue has concluded that Mr. Gilbert has standing with respect to the Rosebud strip-mine. In 2013, in granting MEIC leave to intervene in a permit appeal before the Montana Board of Environmental Review, the Board's hearing examiner held that Mr. Gilbert established standing for the group:

> Applying *Heffernan* to the present case, at least one member, Mr. Gilbert, has standing under *Heffernan*, *supra*, and *Laidlaw*, *supra*, and the interests of the Intervenors [the Conservation Groups] in the proper analysis and permit requirements for the discharges at issue in the Permit are germane to their purpose of the preservation and restoration of the natural environment.

*In re MPDES Permit No. MT0023965*, No. BER 2012-12 WQ, at 8 (Mont. Bd. of Envtl. Rev. July 31, 2013) (attached as Exhibit 2). In 2016, after WRM's first deposition of Mr. Gilbert, the Montana First Judicial District Court rejected another standing challenge by WRM:

> Gilbert's contact with the streams and land in the area of the Rosebud Mine, together with the effect of the mine on his use and enjoyment of the area, establish injury in fact. Therefore, MEIC's standing is established. One party with standing satisfies the standing requirements for other parties.

*MEIC v. DEQ*, No. CDV 2012-1075, at 17 (Mont. 1st Jud. Dist. Ct. Mar. 4, 2016),

*rev'd in part on other grounds and remanded*, 2019 MT 213, 397 Mont. 161, 451

P.3d 493 (attached as Exhibit 3). Last year, following a contested hearing, the

Montana Board of Environmental Review against held:

> Mr. Gilbert's … testimony shows that [his] aesthetic and recreational
> values in the Area of the Rosebud Mine will be lessened by continued
> mine expansion, which is attributable to DEQ's and Intervenors'
> action in this case. As they are members of the Conservation Groups,
> and the three factors of *New Hope* are met, the Conservation Groups
> have standing.

*In re Rosebud Strip-Mine AM4*, No. BER 2016-03 SM, at 74, ¶ 4 (Mont. Bd. of

Envtl. Rev. June 6, 2019) (attached as Exhibit 4). In addition to the multiple

rulings finding that Mr. Gilbert has standing with respect to the Rosebud Mine and

rejecting WRM's serial standing challenges, WRM has deposed Mr. Gilbert at

length on multiple occasions, including specifically with respect to the Area F

expansion just six months ago. (*See* Doc. 48-5; Doc. 48-8; Doc. 48-9.)

In light of WRM's serial and unsuccessful challenges to Mr. Gilbert's

standing with respect to the Rosebud Mine, there are no further legitimate

"outstanding" questions about Mr. Gilbert's long-standing and continued

connection to the Colstrip area generally and specifically the area affected by the

Area F expansion. *Buckhorn Energy*, 2017 WL 1247863, at *9. And no further

"fact-intensive analysis is required" on this score. *Rattlesnake Coal.*, 509 F.3d

1102 n.1 (quoting *Laub*, 342 F.3d at 1092).[4]

### III.  WRM's attempts to fabricate inconsistencies in the testimony of Mr. Gilbert and Mr. Nichols have no merit.

#### A.  Mr. Gilbert has consistently and credibly testified to his longstanding connection with the Colstrip area, including specifically West Fork Armells Creek.

WRM's statement about Mr. Gilbert's supposed "manifest inconsistencies,

discrepancies, and contradictions" (Doc. 48 at 11) is not merely a hyperbolic

rhetorical flourish. It is false.

Despite six pages of citations, the *only* purported conflict that WRM can

identify in hundreds of pages of transcripts is that Mr. Gilbert's testimony in prior

cases focused on Rosebud Creek and East Fork Armells Creek, whereas his

testimony in the instant case focuses on West Fork Armells Creek. (*Id.* at 4-11.)

