IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT, et al.,<br><br>Defendants,<br><br>and<br><br>WESTMORELAND ROSEBUD MINING, LLC,<br><br>Intervenor Defendant. | CV 19-130-BLG-SPW-TJC<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE** |

Plaintiffs Montana Environmental Information Center ("MEIC"), Indian People's Action, 350 Montana, Sierra Club, and WildEarth Guardians ("Plaintiffs") bring this action challenging Federal Defendants' approval of a Mine Plan Modification for the Rosebud Mine located near Colstrip, Montana. (Doc. 55.) Westmoreland Rosebud Mining, LLC, formerly known as Western Energy Company ("Westmoreland") owns and operates the Rosebud Mine, and was granted leave to intervene in this action as a Defendant. (Doc. 9.)

1

Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Doc. 43.) Presently before the Court is Westmoreland's Motion to Transfer Venue.[1] (Doc. 20.) The motion is fully briefed and ripe for the Court's review. (Docs. 21, 28, 34.)

Having considered the parties' submissions, the Court finds Westmoreland's motion should be **DENIED**.[2]

## I. BACKGROUND

The Rosebud Mine is a 25,949-acre surface coal mine located near Colstrip, Montana. In November 2011, Westmoreland submitted an application to the Montana Department of Environmental Quality ("MDEQ") to permit the addition of Area F to the Mine. Westmoreland also requested a Mine Plan Modification from the Office of Surface Mining Reclamation and Enforcement ("OSM") to exercise its existing lease rights in Area F. The Area F expansion sought to add approximately 6,500 acres to the Rosebud Mine.

---

[1] Westmoreland has also filed a Motion to Dismiss for Lack of Standing (Doc. 32), and a Motion for Leave to Conduct Limited Discovery Regarding Plaintiffs' Standing (Doc. 47), which is addressed by separate order.

[2] A motion to change venue is a non-dispositive pre-trial matter, and is therefore within the province of a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A). *RD Rod, LLC v. Mont. Classic Cars, LLC*, 2012 WL 6632185, *7, n.1 (D. Mont. Dec. 19, 2012) ("A change of venue ruling is a non-dispositive matter which need not be submitted as a 'proposed findings of fact and recommendations' to the District Judge as otherwise required under 28 U.S.C. § 636(b)(1)(B) with respect to dispositive motions.").

In November 2018, the MDEQ and OSM jointly issued the final Environmental Impact Statement ("EIS") on the mine expansion. The EIS considered three alternative actions: (1) a no-action alternative, (2) the proposed action, and (3) the proposed action with additional mitigation measures.

In April 2019, the MDEQ issued a Record of Decision approving Alternative 2, with conditions. One of the conditions prohibited mining of approximately 74 acres in Section 12 within Area F.

In June 2019, OSM issued a Record of Decision approving the Area F expansion. OSM also excluded the 74 acres in Section 12.

On July 15, 2019, the Assistant Secretary for the Land and Minerals Management Division of the Department of the Interior, Joseph Balash, signed the Mine Plan Modification Decision in Washington D.C., approving the mining plan.

On July 17, 2019, Westmoreland filed a complaint in the United States District Court for the District of Columbia ("D.C. District Court") against David Bernhardt, in his official capacity as Secretary of the Interior, and the OSM, alleging violation of the Administrative Procedure Act ("APA") and the National Environmental Policy Act ("NEPA") based on the exclusion of the 74 acres in Section 12. *Western Energy Co. v. Bernhardt, et al.*, 19-cv-2127-RDM, Docket No. 1 (D. D.C. July 17, 2019) (the "D.C. Action"). Westmoreland's complaint alleged OSM's exclusion of the 74 acres from the Mine Plan Modification violated

3

NEPA because it impermissibly adopted an alternative that was not considered in the EIS or disclosed to the public for comment. (*Id.*) Westmoreland seeks to set aside only the portion of the Mine Plan Modification Decision relating to the exclusion of the 74 acres in Section 12. (*Id.*)

