Susan Mathiascheck
Holland & Hart LLP
901 K Street NW, Suite 850
Washington, DC 20001
Phone: (307) 739-9741
Fax: (307) 739-9744
smmathiascheck@hollandhart.com

John C. Martin
Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY 83001
Phone: (307) 739-9741
Fax: (307) 739-9744
jcmartin@hollandhart.com
hmreimer@hollandhart.com

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8107
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*Attorney for Westmoreland Rosebud Mining LLC and International Union of Operating Engineers, Local 400*

FILED
SEP 16 2020
Clerk, U.S. Courts
District Of Montana
Billings Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, INDIAN PEOPLE'S ACTION, 350 MONTANA, SIERRA CLUB, WILDEARTH GUARDIANS,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT, et al.,<br><br>Defendants,<br><br>and<br><br>WESTMORELAND ROSEBUD MINING LLC,<br><br>Intervenor. | Case No. 1:19-cv-00130-SPW-TJC<br><br>**BRIEF IN SUPPORT OF INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 400 MOTION TO INTERVENE** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24(a)(2), and for the reasons stated below, the International Union of Operating Engineers, Local 400 (the "Union"), respectfully moves to intervene as a Defendant in this case. The Union and its members have a material interest in the outcome of this litigation and the Court's ruling on Plaintiffs' Motion for Preliminary Injunction, which seeks to immediately enjoin Westmoreland Rosebud Mining LLC's ("Westmoreland") mining operations in the part of the Rosebud Mine known as "Area F." The Union and its members, which include approximately 400 Montana miners, will be adversely affected by a ruling in Plaintiffs' favor. Most significantly, a ruling prohibiting Westmoreland's mining activities for an indefinite period in Area F could imperil jobs held by Union members at the Rosebud Mine. The Union's significant interest in this litigation is sufficient to warrant intervention as of right pursuant to FRCP 24(a). Alternatively, the Union should be granted permissive intervention under FRCP 24(b).

## BACKGROUND

### I.  Rosebud Mine and Area F Mine Plan

The Rosebud Mine is a 25,949-acre surface coal mine located near Colstrip, Montana that produces 8.0 to 10.25 million tons of coal per year. Final EIS at 1. Westmoreland has been actively mining in three areas of the Rosebud Mine (Areas

A, B, and C) under permits issued by the Montana Department of Environmental Quality ("MDEQ") and other necessary Federal authorizations. *See* Westmoreland's Brief in Support of Motion to Intervene. Doc. 8 at 1-2.

In November 2011, Westmoreland initiated the permit and mine plan approval processes to obtain necessary State and Federal approvals to mine coal in Area F. *Id.* at 2. Area F would add approximately 6,746 acres to the Mine; however, only 2,159 acres would be disturbed by mining. Final EIS at 1. Another 2,000 acres, approximately, would be disturbed by highwall reduction, soil storage, road construction, and other miscellaneous disturbances. *Id.*

After years of analysis, MDEQ and Federal Defendants completed an Environmental Impact Statement ("EIS") in November 2018. *Id.* at 2. On June 28, 2019, Federal Defendants published the Record of Decision approving Westmoreland's mine plan, with some modifications, authorizing Westmoreland to begin mining in Area F.

## II. Plaintiffs' Claims in this Action and Requested Relief

On November 18, 2019, Plaintiffs filed this action challenging Federal Defendants' authorization. Plaintiffs' Third Amended Complaint claims that the Federal Defendants failed to comply with the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA") when approving Westmoreland's mining plan for surface coal mining and reclamation operations

for the mine area known as "Area F." *See* Third Amended Complaint ("TAC"), Doc. 55 at ¶¶ 60-124. Plaintiffs' Complaint requests that the Court declare the mining plan invalid and enjoin mining operations in Area F until further NEPA and ESA review occurs. *Id.* at Prayer for Relief ¶¶ A-E.

Plaintiffs' Motion for Preliminary Injunction asserts that Plaintiffs are likely to succeed on these claims and that, absent a preliminary injunction, they will suffer irreparable harm from the mining activities that will occur pending resolution of their claims. Motion for Preliminary Injunction. Doc. 62 at 2. Plaintiffs request that the Court enjoin strip mining activities in Area F. Plaintiffs' Brief in Support of Motion for Preliminary Injunction. Doc. 63 at 3. The Union and its members seek to intervene at this stage to protect their significant interest in the outcome of the litigation and provide information to the Court for consideration in weighing the balance of harms that would be caused by the requested injunction.

## ARGUMENT

**I.  The Union is Entitled to Intervene as a Matter of Right.**

FRCP 24(a)(2) governs intervention as a matter of right. It provides, in relevant part, that

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

> protect its interest, unless existing parties adequately represent that interest.

FRCP 24(a)(2).

The Ninth Circuit broadly interprets the requirements for intervention in favor of the applicant for intervention, guided primarily by practical and equitable considerations. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010); *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.") (citation omitted). All well-pleaded, non-conclusory allegations in the motion to intervene and supporting declarations are taken as true absent sham, frivolity, or other valid objections. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

A Rule 24(a)(2) motion should be granted if: (1) the application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interests; and (4) the existing parties may not adequately represent the applicant's interests. *In re Estate of Ferdinand E. Marcos*, 536 F.3d 980, 984 (9th Cir. 2008). The Union's motion satisfies each of these requirements.

4

### A. Intervention is Timely.

In determining whether a motion to intervene is timely, three factors are considered: (1) the stage of proceedings; (2) prejudice to other parties; and (3) the reason for, and length of, delay. *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007). This determination is to be construed broadly in favor of the applicant for intervention. *In re Marcos*, 536 F.3d at 985.

The Union meets Rule 24's timeliness requirement. This action is in its early stages. Plaintiffs filed their Third Amended Complaint on July 9, 2020. Most recently, Plaintiffs filed their Motion for Preliminary Injunction on August 28, 2020. The Union's Motion to Intervene is filed two weeks after the Union learned of the Motion for Preliminary Injunction, which threatens Union jobs.

Moreover, the Federal Defendants have not yet filed the administrative record and, therefore, the case has not yet progressed to briefing on the merits. The Union's participation will not delay the proceedings or require the Court to alter the schedule for any motions. The Union will file merits briefs jointly with Westmoreland so that no party is inconvenienced. Thus, intervention will not prejudice the other parties, and the Union's Motion to Intervene is timely.

### B. The Union Has Interests in the Subject Matter of the Case.

"[W]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest

5

need be established." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (citation omitted). "It is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.*

Here, the Union has a significant, protectable interest in the Federal Defendants' decision approving Westmoreland's mine plan for Area F, as well as continued operations at the Rosebud Mine, because approximately 300 of its members depend on employment at the Mine for their livelihoods. Exhibit A, at ¶¶ 3, 6-7. An order enjoining indefinitely mining operations in Area F would imperil the jobs of approximately 300 Union miners. *Id.* at ¶ 7. Because these miners are highly specialized workers, if their jobs are lost, they may be forced to relocate away from Montana. *Id.*

In addition, the Union has a significant interest in the future decision-making process that the Federal Defendants use to review surface mining and reclamation plan applications, including the scope of their NEPA and ESA analyses, because 400 of the Union's Montana members rely on the outcome of that process for their livelihood and will be affected by any changes instituted as a result of Plaintiffs' suit.

Thus, the Union and its members have a "significant interest" in the subject matter of this case. *See Californians For Safe & Competitive Dump Truck Transp.*

v. *Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (affirming decision to grant union's motion to intervene as of right in action involving preemption of California's Prevailing Wage Law where union's "members had a 'significant interest' in receiving the prevailing wage for their services as opposed to a substandard wage"); *see also United States v. Simmonds Precision Prod., Inc.*, 319 F. Supp. 620, 621 (S.D.N.Y. 1970) (finding labor union, which represented employees at manufacturing plant, had sufficient interest in subject matter and was entitled to intervene in antitrust suit to oppose entry of consent final judgment which would allow the defendant to close the plant or remove some of its work to another plant).

### C. The Union's Interests May be Impaired or Impeded by the Disposition of the Case.

Courts in the Ninth Circuit follow the advisory committee notes to FRCP 24: "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822; *see also City of Los Angeles*, 288 F.3d at 398 (courts consider and give weight to the "*practical* interest in the outcome of a particular case"). The policy is explained in *Forest Conservation Council v. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995): "if [applicant intervenors] are not made a party to this action, they will have no legal means to challenge [court-ordered relief] while it remains in effect."

Any decision by this Court granting Plaintiffs' requested relief of invalidating Federal Defendants' decision to approve Westmoreland's Area F mining plan or enjoining mining in Area F would adversely affect the Union's and its members' interests in the continuous operation of the Rosebud Mine as a source of hundreds of Union jobs. Exhibit A at ¶¶3, 6-7.

The Union's interest in intervention and defending the Federal Defendants' decision is heightened by Plaintiffs filing the Motion for Preliminary Injunction, which seeks to immediately halt mining operations even before the Court determines the merits of their claims. The Union has a legally cognizable interest in protecting the jobs and livelihoods of its members, and an adverse Court decision will cause injury to that interest. *Id.* at ¶¶ 6-7. If the Union is not allowed to intervene, it will be unable to protect its interest in the validity of the Area F mining plan and continued operations at the Mine.

**D.     No Party Adequately Represents the Union's Interests.**

For this factor, the Ninth Circuit considers: (1) whether the interests of the present party are such that it will undoubtedly make all of the intervenors' arguments; (2) whether the present party is capable and willing to make those arguments; and (3) whether the would-be intervenors would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.

Here, the burden on the movant is minimal. The Union need only show that representation of its interests by existing parties "may be" inadequate. *Id.* at 823; *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972). The focus should be on the subject of the action and not merely the particular issues before the court at the time of the motion. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. Any presumption of adequate representation due to a shared ultimate objective is rebuttable if the Union and other defendants have incongruent interests. *Id.* Inadequate representation may be found when the applicant asserts a personal interest that does not belong to the general public. *Forest Conservation Council*, 66 F.3d at 1499. The Union meets its minimal burden here.

The potential harm confronting the Union and its members, described above, is separate from and independent of the potential injury to the public interest defended by the Federal Defendants, and the potential injury to Westmoreland. Absent intervention, the Union would have to rely on the Federal Defendants and Westmoreland to represent its distinct interests.

However, Federal Defendants' obligation to represent the public interest as a branch of an executive federal agency means that it cannot be relied upon to fully represent the Union's interests in protecting its members' continued employment and livelihoods. In addition, Westmoreland's obligation to protect its monetary investments and its lease rights, is distinct from the Union's interests in

preservation of members' jobs. This divergence of interests meets the minimal burden of showing inadequacy of representation. *Cf. Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 ("FWS, a federal agency . . . cannot be expected under the circumstances presented to protect these [other] interests.").

Thus, the Union's, Westmoreland's, and the Federal Defendants' common interests in defending Federal Defendants' Record of Decision are not sufficient to foreclose the Union's intervention. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (finding that a union's interests, which were "potentially more narrow and parochial than the interests of the public at large," were not adequately represented by state agencies).

For these reasons, the Union should be allowed to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2).

## II. In the Alternative, Permissive Intervention Should be Granted.

The Union also satisfies the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b), which provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (3).

Generally, "permissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). However, "[i]ndependent jurisdictional grounds are not required in this federal-question case where [the movant] do[es] not raise new claims." *See N. Plains Res. Council v. U.S. Army Corps of Engineers*, No. CV-19-44-GF-BMM, 2019 WL 5818061, at *2 (D. Mont. Nov. 7, 2019).

As stated above, the Union's motion is timely. *See* I.A, *supra*.

The Union's defenses share common facts and law with the main action. Unlike intervention of right, Rule 24(b) "dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1180 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1180. An applicant for permissive intervention satisfies the "common question of law or fact" requirement when it will assert defenses that "squarely respond" to the claims asserted by the Petitioners. *Id.* at 1111. In *Kootenai Tribe*, the Ninth Circuit allowed a private party to intervene permissively in an action to compel compliance with the National Environmental Policy Act. *Id.* The Ninth Circuit recognized that the significant protectable interest factor under Rule 24(a) is not

required in permissive intervention. *Id.* at 1108. Rather, intervention is appropriate if it would contribute to the equitable resolution of the case and would assist the court in orderly procedures leading to a resolution. *Id.* at 1111.

Here, the Union's interests and defenses relate directly to the Plaintiffs' claims and requested relief, and will provide the Court with factual information and legal arguments relevant to the Court's consideration of the Motion for Preliminary Injunction. The Union, along with Westmoreland will, as part of protecting its interests, argue that Federal Defendants fully complied with NEPA and the ESA in approving Westmoreland's Area F mining plan. Similarly, the Union's defenses will inevitably involve many of the same facts and legal issues that will be raised by Federal Defendants in responding to the Plaintiffs' claims. Finally, the Union can provide its knowledge and expertise to help develop and clarify the factual and legal issues that Plaintiffs raise in requesting that the Court enjoin mining in Area F at the Rosebud Mine, regardless of the impacts to the jobs and livelihoods of approximately 300 mine workers.

Lastly, the Union's participation will neither prejudice any original party nor unduly delay the proceedings in the main action. Instead, the Union's intervention will advance the development of factual and legal issues and provide unique knowledge and expertise regarding the potential economic impacts to its members and the local communities from halting coal mining at the Rosebud Mine. Given

the early stage of this action, the Union's intervention presents no risk of delaying the adjudication of the rights of the original parties. Accordingly, the Union should be granted permissive intervention in the event the Court declines to afford intervention as of right.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Union's Motion to Intervene as of right under Rule 24(a)(2), or alternatively, permit intervention under Rule 24(b)(1).

Submitted this 14th day of September, 2020.

*/s/ Jessa Reimer*

John C. Martin
Susan Mathiascheck
Holland & Hart LLP
901 K Street NW, Suite 850
Washington, DC 20001
25 South Willow Street, Suite 200
P.O. Box 68
Jackson, WY 83001
Telephone: (307) 739-9741
Fax: (307) 739-9744
jcmartin@hollandhart.com
smmathiascheck@hollandhart.com

Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY 83001
Phone: (307) 739-9741
Fax: (307) 739-9744
hmreimer@hollandhart.com

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8107
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*Attorneys for Westmoreland Rosebud
Mining LLC and International Union of
Operating Engineers, Local 400*

# CERTIFICATE OF SERVICE

I hereby certify that, on September 16, 2020, a copy of the foregoing document was served on the following persons by the following means:

|       |                          |
|-------|--------------------------|
| ____  | CM/ECF                   |
| 1     | Hand Delivery            |
| 2, 3, 4 | Mail                   |
| ____  | Overnight Delivery Service |
| ____  | Fax                      |
| 2, 3, 4 | E-Mail                 |

1. Clerk, U.S. District Court

2. Shiloh S. Hernandez
   Western Environmental Law Center
   103 Reeder's Alley
   Helena, MT 59601
   hernandez@westernlaw.org

3. Nathaniel Shoaff
   Sierra Club
   2101 Webster Street, Suite 1300
   Oakland, CA 94612
   Nathaniel.shoaff@sierraclub.org

4. Jean E. Williams
   Deputy Assistant Attorney General
   Michelle-Ann C. Williams
   Trial Attorney, Natural Resources Section
   Caitlin M. Cipicchio
   Trial Attorney, Natural Resources Section
   H. Hubert Yang
   Senior Trial Attorney, Wildlife & Marine Resources Section
   Environment & Natural Resources Division
   United States Department of Justice
   Ben Franklin Station
   PO Box 7611
   Washington, D.C. 20044-7611
   Michelle-Ann.Williams@usdoj.gov

Caitlin.cipicchio@usdoj.gov
Hubert.yang@usdoj.gov

_[signature]_

15358991_v1