IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> DAVID BERNHARDT *et al.*, <br><br> Defendants, <br><br> and <br><br> WESTMORELAND ROSEBUD MINING, LLC *et al.*, <br><br> Intervenors. | Case No. 1:19-cv-00130-SPW-TJC <br><br> **ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Before the Court is Plaintiffs Montana Environmental Information Center *et al.*'s Motion for Preliminary Injunction, filed August 28, 2020. (Doc. 62). Intervenor-Defendant Westmoreland Rosebud Mining LLC ("Westmoreland") objected to the motion in their response brief, filed September 18, 2020. (Doc. 73). David Bernhardt *et al.* ("Federal Defendants") also filed a response brief on September 18, 2020. (Doc. 74). Intervenor-Defendant International Union of

1

Operating Engineers, Local 400 ("Union") joined in Westmoreland's response on September 30, 2020. (Doc. 81). The City of Colstrip filed an amicus brief opposing the motion on October 9, 2020. (Doc. 88). Plaintiffs submitted a reply brief in support of their motion also on October 9, 2020. (Doc. 92). Rosebud County filed an amicus brief opposing the motion on October 15, 2020. (Doc. 94). Union submitted supplemental authority for the Court's consideration on December 11, 2020. (Doc. 110). The Court held an evidentiary hearing on mining expansion's effect on Pallid Sturgeon in the Yellowstone River on December 18, 2020. Plaintiffs submitted supplemental authority for the Court's consideration on December 23, 2020. The matter is now deemed ripe and ready for adjudication. After careful review of the documents and evidence submitted, and for the following reasons, Plaintiffs' Motion for Preliminary Injunction is denied.

## I. FACTUAL SUMMARY

This case concerns the Rosebud Mine ("the Mine") which is located in Eastern Montana near the city of Colstrip. The Mine began strip-mining operations in 1968 and has since grown to cover 30,000 acres. Rosebud Mine coal is sent primarily to the nearby Colstrip Power Plant where it is burned to boil water in a turbine to produce electricity for communities in Montana. The Power Plant withdraws water from the Yellowstone River and consumes approximately 22,000 acre-feet annually.

The Rosebud Mine has grown incrementally since its inception through various expansions termed Areas A, B, C, D, and E. Until recently, mining operations took place exclusively in Areas A, B, and C. Area D is currently undergoing active reclamation while reclamation efforts in Area E have been completed and approved. This case stems from the Mine's most recent attempt to again expand operations into a location called Area F.

Area F contains approximately 6,746 acres of prairie located at the foot of the Little Wolf Mountains. Westmoreland believes the expansion contains 70.8 million tons of coal that the mining company plans to extract over the next 19 years. That coal is slated to be sent to the Colstrip Power Plant for combustion.

Westmoreland applied for a mining permit in Area F in 2011 through the Department of Environmental Quality ("DEQ"). Subsequently, the Office of Surface Mining Reclamation and Enforcement ("OSM") initiated a review of the expansion plans in accordance with the National Environmental Policy Act ("NEPA") in 2013. In November of 2018, OSM issued a Final Environmental Impact Statement ("FEIS") explaining the direct, indirect, and cumulative impacts expanding mining operations in Area F would have on the local environment, water systems, and wildlife. Based on this FEIS, OSM released its Record of Decision ("ROD") in June 2019 approving the Area F expansion.

Plaintiffs initiated the present litigation on November 18, 2019 claiming that the Federal Defendants unlawfully approved the Area F expansion because the FEIS fails to adequately take a 'hard look' at the environmental impacts of the expansion, as required by NEPA. Specifically, Plaintiffs contend the FEIS failed to sufficiently consider the cumulative impacts of mining on local water resources, failed to consider a reasonable range of alternatives for mining in Area F, and failed to consider the impacts of further water withdrawals from the Yellowstone River on the endangered Pallid Sturgeon species.

Meanwhile, efforts began to prepare for the expansion of mining operations in Area F. Derf Johnson, an employee of Montana Environmental Information Center, averred that he witnessed preparation efforts in Area F when he traveled there to view the site in May of 2020. (Doc. 63-11 at 3-4). On June 11, 2020, an announcement appeared in the local newspaper stating that Westmoreland had broken ground on mining operations in Area F several days prior on June 1. (Doc. 73-10). The first coal was extracted from Area F in August 2020. By September 18, 2020, approximately 26,000 tons of coal had been mined from Area F. (Doc. 73-1 at 3).

Plaintiffs filed the present motion seeking a preliminary injunction of mining operations in Area F on August 28, 2020.

## II. DISCUSSION

The purpose of a preliminary injunction is to preserve the status quo and prevent the "irreparable loss of rights" before a final judgment on the merits. *Textile Unlimited, Inc. v. A. BMH and Co.*, 240 F.3d 781, 786 (9th Cir. 2001). A preliminary injunction is an extraordinary remedy and should not be awarded as a matter of right, but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

The Ninth Circuit permits a sliding scale approach to the *Winter* test. Under the sliding scale, a preliminary injunction is appropriate when a plaintiff raises serious questions going to the merits and the balance of hardships tips sharply in the plaintiff's favor, so long as the other two *Winter* elements are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Endangered Species Act ("ESA") narrows the approach to a preliminary injunction when a listed species is involved in the litigation. Under the ESA analysis, a court "presume[s] that remedies at law are inadequate, that the balance of interests weighs in favor of protecting endangered species, and that the public

5

interest would not be disserved by an injunction." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th Cir. 2018). To obtain a preliminary injunction, then, a movant must only demonstrate the likelihood of irreparable injury. *Id.*

Here, the Court finds that Plaintiffs have not succeeded in clearly demonstrating a likelihood of irreparable harm *in the absence of preliminary relief.* As such, the Court need not examine whether Plaintiffs have met their burden on the remaining three *Winter* factors.

**A. Environmental Harm under NEPA.**

In support of their motion for preliminary injunction, Plaintiffs submitted the declaration of Derf Johnson who has taken numerous trips to Southwest Montana and the area surrounding the Rosebud Mine. According to the declaration, the area "is a place of abundant beauty and recreation that is unlike anywhere else in Montana." (Doc. 63-11 at 3-4). Johnson further describes the Area F landscape, including the West Fork Armells Creek basin, as "beautiful country of sandstone cliffs, grassland, rolling hills, and Ponderosa stands." (Id. at 4). Johnson recalls his May 2020 visit to the Area F expansion site as follows:

"I was shocked and disgusted to see that Westmoreland had begun its expansion of strip-mining activities into Area F, knowing full well that disputes surrounding the issuance of the permit remain unresolved. No amount of money

can fix this injury and, once strip-mined, the land cannot be returned to its original state for decades, if ever. This harm is irreparable." (Id.)

Plaintiffs contend that Westmoreland's act of initiating strip-mining operations in Area F represents irreparable harm as mined coal cannot be put back into the ground. The conservation groups point to the broad view of environmental injury in the Ninth Circuit for support, quoting *Se. Alaska Conservation Council v. USFS* that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." 413 F.Supp.3d 973, 980 (D. Alaska 2019). Additionally, Plaintiffs argue the greenhouse gases released by the combustion of Area F coal represent irreparable harm as the gases cannot be removed from the atmosphere. Finally, Plaintiffs argue that reclamation efforts alone are not sufficient to repair any injury caused by mining in Area F due to the prolonged timeline reclamation needs to return land to its original state.

While it is true that the Ninth Circuit typically favors a preliminary injunction when environmental harm is demonstrated, the Ninth Circuit has also expressly refused to adopt a rule "that *any* potential environmental injury *automatically* merits an injunction." *Idaho Rivers United v. United States Army Corps of Eng'rs*, 156 F.Supp.3d 1252, 1260 (W.D. Wash. 2015) (italics in original; internal quotation marks omitted) (quoting *Earth Island Inst. v. Carlton*, 626 F.3d

7

462, 474 (9th Cir. 2010). The Supreme Court has likewise cautioned that NEPA does not provide an automatic pass for plaintiffs seeking a preliminary injunction. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157-58 (2010). Thus, even in cases involving environmental injury, a plaintiff must still meet their burden under the *Winter* standard of clearly demonstrating the likelihood of irreparable harm in the absence of an injunction. The timing of Plaintiffs' preliminary injunction motion complicates their argument for irreparable harm in this matter.

"A court must determine that a preliminary injunction is required to prevent the harm that will otherwise occur before the court is able to reach a conclusion on the merits." *Helena Hunters and Anglers Association v. Marten*, 2019 WL 5069002, *1 (D. Mont. 2019) (citing *Winter*, 555 U.S. at 21). Here, Plaintiffs' member, Derf Johnson, alleged he will suffer irreparable harm due to the excavation efforts occurring in Area F which mar the "beautiful country of sandstone cliffs, grassland, rolling hills, and Ponderosa stands." (Doc. 63-11 at 4). Johnson also states that once coal is taken from the ground the landscape cannot be returned to pristine conditions for decades. (Id.). However, excavation and mining efforts were already well underway by the time Plaintiffs filed their motion.

As noted above, OSM approved the mine expansion in June 2019 but Plaintiffs did not file their motion for preliminary injunction until August 2020. Plaintiffs state that the majority of this delay was due to their desire to work with

opposing counsel to establish an expedited briefing schedule and avoid an injunction. Westmoreland rejected this proposal. According to Plaintiffs, Westmoreland failed to inform Plaintiffs about the start of operations in Area F and it was not until Johnson visited the site in May 2020 that Plaintiffs learned of excavation operations. Efforts to file an injunction brief were then further hindered by the COVID pandemic. The motion was filed on August 28, 2020, after Westmoreland had extracted the first coal from Area F. While the Court is sympathetic to difficulties COVID imposed on Plaintiffs, those difficulties do not negate the impression that had Plaintiffs felt this situation necessitated an emergency injunction to prevent the excavation and mining of Area F, efforts could have been made to seek an injunction as far back at June 2019. Unfortunately, the Court does not see what harm a preliminary injunction could prevent now that excavation in Area F has been ongoing since at least May 2020 and coal extraction since August 2020.

Regarding Plaintiffs' argument for an injunction to prevent the release of greenhouse gases into the environment, as Westmoreland points out, halting mining in Area F will have no effect on the level of greenhouse gas emissions from the Colstrip Power Plant. Indeed, Plaintiffs conceded as much. Should the Court prevent Westmoreland from extracting coal in Area F, Westmoreland would

9

simply resort to exhausting its remaining coal reserves in other mine areas ensuring no interruptions in the coal supply to the Colstrip Plant for combustion.

Finally, Plaintiffs concerns about the adequacy of reclamation efforts to return the land to its original state are similarly rendered moot by the reality of the situation. Even if the Court were to impose a preliminary injunction at this stage of proceedings, the injunction could not prevent the earthwork and coal extraction already completed in Area F. Reclamation is now the only way to reverse the work done in Area F, whether the Plaintiffs find it adequate or not.

Therefore, because the Court finds that a preliminary injunction would not prevent the environmental injuries presented by Plaintiffs (harm to landscape of Area F, coal extraction, release of greenhouse gases), the burden to clearly demonstrate the likelihood of irreparable harm in the absence of a preliminary injunction is not met with regard to those injuries.

### B. Harm to the Pallid Sturgeon under the ESA.

Previously noted, the ESA narrows the focus for determining the appropriateness of a preliminary injunction. Plaintiffs need only demonstrate the likelihood of irreparable harm to a listed species for the Court to impose a preliminary injunction on the federal action. *NWF*, 886 F.3d at 817. Section 7 of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of

10

any endangered species or threatened species or result in the destruction or adverse modification of [designated critical] habitat . . . ." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 924 (9th Cir. 2008) (quoting 15 U.S.C. § 1536(a)(2)). A federal agency jeopardizes the existence of a species when it "engage[s] in an action that reasonably would be expected, directly, or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02.

Here, Plaintiffs argue that continued water withdrawals from the Yellowstone River will negatively impact the population of the Pallid Sturgeon over the next 20 years as the withdrawals compound the worsening effects of climate change. Plaintiffs put forth a report, compiled by Dr. Marcus Griswold, examining the current population of Pallid Sturgeon in the Yellowstone River and the worsening impacts of reduced stream flow on the Sturgeon's ability to reproduce and survive to adulthood. By extending the life of the mine through the expansion of Area F, the water withdrawals from the Yellowstone River will also continue to fuel the combustion of Area F coal and thereby continue to negatively impact the population of the Pallid Sturgeon.

Westmoreland points out, however, that a preliminary injunction would not impact the level of water withdrawn from the Yellowstone River. If the Court were

to grant an injunction, that injunction would have no effect on the Colstrip Power Plant. The Plant would continue burning coal from other areas of the Rosebud Mine and withdrawing water to fuel the turbine at the same level that the Plant does now. Plaintiffs concede that it is true an injunction would have no immediate effect on the jeopardy facing the Pallid Sturgeon due the Power Plant's operation. However, Plaintiffs argue that the harm to be prevented now is the future extension of mining operations and need for water withdrawal. An injunction, in Plaintiffs' opinion, would prevent Westmoreland from accessing the coal reserves in Area F and force the company to mine its existing reserves in other areas of the Mine, of which Westmoreland has enough for 3 to 5 years of operation. Then, should the Court ultimately side with Plaintiffs on the merits of their lawsuit, the life of the Mine would be confined to those 3 to 5 years instead of the additional years Area F would allow. Without coal from the Mine, the Colstrip Plant would be forced to reduce its operations or shut down entirely. No more Power Plant means no more water withdrawn from the Yellowstone River and jeopardizing the Pallid Sturgeon species.

The Court finds this argument too attenuated to constitute the likely irreparable harm needed to award a preliminary injunction. For harm to be likely, "it cannot be speculative or merely possible." *Slaughter v. Nat'l Park Serv.*, 2019 WL 6465093, *3 (D. Mont. 2019) (citing *Winter,* 555 U.S. at 22). The Griswold Report describes

that "[r]educing summer low flows *may* increase temperature, and the rates of predation, competition and disease transmission" and that "[i]mpacts to growth and mortality of sturgeon *may* occur at temperatures above 75 degrees." (Doc. 63-1 at 16) (emphases added). The Court agrees with the Federal Defendants that these statements do not describe likely effects of continued water withdrawals but merely possible effects of that action. *See Nat'l Wildlife Fed'n*, 886 F.3d at 818 ("A 'possibility' of irreparable harm cannot support an injunction" (quoting *Winter*, 555 U.S. at 22)).

However, even if the Court were to find that the Griswold Report presented the certain consequences of continued withdrawals, Plaintiffs' argument would still falter under its preliminary injunction burden. "Plaintiffs must demonstrate that irreparable injury 'is *likely* in the absence of an injunction.'" *Id.* (emphasis in the original). "There must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined, and showing that 'the requested injunction would forestall' the irreparable harm qualifies as such a connection." *Nat'l Wildlife Fed'n*, 886 F.3d at 819 (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir. 2011)). All parties acknowledge that a preliminary injunction from this Court would do nothing to affect the level of water withdrawn from the Yellowstone River by the Colstrip Power Plant. Whether the Court ultimately prevents Westmoreland from mining in Area F or not, the Colstrip Plant

13

will continue to withdraw the same amount of water the Plant has been withdrawing for years during the pendency of this litigation. Thus, because a preliminary injunction would not address the harmful action alleged by Plaintiffs, there is no causal link between the harm alleged and the injunctive relief sought making a preliminary injunction inappropriate.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs Montana Environmental Information Center *et al.*'s Motion for Preliminary Injunction (Doc. 62) is **DENIED**.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 25th day of January, 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge