IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, *et al.*, | CV 19-130-BLG-SPW |
| Plaintiffs, | ORDER |
| vs. | |
| DEB HAALAND *et al.*, | |
| Defendants. | |

## I.  Background

Plaintiffs Montana Environmental Information Center ("MEIC"), Indian People's Action, 350 Montana, Sierra Club, and WildEarth Guardians ("Plaintiffs") filed this case in 2019 challenging Federal Defendants' approval of the expansion of the Rosebud Mine, located near Colstrip, Montana, into an area of the mine site called "Area F." (Doc. 177). Specifically, Plaintiffs alleged that Federal Defendants violated the National Environmental Policy Act ("NEPA") by failing to take a hard look at the proposed expansion's cumulative impacts to surface water, resulting greenhouse gas emissions and their costs, and water withdrawals from the Yellowstone River, and by failing to consider a reasonable range of alternatives to the selected alternative. (*Id.*). U.S. Magistrate Judge Timothy Cavan issued Findings and Recommendations on the parties' motions for summary judgment on

1

February 11, 2022. (*Id.*). He found that MEIC, Sierra Club, and WildEarth Guardians demonstrated standing; that Federal Defendants failed to take a hard look at the mine expansion's cumulative impacts on surface waters, resulting greenhouse gas emissions and their costs, and water withdrawals from the Yellowstone River in violation of NEPA; and that Federal Defendants' alternatives analysis satisfied NEPA. (*Id.*). He recommended the Court remand to the Office of Surface Mining and Reclamation ("OSMRE") to correct the NEPA violations and defer vacatur of the approval of the proposed expansion for one year from the date of the Court's final order. (*Id.* at 37).

On September 30, 2022, Court adopted all of Judge Cavan's findings, except as to standing for WildEarth Guardians and his alternatives analysis. (Doc. 198). Additionally, the Court extended the date for vacatur to take effect 19 months from the date of the order. (*Id.* at 36).

On January 10, 2024—about three and a half months before vacatur would take effect—Federal Defendants moved for the Court to extend the deadline for the OSMRE to revise the environmental impact statement ("EIS") and issue a final decision until June 30, 2025. (Doc. 205). Federal Defendants argue the extension is necessary because the document is one of the first EISs OSMRE has issued that evaluates climate impacts using the social cost of carbon and other metrics. (Doc. 206 at 4). As such, the analysis is taking longer than expected. (*Id.*). Additionally,

2

Federal Defendants assert OSMRE has had to account for a series of new judicial decisions, guidance from the Council on Environmental Quality ("CEQ"), and amendments to NEPA. (*Id.* at 4–7). Federal Defendants last argue the Court should extend the date of vacatur to June 30, 2025, because the balance of equities has not changed since the Court's original order. (*Id.* at 8).

Plaintiffs responded on January 26, 2024, in opposition to Federal Defendants' request for the extension for both the revised EIS and deferred vacatur. (Doc. 210). As an initial matter, Plaintiffs contend that the motion is correctly construed under Federal Rule of Civil Procedure 60(b), which allows a party relief from judgment in six instances. Plaintiffs assert that Federal Defendants did not show that any of the six scenarios applied. (*Id.* at 9, 13–15). Specifically, Plaintiffs assert that "Federal Defendants admit that nothing has changed that would warrant the Court's reconsidering its order deferring vacatur for only 19 months. This is fatal to their request for reconsideration." (*Id.* at 14) (internal citations omitted).

Plaintiffs further take issue with Federal Defendants' proffered reasons for OSMRE's inability to complete the ordered revisions by the original deadline. (*Id.* at 15). First, Plaintiffs contend that a social cost of carbon analysis and the "unspecified 'other possible metrics' for analyzing climate impacts" are, according to CEQ guidance, straightforward revisions "that should not require additional time or resources." (*Id.* at 15–16 (citing 88 Fed. Reg. 1196, 1203 (Jan. 9, 2023))).

3

Second, the intervening caselaw, CEQ guidance, and NEPA amendments either were issued before the Court's order or have little to no bearing on the kinds of revisions mandated by the Court. (*Id.* at 16–19).

Plaintiffs last argue vacatur is necessary to effectuate the purposes of NEPA and prevent substantial harm to land, water, air, and communities. (*Id.* at 19). Far from the equities remaining the same, Plaintiffs assert that "the harm of strip-mining on the environment and the public is greater than previously understood, and is constantly compounding, while the impacts to Westmoreland of a temporary cessation of mining in Area F are minimal and insufficient to overcome the presumption of vacatur." (*Id.*). Plaintiffs go on to cite newly published research finding that particulate matter pollution from burning coal from the Rosebud Mine at the Colstrip Power Plant has caused about 380 deaths in the past 20 years. (*Id.* at 20). Plaintiffs also detail the harm strip mining has on wildlife, ecosystems, and surrounding communities, including the Northern Cheyenne and their ancestral homeland. (*Id.* at 20–23).

Intervenors Westmoreland Rosebud Mining LLC and the International Union of Operating Engineers, Local 400 ("Intervenors") filed a response in support of Federal Defendants' motion. (Doc. 211). In addition to arguments made by Federal Defendants, Intervenors emphasize that the Court's 19-month deadline is per se insufficient because Federal Defendants' suggestion of 19 months to the Court in

4

briefing after the Findings and Recommendations did not take into account an alternatives analysis, since Federal Defendants did not know at the time of their suggestion that the Court would overrule Judge Cavan's findings on that issue. (*Id.* at 10–11). Thus, according to Intervenors, the Court did not take the new requirement into consideration in adopting the 19-month deadline. (*Id.* at 10). According to Intervenors, OSMRE supposedly decided not to proceed with the revised EIS until the mid-range alternative could be defined, which Intervenors state did not happen before December 2023. (*Id.* at 12).

As to vacatur, Intervenors agree with Federal Defendants that the balance of equities has not changed, and the short-term disruptive consequences of losing the Area F permit justify further deferral of vacatur. (*Id.* at 16).

The Court first will address whether Rule 60(b) governs the motion, then whether an extension for the completion of the revised EIS and the date of vacatur is warranted, and finally the appropriateness of the length of the requested extension.

## II. Legal Standard

As an initial matter, the Court agrees with Plaintiffs that Federal Defendants' motion is properly construed under Rule 60(b) because Federal Defendants are seeking relief from the Court's judgment that the revisions must be completed within 19 months. The Court's finding on this matter is guided by the most factually-analogous case to this it could find—*Center Biological Diversity v. Zinke*, Nos. CV-

15-00019-TUC, CV-15-00179-TUC, CV-15-00285-TUC, CV-16-00094-TUC, 2021 WL 1821641 (D. Ariz. Apr. 28, 2021). In *Zinke*, the Court held that the U.S. Fish and Wildlife Service's ("FWS") 2015 rule for an experimental population of Mexican gray wolf violated the Endangered Species Act and remanded the rule to FWS for further action consistent with the Court's order. *Id.* at *1. The Court gave FWS 25 months to comply with the remand order. *Id.*

Largely due to slowdowns from the COVID-19 outbreak, FWS moved under Rule 60(b)(5) and (6) for a 14-month extension. *Id.* at *3. The parties agreed that an extension was warranted but disagreed on the length. Nevertheless, the Court still analyzed whether modification of its original deadline was warranted under Rule 60(b)(5) before discussing the appropriate length of the extension. *Id.*

*Zinke* and this case both involve remands ordered by a court because the at-issue agency actions were found to have violated federal environmental laws, and both imposed specific deadlines for an agency to complete the ordered corrective actions. Further, both cases involved motions to extend the deadline because the corrective remand actions were taking longer than the agency anticipated. *See also Ctr. for Biological Diversity v. Norton*, Nos. 01CV2101IEBLAB, 01CV2145IEGLAB, 2003 WL 22225620, at *1–*2 (S.D. Cal. Sept. 9, 2023) (analyzing a motion for extension of prescribed deadlines for FWS to issue revised

6

proposed and final critical habitat designations under the Endangered Species Act under Rule 60(b)(5)).

The case on which Federal Defendants rely to argue that this Court does not have a practice of construing motions to extend NEPA deadlines under Rule 60(b) is distinguishable. (Doc. 216 at 2). In *WildEarth Guardians v. Bernhardt*, the Court found the agency's environmental assessment ("EA") was insufficient and violated NEPA. CV 17-80-BLG, 2021 WL 363955 (D. Mont. Feb. 3, 2021). In the Court's remand order, it expressly stated that the agency could seek leave to extend the deadline for the corrective remand actions if the agency determined that an EIS, rather than an EA, was necessary. *Id.* at *12. Since the Court left the door for an extension open if the agency determined an EIS was necessary, the subsequent request for an extension upon the agency's finding that an EIS was necessary did not require the Court to reconsider its original decision. *See WildEarth Guardians v. Haaland*, CV 17-80-BLG, 2021 WL 4133949 (D. Mont. Sept. 10, 2021) (analyzing the agency's motion for an extension of the NEPA deadline for good cause rather than under Rule 60(b)). Conversely, here and in *Zinke*, neither court left such a door open and instead set unconditional deadlines. A motion asking the Court to revisit an unconditional deadline seeks modification of the deadline in light of intervening events and is therefore properly considered under Rule 60(b).

Thus, Rule 60(b) governs Federal Defendants' motion. The Court finds Rule 60(b)(5) most applicable, since Federal Defendants effectively are arguing that applying the judgment "prospectively is no longer equitable," as FWS did in *Zinke*. The Ninth Circuit has held that the Rule 60(b)(5) standard is a "general, flexible standard," in accordance with the Supreme Court's ruling *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999). "Under the flexible standard, 'a party seeking modification of a [final judgment] bears the burden of establishing that a significant change in circumstances warrants revision of the [final judgment].'" *Zinke*, 2021 WL 1821641, at *2 (quoting *Rufo*, 502 U.S. at 383). Modification also "may be warranted when changed factual conditions make compliance with the decree substantially more onerous," or "when a decree proves to be unworkable because of unforeseen circumstances." *Rufo*, 502 U.S. at 384.

If the moving party meets this standard, the Court should consider whether the proposed modification is suitably tailored to the reason justifying modification. *Id.* at 383.

### III. Extension

#### A. *Completion of Corrective Actions*

Under Rule 60(b)(5), Federal Defendants must have alleged a significant change in circumstances, changed factual conditions that make compliance with the

8

deadline substantially more onerous, or unforeseen circumstances that make the deadline unworkable. *Id.* at 383–84. As stated, Federal Defendants' reasons for needing more time to complete the corrective remand actions are that (1) OSMRE is effectively learning how to apply the social cost of carbon and other climate change analysis metrics for the first time; and (2) OSMRE is having to evaluate and adjust its analysis to the requirements of new judicial decisions, agency guidance, and congressional amendments to NEPA.

The Court finds that the novelty of the greenhouse gas analysis to OSMRE and the CEQ guidance concerning greenhouse gases and climate change published after this Court's remand order qualify as unforeseen circumstances and justify an extension. Federal Defendants appear to have decided to undertake not only a social cost of carbon analysis but also other methods of evaluating climate impacts to fulfill the mandates in the Court's order. So long as these other methods are scientifically sound and provide high quality information, Federal Defendants have discretion to choose to employ such methods. *See 350 Montana v. Haaland*, 29 F.4th 1158, 1172 (9th Cir. 2022), *amended by*, 50 F.4th 1254. Additionally, as Federal Defendants explain, it appears that such other metrics are necessary under the CEQ's greenhouse gas guidance, which requires agencies to "disclose and provide context for [greenhouse gas] emissions and climate effects" so decisionmakers and the public can understand the proposed action's potential effects on emissions and the climate.

NEPA Guidance on GHG Emissions and Climate Change, 88 Fed. Reg. 1196, 1202 (Jan. 9, 2023). The guidance also requires that, for proposed actions that will result in "relatively large" greenhouse gas emissions or "that will expand or perpetuate reliance on" greenhouse gas-emitting energy sources, agencies must explain how the proposed action and alternatives would help meet or detract from achieving" federal, international, state, regional, tribal, agency, and other climate goals and commitments. *Id.* at 1203. Such requirements—published three months after the Court's order—are relatively expansive and affect OSMRE's greenhouse gas and alternatives analysis here given Area F will perpetuate the reliance on coal. The Court agrees with Federal Defendants that such requirements are not as simple as plugging numbers into a social cost of carbon equation, as Plaintiffs contend.

Plaintiffs' argument that Federal Defendants have not shown the requisite unforeseen circumstances fails for two reasons. First, the case on which Plaintiffs rely is inapposite. (Doc. 210 at 13). In *350 Montana v. Haaland*, CV 19-12-M, 2023 WL 2273090, at *1 (D. Mont. Feb. 28, 2023), after the court had vacated the agency's mine expansion plan, the intervenor moved to clarify the court's vacatur order. Despite the classification of the motion as one for clarification, the court found the motion actually asked the court to impose remedies that the intervenor never requested in its initial briefing and, as relevant here, none of which concerned deadlines for corrective actions. *Id.* Here, Federal Defendants are not asking for

any new remedies, only an extension for the deadline for remedies already imposed. Additionally, the *350 Montana* intervenor's asserted bases for clarification contradicted factual assertions it had made in initial briefing or presented new arguments it had multiple opportunities to raise during initial briefing. Here, Federal Defendants have not presented contradictory arguments or ones it could have made to the Court in briefing on summary judgment. Accordingly, the district court's decision in *350 Montana* does not compel the Court to find that Federal Defendants failed to meet the requirements for reconsideration of the EIS and vacatur deadline under Rule 60(b).

Second, the alleged "admission" by Federal Defendants that nothing has changed since the Court's order does not undermine Federal Defendants motion, as Plaintiffs contend. Federal Defendants explain that the impacts of vacatur on the mine, the power plant, and the community of Colstrip, as well as the impacts of the mine's expansion on the environment, have not changed. (Doc. 206 at 8). Federal Defendants are clear that certain laws and policy have changed. (*Id.* at 4–7).

At the same time, the new caselaw Federal Defendants cite does not justify an extension. As to *350 Montana*, 50 F.4th 1254, the Ninth Circuit's initial decision was issued more than five months before the Court's order, and the Court's order discussed the case extensively, (doc. 198 at 24–26). Additionally, the amended decision was issued just two weeks after the Court's order and only made minor

11

changes. As to *Diné Citizens Against Ruining Our Environment v. Haaland*, the relevant portions of the Court's holding mostly reaffirms *350 Montana*'s conclusion and reasoning on the necessity for an agency to adopt "reasonable methods for considering the impacts of cumulative [greenhouse gas] emissions if such methods are available." 59 F.4th 1016, 1040–41 (10th Cir. 2023). It does not add anything novel that Federal Defendants would need to adapt to. Thus, Federal Defendants were warranted in taking extra time to review the decisions to determine their applicability, but neither decision justifies an extension.

As to the congressional amendments to NEPA passed under the Fiscal Responsibility Act on June 3, 2023, Pub. L. No. 118-5 (2023), the Court agrees with Plaintiffs that the passage of the act does not justify a delay because Federal Defendants did not identify any changes to the revision process that the amendments would require. In fact, the amendments' expectation that EAs and EISs be completed faster than the current average should signal to OSMRE that further delay contravenes the intent of Congress. 42 U.S.C. § 4336a(g).

Intervenors' alternatives argument is unpersuasive. No party appealed the Court's 19-month deadline on the grounds that it did not take into account the alternatives analysis. *See* Appellants' Opening Brief, *Mont. Env't Info. Ctr. v. Westmoreland Rosebud Mining LLC*, No. 22-36002 (Apr. 5, 2023) (challenging the Court's finding that Plaintiffs had standing). Intervenors thus have waived this

12

argument. Even if Intervenors had not waived this argument, the Court finds it non-credible because, even on reply, Federal Defendants did not endorse, further explain, or provide testimony via an affidavit to support it.

### B.  *Vacatur*

As to whether the Court also should defer vacatur, the Court finds the equities favor further deferral. Like at the time of the Court's remand order, serious and significant environmental concerns associated with mining and combusting Area F coal still exist, as do the immediate detrimental consequences for the mine, its employees, and the Colstrip community. Plaintiffs' additional evidence of the harms associated with mining and burning coal do not change the Court's calculus, since coal will continue to be mined in other areas and burned at Colstrip even if the Area F approval is vacated.

### C.  *Length of the Extension*

Last, as to the length of the extension, the Court does not find Federal Defendants' requested deadline is tailored to the reasons justifying modification. *See Rufo*, 502 U.S. at 383. First, as the Court discussed, not all of the changes in law and policy cited by Federal Defendants were unforeseen or make compliance with the deadline untenable because the changes either occurred before the Court's remand order or were largely inconsequential to Federal Defendants' revised analysis. In fact, only one of the changes—the January 2023 CEQ guidance—

justifies an extension. Second, giving Federal Defendants until June 30, 2025, would amount to a 14-month extension. The original time allowed for Federal Defendants to correct *all* the defects found by the Court on summary judgment was only five months longer than this request. Thus, a 14-month extension is disproportionate to the reasons for the modification of the deadline. The Court instead will provide Federal Defendants a nine-month extension from the original April 30, 2024 deadline to complete the corrective actions and sets the deadline for a new EIS and the date for vacatur as January 31, 2025.

## IV. Conclusion

For the foregoing reasons, the Court grants Federal Defendants' motion for an extension to the deadline to complete their revised EIS and issue a final decision, as well as to the date of vacatur. The Court denies the motion as to the requested length of the extension and sets the deadline and date of vacatur for January 31, 2025.

IT IS SO ORDERED that Federal Defendants Motion to Extend Deadline to Complete Corrective NEPA Analysis and Deferred Vacatur of the EIS (Doc. 205) is GRANTED as to the request for an extension and DENIED as to the length of the extension.

DATED this 2nd day of April, 2024.

SUSAN P. WATTERS
United States District Court Judge

14