But the obvious reason that the testimony in the prior cases focused on Rosebud

Creek and East Fork Armells Creek was because the prior cases raised claims

about mining's impacts to those creeks, which suffered most impacts from the

---

[4] WRM is also mistaken in its most recent line of attack that Mr. Gilbert's standing is somehow diminished by his earnest desire to protect the country in the West Fork basin from strip-mining. (Doc. 48 at 8-9.) To the contrary, when one with a pre-existing interest in an area returns to that area in part with a motive to protect it from destruction, that motive to protect the area does not diminish, but bolsters, the individual's standing. *Ohio Valley Envtl. Coal., Inc.*, 808 F. Supp. 2d at 881-82.

strip-mine prior to the Area F expansion into the headwaters of West Fork Armells Creek. *See* Compl., ¶¶ 60-67, 90-117 *MEIC v. DEQ*, No. CDV 2012-1075 (Mont. 1st Jud. Dist. Ct. Dec. 2012) (raising only claims related to East Fork Armells Creek, which DEQ identified as impaired from mining, but no claims specific to West Fork Armells Creek) (attached as Exhibit 5); Notice of Appeal, ¶¶ 1-7, *In re Rosebud Mine AM4*, No. BER 2016-03 SM (Jan. 4, 2016) (raising claims only with respect to East Fork Armells Creek and Rosebud Creek over mining expansion in headwaters of East Fork Armells Creek) (attached as Exhibit 6). Because these cases focused on East Fork Armells Creek, testimony about Mr. Gilbert's connections to West Fork Armells Creek would have been of minimal, if any, relevance. *See* Fed. R. Evid. 402; Mont. R Evid. 402. By contrast, in the instant case and the companion state case related to Area F, which is located in the headwaters of West Fork Armells Creek, Mr. Gilbert's testimony unsurprisingly focuses on his interest in and connections to the West Fork basin. *See supra* Background Part II. This not a conflict—it is the basic rule of relevance.

Moreover, WRM's contention that Mr. Gilbert's interest in West Fork Armells Creek is "newfound" is simply false, as evidenced by the transcripts WRM relies on. (Doc. 48 at 8 n.7.) There, Mr. Gilbert described his familiarity and connection to West Fork Armells Creek to WRM's attorneys years ago when they deposed him *in 2014*. (Doc. 48-5 at 11:6-25 (stating that he is "familiar with …

West Fork" and has "spent time in that country"); *id.* at 18:20 to 19:2 (describing

traveling and recreating in area between West Fork Armells Creek and Tongue

River); *id.* at 22:23 to 23:9 (admitting to doing "a lot" of scouting and viewing

countryside between the "West Fork, over to the Tongue River"); *id.* at 37:1-25

(describing driving along West Fork Armells Creek and viewing landscape); *id.* at

76:1-3 (describing driving to West Fork Armells Creek basin).)[5]

### B.    Mr. Nichols's testimony is consistent and more than sufficiently precise to meet the strictest requirements of standing.

WRM's attempts to manufacture doubts about Mr. Nichols's testimony

suffer similar flaws. That Mr. Nichols's prior declarations—in different cases,

related to different projects, in different locations—did not mention his prior visits

to the Colstrip area and the Rosebud Mine is no conflict. (*See, e.g.*, Doc. 46-3 at

Ex. 6A (pdf. 22) (showing challenged oil and gas leases, none of which is near the

Rosebud Mine or the Armells Creek basin); Doc. 46-5 at 20-28 (discussing travels

near Spring Creek Mine in litigation over Spring Creek Mine, located nearly 100

---

[5] WRM's quibbling over Mr. Gilbert's not recalling having *hunted* in the West Fork Armells Creek basin are irrelevant. (Doc. 48 at 6-7.) Mr. Gilbert's standing is premised not on hunting in the West Fork basin, but on his undisputed decades of visits to the hitherto largely un-mined West Fork Armells Creek basin, from which he has derived much aesthetic satisfaction. *See supra* Background Part II. This is all that is needed for standing. *Sierra Club v. Jewell*, 764 F.3d at 6; *Cantrell,* 241 F.3d at 681; *Friends of the Earth*, 768 F.2d at 61.

miles from Colstrip).) Again, basic rules of relevance and judicial economy foreclose any discussion of Mr. Nichols's interests *in the Colstrip area* in cases over fossil fuel development in *other areas*. *See* Fed. R. Evid. 402; Mont. R. Evid. 402. Indeed, WRM does not complain that Mr. Nichols's declaration *in this case* is silent about his prior visits to areas adjacent to oil and gas fields in other parts of Montana or the Spring Creek Mine, and for good reason. Mr. Nichols's use of other areas affected by other projects is simply not relevant to this case, so there is no reason to include them in his declaration.

WRM's complaints about the supposed "vagueness" of Mr. Nichols's declaration with respect to the "small area" of the Area F mine cuts are similarly misplaced. (Doc. 48 at 11-13.) As noted, standing is assessed with respect to the "area" "affected" by a challenged action. *Laidlaw*, 528 U.S. at 183. Thus, a person may have standing if he recreates in an area 40 miles downstream of an industrial activity, if that area is "affected" by pollution from the activity. *Id.*; *Franklin Cnty. Power*, 546 F.3d at 925-26 (person whose interests in lake three miles from proposed coal plant would be affected by pollution from plant had standing). Here, as noted, the entire Armells Creek watershed will be affected by water pollution from the Area F expansion, including *major adverse cumulative* effects, and an area within a 300-mile radius around the power-plant will be affected by air pollution from combustion of the coal from Area F. *See supra* Background Part I.

Thus, Mr. Nichols's description of his interests in the West Fork Armells Creek basin and the Colstrip area are more than sufficient for standing. *Laidlaw*, 528 U.S. at 183; *Franklin Cnty. Power*, 546 F.3d at 925-26.

As such, WRM has failed to present any evidence that the declarations of Mr. Gilbert and Mr. Nichols are not credible, making any further jurisdictional discovery unnecessary. *Piney Run*, 50 F. Supp. 2d at 446; *see also Bell Helicopter Textron, Inc.*, 385 F.3d at 1299 (no abuse of discretion to deny discovery where given "low probability" that discovery would change outcome).

## IV.   WRM's request for discovery merely runs up litigation costs and wastes judicial resources.

The Federal Rules of Civil Procedure must be applied to "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Parties share this responsibility to employ the rules to this same end. *Id.* (advisory committee note to 2015 amendments).

Given that (1) WRM has been aware of Mr. Gilbert's significant interest in and connection to West Fork Armells Creek at least since his 2014 deposition, (2) WRM deposed Mr. Gilbert with respect to the Area F expansion just six months ago in parallel state litigation, and (3) all courts and administrative bodies to address the issue have all held that Mr. Gilbert has standing, WRM has no credible basis for seeking to subpoena and depose Mr. Gilbert or Mr. Nichols. *See Piney*

*Run*, 50 F. Supp. 2d at 446; *see Ten Lakes Snowmobile Club*, 2017 WL 4707536, at *5 (standing for one, standing for all).

In similar litigation, WRM's counsel was recently reprimanded by the Montana Thirteenth Judicial District Court in Billings for acting with "improper motives" in issuing abusive subpoenas on members of conservation groups, and their client was ordered to pay attorneys' fees for the abusive conduct. *Signal Peak Energy, LLC v. MEIC*, No. DV 18-869, at 3-4 (Mont. 13th Jud. Dist. Ct. Mar. 25, 2019) (attached as Exhibit 7).

The Conservation Groups urge this Court to stem these abusive tactics, lest they continue to spread and further undermine the fundamental goals of civil litigation—"just, speedy, and inexpensive" resolution of cases on their merits. Fed. R. Civ. P. 1.

## CONCLUSION

For the foregoing reasons, this Court should deny WRM's motion for jurisdictional discovery.

Respectfully submitted this 7th day of May, 2020.

/s/ Shiloh Hernandez
Shiloh S. Hernandez
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org

26

hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

## CERTIFICATE OF COMPLIANCE

Persuant to Local Rule 7.1(d)(2)(E), I hereby certify that the foregoing brief

has 5,127 words, excluding caption, tables, and certificate of compliance.

/s/ Shiloh Hernandez
Shiloh Hernandez