On November 18, 2019, Plaintiffs filed this action. (Doc. 1.) Plaintiffs allege the Federal Defendants violated NEPA by failing to adequately consider the mine expansion's cumulative effects on surface water, the indirect and cumulative effects on the Yellowstone River, and the impacts of greenhouse gas emissions. (Doc. 55.) Plaintiffs argue the Federal Defendants refused to consider a reasonable range of alternatives, including a middle-ground alternative that involved mining less coal. (*Id.*) In addition, Plaintiffs contend the Federal Defendants failed to properly consider and consult on the effects to the pallid sturgeon, which is listed as an endangered species. (*Id.*) Plaintiffs request the Court vacate and set aside the entire Mine Plan Modification Decision. (*Id.*)

## II.   DISCUSSION

Westmoreland argues the Court should transfer this action to the D.C. District Court under the first-to-file rule because the previously filed action in D.C. involves challenges to the same federal decision that is at issue in this case. Westmoreland asserts the interests of convenience, comity and judicial economy

support transfer.  Plaintiffs oppose the motion, arguing the relevant considerations support retaining venue in Montana.

Discretionary changes of venue are governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

Whether to transfer a case is within the Court's discretion, and a decision whether to do so must be based on an "individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted).  Courts frequently consider the following factors to determine whether transfer is appropriate:

1. the plaintiff's choice of forum,
2. the location where the relevant agreements were negotiated and executed,
3. the convenience of witnesses,
4. the ability of the two forums to compel non-party witnesses to testify,
5. the respective parties' relative contacts with the forums,
6. the state that is most familiar with the governing law,
7. the relative congestion in the two forums,
8. the length of time action has already been pending in the transferor forum,
9. ease of access to sources of proof, and
10. whether there is a 'local interest' in either of the forums.

*Hillerich & Bradsby Co. v. Ace Am. Ins. Co.*, 2012 WL 2359488, *1 (D. Mont. June 20, 2012). *See also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The moving party bears the burden to establish why the forum should be changed. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). When a transfer "would only shift the inconvenience from defendant to plaintiff, the motion to transfer should be denied." *Anderson v. Thompson*, 634 F.Supp. 1201, 1204 (D. Mont. 1986). "[A] transfer is not available to a forum which is equally convenient or inconvenient to the original forum." *Id.*

In addition, there is a generally recognized doctrine of federal comity that permits a district court to transfer, stay or dismiss an action when a similar complaint has already been filed in another district. *Pacesetter Systems Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). The first-to-file rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and avoid the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of Army,* 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987

(9th Cir. 2016). Although discretionary, the first-to-file rule "is intended to 'serve[] the purpose of promoting judicial efficiency well and should not be disregarded lightly." *Kohn*, 787 F.3d at 1239 (quoting *Church of Scientology*, 611 F.2d at 750).

In determining whether the first-to-file rule applies, courts consider three factors: (1) the chronology of the lawsuits; (2) the similarity of the parties; and (3) the similarity of the issues. *Kohn*, 787 F.3d at 1240. The first-to-file rule is not "a rigid or inflexible rule to be mechanically applied." *Pacesetter*, 678 F.2d at 95. As such, the Ninth Circuit has recognized three exceptions to the rule: bad faith, anticipatory lawsuit, and forum shopping. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

Here, the parties do not dispute that venue would have been proper in the D.C. District Court. Therefore, the Court will consider whether to transfer this action to the D.C. District Court under the first-to-file rule and will also weigh the relevant convenience factors to determine whether a change of venue will serve the interests of justice.

### A.     Whether Transfer is Appropriate Under the First-to-File Rule

#### a.     Chronology of the Lawsuits

Westmoreland filed the D.C. Action on July 17, 2019. This case was filed four months later, on November 18, 2019. Although the D.C. Action was filed

7

first, it has not progressed beyond the initial pleading stage.  In fact, shortly after the answer was filed in the D.C. Action, the action was stayed to permit the parties to pursue settlement negotiations, and the case has remained stayed.  *Western Energy*, 19-cv-2127-RDM, Minute Order dated July 2, 2020 (extending stay to October 1, 2020).

Where the earlier filed action has not advanced, the equities may weigh in favor of an exception to the first-to-file rule.  *See Adoma v. Univ. of Phoenix*, 711 F.Supp.2d 1142, 1150 (E.D. Cal. 2010) (finding an exception to the first-to-file rule where the first case had not advanced and later filed case included broader federal and state law claims); *Church of Scientology*, 611 F.2d at 750 (finding an exception to the first-to-file rule where the second-filed case had proceeded beyond the first-filed case).  In light of the fact the D.C. Action is on hold, whereas this case has proceeded to a motion to dismiss and request for discovery, the Court finds the chronology of the actions does not support transfer.

      **b.**    **Similarity of the Parties**

With regard to the second factor, the Ninth Circuit has held "the first-to-file rule does not require exact identity of the parties.  Rather, the first-to-file rule requires only substantial similarity of parties."  *Kohn*, 787 F.3d at 1240 (internal citations omitted).

Although exact identity of parties is not required, this action involves substantially different parties than the D.C. Action. None of the Plaintiffs in this case are parties to the D.C. Action. Furthermore, this action includes several OSM officials (Marcelo Calle, David Berry, Lanny Erdos, Casey Hammon) and the U.S. Fish and Wildlife Service and Aurelia Skipwith, the agency's director, who are not named in the D.C. Action.

Accordingly, the Court finds the similarity of the parties does not support transfer.

### c. Similarity of the Issues

Finally, the Court must consider the similarity of the issues. "The issues in both cases also need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240. To determine whether the issues are substantially similar, courts "look at whether there is 'substantial overlap' between the two suits." *Id.* at 1241. Courts have recognized that the first-to-file rule may not apply where the second-filed action is broader than the first action. *See e.g. Montana Merchandising, Inc. v. Dave's Killer Bread, Inc.*, 2017 WL 2536530, *5 (D. Mont. June 9, 2017) (declining to apply the first-to-file rule where second-filed action included "additional plaintiffs, defendants, and claims" and the claims extended "beyond the scope of the claims of the [first-filed] case"); *Roller Bearing Co. of Am., Inc. v. American Software, Inc.*, 570 F.Supp.2d 376, 388 (D. Conn. 2008) (finding judicial

9

economy was best served by allowing the much broader second-filed action to proceed).

Here, both actions challenge the same federal decision. But the issues in this case are much broader than the issues in the D.C. Action. There, Westmoreland is challenging only the exclusion of the 74 acres in Section 12. In contrast, here, Plaintiffs broadly challenge the entire Mine Plan Modification Decision, and the Federal Defendants' analysis of impacts to water resources and climate change. In addition, Plaintiffs raise challenges based on the Endangered Species Act which are not present in the D.C. Action. Further, even though both actions challenge Federal Defendants' consideration of alternatives, the actual challenges are substantively different. In the D.C. Action, Westmoreland argued OSM violated NEPA by adopting an alternative that was not considered in the EIS or disclosed for public comment. Whereas in this case, Plaintiffs argue Federal Defendants violated NEPA by failing to consider any middle-ground alternative in which less coal would be mined and for less than 19 years.

In addition, the scope of the relief sought in the two lawsuits differs. Although both cases seek declaratory relief, in the D.C. Action, Westmoreland requests the Court set aside only the limited portion of the Mine Plan Modification Decision relating to the exclusion of the 74 acres in Section 12. Westmoreland specifically contends that "[i]n all other respects, Federal Defendants' actions and

approvals should not be vacated or otherwise set aside." *Western Energy*, 19-cv-2127-RDM, Docket No. 1 at ¶¶ 68, 78.  In contrast, Plaintiffs seek to vacate and set aside the entire Mine Plan Modification Decision in this action.  (Doc. 55 at 38.)

Finally, the fact that the same federal decision is at issue does not necessarily mandate that this action be transferred.  For example, in *Alliance for the Wild Rockies v. Lyder*, 2009 WL 10677286 (D. Mont. Oct. 19, 2009), the court declined to transfer venue of an action to the District of Wyoming where there was "a different but pending challenge to the same final rule" regarding a critical habitat designation.  *Id.* at *1.  The court found the risk of conflicting judgments was "unlikely to materialize or be of any real significance" because the claims in the two cases were substantially different.  *Id.*  The plaintiffs in the Montana action alleged the federal defendants' decision was under-inclusive because they failed to consider climate change data and the best available science.  *Id.*  Whereas, the defendants in the Wyoming action argued the decision was over-inclusive because it included habitat that lacked necessary physical elements and the defendants failed to perform an economic cost-benefit analysis.  *Id.*  The court held "[t]he fact that the cases involve different issues with the final rule means either court will likely be able to tailor post-trial remedies to avoid conflicts."  *Id.*

The same is true here.  Although the same Mining Plan Modification Decision is at issue, the cases involve wholly different issues.  Westmoreland

11

argues there is a potential for inconsistent judgments because if Plaintiffs lose this case, and Westmoreland prevails in the D.C. Action, "this Court will have deemed the NEPA review sufficient, while the D.C. District Court will have invalidated a portion of the analysis." (Doc. 21 at 18.) But that is precisely the outcome Westmorland seeks in the D.C. Action.

Because the issues in this case are broader than the issues in the D.C. Action, there is not substantial overlap between the two cases. The similarity of issues therefore does not support transfer.

In sum, the Court finds transfer under the first-to-file rule is not appropriate.

### B. Consideration of the Convenience Factors

#### a. Plaintiffs' Choice of Forum

"[A] plaintiff's choice of forum should rarely be disturbed." *Anderson*, 624 F. Supp. at 1204. The Ninth Circuit has cautioned that "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. However, the plaintiff's choice is given less deference when the plaintiff is not a resident or citizen of the forum state. *Piper Aircraft Co. Reyno*, 454 U.S. 235, 255-256 (1981). In addition, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Plaintiffs selected Montana as their choice of forum. Three of the five Plaintiff organizations are residents of Montana, and the other two organizations have members and field offices in Montana. Further, the Mine is located in Montana, the underlying decision making process occurred in Montana and Colorado, and Montana has an interest in the controversy because the environmental impacts will be felt in Montana. Accordingly, the Court finds Plaintiffs' choice of forum is entitled to deference.

### b. Location Where Relevant Agreements Were Negotiated and Executed

Westmoreland argues this factor favors transfer because the Mining Plan Modification Decision was signed by Assistant Secretary Joseph Balash in the District of Columbia. But the underlying EIS and associated Record of Decision, which contain the challenged analyses, were prepared by OSM's western regional office in Colorado, along with the BLM Miles City Field Office and the MDEQ in Montana. (Doc. 28-2 at 6.) It does not appear any documents other than the Mining Plan Modification Decision letter was prepared or signed in the District of Columbia. Accordingly, the Court finds that this factor weighs against transfer.

///

///

///

///

13

      **c.**    **Convenience of Witnesses and Ability of Forum to Compel Non-Party Witnesses to Testify**

These two factors are neutral because this action will be decided on the basis of the administrative record. *See Preservation Soc. Of Charleston v. U.S. Army Corps of Engineers*, 893 F.Supp.2d 49, 56 (D. D.C. 2012).

      **d.**    **Parties' Relative Contacts with the Forums**

Three of the Plaintiff organizations are headquartered in Montana. The remaining two have a regional presence: WildEarth Guardians has nearly 900 members in Montana and the Sierra Club has more than 2,900 members in the state.

Westmoreland is incorporated in Delaware and its parent company is headquartered in Colorado. However, Westmoreland operates the Rosebud Mine in Montana. It does not appear Westmoreland has any presence in the District of Columbia.

Seven of the Federal Defendants named in the complaint are located in the District of Columbia, while two others are located in Colorado. All are named in their official capacity only.

Although the Federal Defendants are located outside Montana, the majority of the Plaintiff organizations are located here. Furthermore, Westmoreland operates its Mine in Montana, the scientific analysis in the EIS was based on data

collected in Montana, and public meetings on the mining permit occurred in Montana.

It appears that transferring the action would merely shift the inconvenience from some of the federal Defendants to the Plaintiffs, which is an impermissible basis for transferring the action. *Anderson*, 634 F.Supp. at 1204. Further, it does not appear that the District of Columbia would be any more convenient for Westmoreland. Accordingly, this factor weighs against transferring the action.

### e. State that is Most Familiar with Governing Law

This action is based on federal law, and both the District of Montana and the District of Columbia are equally familiar with NEPA and fossil fuel development on federal lands in the West. *See e.g. MEIC v. OSM*, 274 F.Supp.3d 1074 (D. Mont. 2017); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41 (D.D.C. 2019). Accordingly, this factor is neutral. *E.E.O.C. v. United Airlines, Inc.*, 2009 WL 7323651, *5 (N.D. Cal. Dec. 3, 2009).

### f. Relative Congestion of the Forums

Courts may consider the statistics compiled by the Administrative Office of the United States Courts to assess the relative docket congestion between the transferee forum and the transferor forum. *RD Rod, LLC*, 2012 WL 6632185 at *16-17; *Hillerich & Bradsby Co.*, 2012 WL 2359488 at *3. For the 12-month period ending in December 2019, the weighted filings per judge in the District of

Montana was 388 cases, and in the District of D.C. it was 303 cases.  *See* Administrative Office of the United States Courts, *United States District Courts — National Judicial Caseload Profile* (December 31, 2019) (available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf).  However, the total number of pending cases was identical – both courts had 349 pending cases per judgeship.  *Id.*  Accordingly, the Court finds this factor is neutral.

### g. Length of Time Action Has Been Pending in Transferor Forum

A party's diligence in seeking to transfer venue is a factor courts should take into consideration.  *Anderson*, 634 F. Supp. at 1208.  Here, Westmoreland acted diligently by filing its motion to transfer venue less than a month after it intervened.  Further, this action has been pending for a short time.  The Court concludes this factor does not strongly weigh in favor or against the motion to transfer.

### h. Ease of Access to Sources of Proof

Due to "technological advances in document storage and retrieval, transporting documents does not generally create a burden."  *Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353, 1362 (N.D. Cal. 2007).  Thus, courts have recognized that this factor has a diminished importance, except in cases where there is immovable evidence located in the transferee forum.  *Hillerich & Bradsby*

16

*Co.*, 2012 WL 2359488 at *4; *Grady*, 2015 U.S. Dist. LEXIS 158861 at *5. It does not appear there is any immovable evidence at issue in this case, as it involves judicial review of an administrative decision. Therefore, the Court considers this factor neutral.

### i. Local Interest

Westmoreland argues that national interests are a key component to Plaintiffs' claims because they have raised issues relating to climate change. As such, Westmoreland asserts the District of Columbia is a more appropriate venue.

Although the Third Amended Complaint implicates climate change concerns of national importance, it also implicates local concerns relating to harm to waters, endangered species and the local economy. At the very least, the Court finds the national interests raised by Plaintiffs are balanced by the local interests, resulting in this factor being neutral.

Moreover, both Montana and the District of Columbia share an interest in enforcing NEPA. Therefore, this factor weighs neither in favor nor against the motion to transfer. *See Buckhorn Energy Oaks Disposal Servs., LLC v. Clean Energy Holding Co., LLC*, 2017 WL 1247863 at *11 (D. Mont. Mar. 24, 2017) (finding that where both jurisdictions "have an interest in enforcing the law, this factor weighs neither in favor nor against the motion to transfer").

/ / /

### j.     Balancing the Factors

Based on the totality of the factors discussed above, the Court finds they weigh against transferring the action to the District of Columbia.  Accordingly, the Court concludes that Westmoreland has not met its burden of establishing that transfer of venue is appropriate under 28 U.S.C. §1404.

### III.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Westmoreland's Motion to Transfer Venue (Doc. 20) is **DENIED**.

**IT IS ORDERED**.

DATED this 29th day of July, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge